**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Merchant Transaction Systems, Inc., | ) | No. CIV-02-1954-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Nelcela, Inc., an Arizona corporation; Len Campagna, an Arizona resident; Alec Dollarhide, an Arizona resident; Ebocom, Inc., a Delaware corporation; Post Integrations Inc., an Illinois corporation, | ) | |
| Defendants. | ) | |

Currently before the Court are: Defendant Nelcela's Motion to Dismiss Post's Crossclaim, (Dkt. #113); Third-party Defendant Clothier's Motion to Dismiss Third Party Claims Against Gene Clothier and Toni Clothier, (Dkt. #128); Movant Charles Anderson's Motion to Dismiss State Fraud Claim, (Dkt. #211); Defendant Post's Motion for Sanctions Against Nelcela Regarding: Spoliation of Evidence, which Plaintiff and the Clothier's have joined, (Dkt. #243);  Movant Charles Anderson's Motion to Strike Response, (Dkt. #246); Plaintiff's Motion for Reconsideration of Order Denying Stipulation to Extend Time to File Response to Charles Anderson's Motion to Dismiss, (Dkt. #256); Defendant Post's Motion to Strike Defendant Nelcela's Supplemental Response to Post's Motion for Sanctions Re: Spoliation of Evidence or for Leave to Reply to Same, (Dkt. #274); and Defendant Post's Motion for Leave to Submit Post-Hearing Memorandum Regarding Issues Raised at

1  Spoilation Hearing.  (Dkt. #296).   After reviewing the motions and after hearing oral

2  argument on November 8, 2005, the Court issues the following Order:

3  **I.    Factual & Procedural Background**

4       Plaintiff filed a Complaint in United States District Court on October 3, 2003,

5  asserting jurisdiction under 28 U.S.C. §1338(a), for a civil action relating to copyright

6  infringement and under 28 U.S.C. § 1332(a), diversity jurisdiction.  Plaintiff alleges that

7  Defendant Alec Dollarhide developed credit card processing software when he worked for

8  the predecessor corporation of Plaintiff, a company called Credit Card Services, Ltd. ("CCS,

9  Ltd."), sometime in 1995 or 1996.  Complaint at ¶¶18-21.  Plaintiff further alleges that

10  Defendant Dollarhide signed an agreement stating that the work he was performing was

11  confidential and proprietary to his employer, which stayed in effect when CCS, Inc.,

12  transferred ownership of the software developed by Defendant Dollarhide to Plaintiff

13  Merchant Transaction Systems, Inc. ("MTSI") on June 1, 1999. See Id. at ¶¶19,23.

14       Plaintiff maintains that on August 1, 1999, Defendant Dollarhide's status was

15  converted to independent contractor, and payment for his work was directed to the

16  corporation of his designation, Defendant Nelcela, Inc., which Defendant Dollarhide formed

17  with Defendant Leonard Campagna ("Nelcela Defendants").  See Id. at ¶24. Plaintiff alleges

18  that thereafter the Nelcela Defendants and each of its employees, officers, and directors owed

19  fiduciary duties to MTSI.     See Id.  Plaintiff maintains Nelcela Defendants breached their

20  duties of confidentiality and revealed and sold Plaintiff's software to third parties, Defendants

21  Ebocom, Inc. Post Integrations, Inc., Mary Gerdts, founder and President of Post Integrations

22  Inc., and Douglas McKinney ("Post").   See Complaint at ¶¶25-28, 33, 72.  Plaintiff further

23  alleges that Nelcela Defendants misrepresented the ownership of Plaintiff's software to the

24  Registrar of Copyrights and caused copyrights to be issued to Nelcela Defendants for

25  Plaintiff's software. See Complaint at ¶40.

26       Post provides integrated electronic transaction solutions primarily to the hospitality

27  industry. Dkt. #84 Post Crossclaim at ¶3.  In 1999, Post sought to bring its credit card

28  processing services in house.  Id. at ¶19.  From June of 1999 to August of 2000, Mary

1   Gerdts, President and CEO of Post, negotiated with Messrs Dollarhide and Campagna

2   regarding Nelcela providing Post with a fully functional and operational credit card

3   processing system. Id. at ¶¶20-24. On August 2, 2000 ("August 2000 Contract") Post and

4   Nelcela reached a two-phase agreement. Id. at ¶30. In Phase I, Nelcela would provide Post

5   its Nelcela System source code.  In Phase II, Post would "go live," operating its own

6   customized version of the Nelcela System, which Post would own. Id. at ¶¶30,41-45. Post

7   Alleges, on December 28, 2000, Post "went live" and discovered Nelcela Defendants falsely

8   represented the Nelcela System's functionality and capabilities. Id. at

9   ¶¶21,24,26,28,33,43,45-47. Upon concluding Nelcela did not intend to deliver the system

10  in accordance with the parties agreements, Post asserts it obtained a replacement system from

11  Plaintiff MTSI.

12  **II.    Legal Standard**

13      The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely

14  granted." Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997).

15  Accordingly, the court will not dismiss a complaint unless it appears beyond a doubt that the

16  claimant can prove no set of facts to support the claim that would entitle the claimant to

17  relief. Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).   However, "the court [is not]

18  required to accept as true allegations that are merely conclusory, unwarranted deductions of

19  fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

20  Cir.2001).

21      In determining whether a complaint states a claim, all allegations of material fact are

22  taken as true and construed in the light most favorable to the nonmoving party. Wyler

23  Summit P'ship v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998). As such, an

24  inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for

25  failure to state a claim. Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir.

26  1998).

27

28  **III.    Defendant Nelcela's Motion to Dismiss Post's Crossclaim, (Dkt. #113).**

- 3 -

1

**A.      Validity of the Mutual Confidentiality Agreement**

2      Nelcela first argues a "Mutual Confidentiality Agreement" executed on May 26, 1999,

3   constitutes the sole written and executed contract between Nelcela and Post.  Further, Nelcela

4   asserts the "Mutual Confidentiality Agreement" prohibits Post from filing this lawsuit, the

5   agreement provides:

> 6            The parties understand and agree that, except such agreements
>           as currently exist between [Post] and [Nelcela], **no contract or
> 7            agreement providing for any relationship shall be deemed to
>           exist  between  [Post]  and  [Nelcela]**  and/or  owners  or
> 8            stockholders  of  either  party  **unless  and  until  a  definitive
>           agreement has been executed** and delivered, and **each party
> 9            hereby waives, in advance, any claims (including, without
>           limitation, breach of contract)** in connection with the proposed
> 10           business relationship by and between [Post] and [Nelcela] unless
>           and until the parties have entered into a definitive agreement
> 11           with respect to such relationship which has been executed and
>           signed by the parties. . .

12   Dkt. #84 Post Crossclaim Ex. 11, p.3.

13      Nelcela argues because the "Mutual Confidentiality Agreement" was the only written

14   and executed contract, the parties "waive[d] in advance, any claims (including, without

15   limitation, breach of contract)."  Id. While Post concedes a "definitive agreement" was never

16   executed, Post argues the parties engaged in "extensive" discussions establishing a

17   contractual arrangement between the parties, sufficient to establish that the Mutual

18   Confidentiality Agreement does not bar Post's claims.[1]

19      Because the terms of the Mutual Confidentiality Agreement waive any legal claims

20   between the parties until they reached a definitive written contract, Posts claims against

21   Nelcela can stand if Post's Crossclaim states a claim upon which relief can be granted that:

22   (1) the Mutual Confidentiality Agreement is void or voidable; or (2) the parties modified the

23   requirement of a definitive agreement.

24      Post contends it has alleged fraud in the inducement, making the Mutual

25   Confidentiality Agreement voidable.    Fraud in the inducement  occurs  when  a

26

---

27      [1]Post also argues, that if the Mutual Confidentiality Agreement bars its claims against Nelcela, then necessarily
     Nelcela's claims against Post are also barred.  However, as Post has not filed a motion to dismiss Nelcela's Crossclaims,
28   that issue is not before the Court.

1   misrepresentation leads another to enter into a transaction with a false impression of the risks,

2   duties, or obligations involved.  Black's Law dictionary 686. (8th ed. 1999).  Even under

3   liberal "notice" pleading standards, it is unclear to the Court how Nelcela was put on notice

4   that Post sought to declare the Mutual Confidentiality Agreement voidable for fraud in the

5   inducement.  FED. R. CIV. PRO. Rule 8(a)(2).  However, Post's fraudulent inducement claim

6   must be plead with particularity.  FED. R. CIV. PRO. Rule 9.  Notably, Post has not alleged

7   a Crossclaim or affirmative defense related to fraud in the inducement of the Mutual

8   Confidentiality Agreement.  Post's Crossclaim of fraud relates to Nelcela allegedly inducing

9   Post to pay Nelcela $562,000 and to "go live," not that Nelcela fraudulently induced Post to

10  enter into the Mutual Confidentiality Agreement. Dkt. #84 Post Crossclaim at ¶75.  In fact,

11  the only mention of the Mutual Confidentiality Agreement is located in paragraph 40 of

12  Post's Crossclaim.   Nowhere does the Crossclaim assert the Mutual Confidentiality

13  Agreement is voidable; nowhere does Post contend entering the Mutual Confidentiality

14  Agreement damaged Post.  Moreover, a careful review of the Crossclaim demonstrates that

15  virtually all Post's allegations of misrepresentations upon which Post relied are after the date

16  the Mutual Confidentiality Agreement was executed. See Id. at ¶¶22,24,26,28,33,43,45-47.

17  The only allegations which *may* predate the Mutual Confidentiality Agreement are located

18  in paragraphs 20 and 21, which provide: in spring 1999, Mr. Campagna provided Post a

19  general description of the Nelcela System that "he claimed Nelcela owned." Id. at ¶2  These

20  two paragraphs fail to allege the time and place of the alleged fraudulent statements. FED. R.

21  CIV. PRO. Rule 9(b) (2005); Gill v. Three Dimension Sys., Inc., 87 F. Supp. 2d 1278 (M.D.

22  Fla. 2000).  Thus, the Court concludes Post's Crossclaim for "fraud in the inducement" fails

23  pursuant to Rule 9(b) and 12(b)(6), and the time for amendment of Post's Crossclaim has

24  passed.

25        Turning to Post's argument the conduct of the parties is sufficient to infer

26  acquiescence to modification of the Mutual Confidentiality Agreement and that the parties

27  entered into a subsequent contract. "Conduct can manifest acceptance of an offer or

28  acquiescence in a modification." Ancell v. Union Station Assoc., Inc., 803 P.2d 450, 453

- 5 -

1  (Ariz. Ct. App. 1990) (internal citations omitted). In <u>Ancell</u>, Ancell, a mortgage broker

2  entered into a written contract with a hopeful mortgagee providing the mortgagee would pay

3  Ancell $64,210 if he obtained a firm commitment from an acceptable lender. <u>Id.</u> at 458. The

4  contract also provided the agreement was null and void if Ancell failed to secure a lender by

5  January 15, 1998. <u>Id.</u> At issue was whether the parties subsequent dealings modified the

6  January 15, 1998 termination date.    Finding a genuine issue of material fact existed

7  regarding whether the mortgagee manifested acceptance of modification of the contract, the

8  Arizona Court of Appeals reasoned Ancell continued to Seek a lender after the termination

9  date. <u>Id.</u> at 454.

10      Similarly here, taking as true the allegations in Post's Crossclaim and viewing them

11  in the light most favorable to Post, Post has alleged facts sufficient to support a claim that

12  Nelcela Defendants manifested acceptance of modification of the requirement for a definitive

13  written agreement, signed and executed by the parties.   Specifically, Post's Crossclaim

14  outlines correspondence between the parties regarding the two-phase implementation of

15  Nelcela System and a customized Nelcela System, for which Post would pay Nelcela

16  $750,000.   Dkt. #84 <u>Post</u> <u>Crossclaim</u> at ¶¶23,27,28.   On August 2, 2000, Ms. Gerdts

17  corresponded with Mr. Campagna, detailing the "proposed terms of the parties agreement,"

18  to which Mr. Campagna agreed. <u>Id.</u> at ¶¶30,31. Post's Crossclaim goes on to allege both

19  parties acted in conformity with the agreement, Post making partial payments for the Nelcela

20  System and Nelcela Defendants working towards customizing the Nelcela System. <u>Id.</u> at

21  ¶¶37,39.   Based on the foregoing, taking as true the allegations in Post's Crossclaim, the

22  Mutual Confidentiality Agreement does not bar Post from bringing suit against Nelcela

23  because Post alleges the parties entered into an August 2000 Contract and allegations of the

24  parties' conduct is sufficient to infer the parties acquiesced to modification of the requirement

25  for a definitive written agreement.

26      **B.    Declaratory Judgment**

27      Nelcela's argues Post's Crossclaim for a Declaratory Judgment that the customized

28  Nelcela System is owned by Post is barred because there was no definitive written contract

1    as required by the Mutual Confidentiality Agreement. However, taking as true the

2    allegations in the Crossclaim and viewing them in the light most favorable to Post, Post has

3    alleged facts sufficient to support a claim that Nelcela Defendants manifested acceptance of

4    modification of the requirement for a definitive written agreement, signed and executed by

5    the parties.

6        **C.    Breach of Contract.**

7        In the alternative, Nelcela argues if the Court concludes the subsequent agreement

8    constituted a contract, Post fails to state claim for breach of contract because Post concedes

9    it did not act in accordance with the terms of the subsequent contract. Specifically, according

10   to the terms of the August 2000 Contract, Post agreed to pay Nelcela $750,000 for two

11   phases of source code, Nelcela System in Phase I and customized Nelcela System in Phase

12   II. Dkt. #84 Post Crossclaim at ¶¶30,31. However, Post's Crossclaim provides, Post did not

13   pay the $750,000 as agreed, and instead, only paid Nelcela $562,000. Id. at ¶¶31,51.

14       The authority relied on by Nelcela in support of this argument is inapposite, and

15   instead, stands for the general rule a buyer has an election to return nonconforming goods

16   and rescind the sale or keep nonconforming goods and sue for damages. Authorized Supply

17   Co. of Ariz. v. Swift & Co., 271 F.2d 242, 244 (Ariz. 1960) (concluding where buyer elects

18   to rescind a sale, the buyer is precluded from suing the seller for damages as a result of an

19   alleged breach of express implied warranties.) The Court is neither aware nor does Nelcela

20   cite authority providing that where a buyer fails to pay the full contract price, the purchaser

21   is precluded from seeking damages for breach of contract. Moreover, Nelcela has conceded

22   failure to pay the full contract price does not preclude a buyer from seeking damages for

23   breach of contract because it has failed to refute Post's arguments in its reply. Whetzel v.

24   Mineta, 364 F. Supp 2d. 1077, 1083 (D. Alaska 2005).

25       **D.    Negligent Misrepresentation**

26       Nelcela next argues Post's Crossclaim only alleges future conduct, and therefore, fails

27   to state a claims for negligent misrepresentation. In order to prevail on a claim of negligent

28   misrepresentation, the plaintiff has the burden of proving that: (1) defendant, in the course

1   of its business, gave incorrect information for the guidance of others in their business

2   transactions; (2) defendant intended that plaintiff rely on that information or could reasonably

3   foresee that plaintiff would rely on that information; (3) defendant failed to exercise

4   reasonable care in obtaining or communicating that information; (4) plaintiff relied on that

5   incorrect information; (5) plaintiff's reliance was justified; and (6) plaintiff's reliance was a

6   cause of damage to plaintiff.  RESTATEMENT (SECOND) OF TORTS §552 (1977).

7        Furthermore, "[t]he promise of future conduct is, as a matter of law, not such a

8   representation as will support recovery under a theory of negligent misrepresentation."

9   McAlister v. Citibank, 829 P.2d 1253, 1251 (Ariz. Ct. App. 1992) (citations omitted).

10  Nelcela argues Post's Crossclaim only refers to Nelcela's representations regarding what it

11  hoped to achieve in the future.  Nelcela maintains it refused to put a "date-certain" in writing

12  and only agreed to work towards a future agreement.

13       However, Post's Crossclaim maintains the Nelcela Defendants made numerous

14  misrepresentations regarding its ownership of and the functionality of Nelcela Systems. Dkt.

15  #84 Post Crossclaim at ¶¶21,24,26,28,33,43,45-47,88.  According to Post's Crossclaim, these

16  misrepresentations were present facts, upon which Post relied when entering the August 2000

17  Contract.    Taking as true the allegations in the Crossclaim, Nelcela Defendants

18  misrepresented they owned the Nelcela System and that it was fully functional.  Id.  These

19  are actionable alleged misrepresentations of present facts and sufficient to state a claim upon

20  which relief can be granted.

21

22       **E.    Breach of Express and Implied Warranties**

23       Nelcela argues Post's Crossclaim fails to state a claim for breach of express warranties

24  because the Crossclaim contains no affirmation of fact relating to the product, which became

25  the basis of the bargain.  However, Post's Crossclaim for breach of express warranties

26  incorporates by reference all previous allegations. Dkt. #84 Post Crossclaim at ¶100.  As

27  noted above, Post's Crossclaim alleges Nelcela Defendants made numerous present factual

28  misrepresentations regarding the Nelcela System upon which Post relied when entering into

1    the August 2000 Contract, such as its ownership of and the functionality of Nelcela Systems.

2    Id. at ¶¶21,24,26,28,33,43,45-47,88.

3            In relation to Post's Crossclaim for breach of implied warranties, Nelcela argues the

4    implied warranties were excluded by the parties course of dealing because the parties entered

5    in to a service contract for the Nelcela System. However, taking as true the allegations in the

6    Complaint, Post sought to purchase a fully functional credit card processing system it could

7    operate in house, without the need of outside service. Based on the foregoing, Post's

8    Crossclaim for breach of express and implied warranties states a claim upon which relief can

9    be granted.

10           **F.     Conversion**

11           "Conversion is an intentional exercise of dominion or control over a chattel which so

12   seriously interferes with the right of another to control it that the actor may justly be required

13   to pay the other the full value of the chattel." See Focal Point, Inc. v. U-Haul Co. of Ariz.,

14   746 P.2d 488, 489 (Ariz.  Ct. App.1986).  To maintain an action for conversion, a plaintiff

15   must either have actual possession of the personal property or the right to demand immediate

16   possession of the personal property at the time of the alleged conversion. Sears Consumer

17   Fin. Corp. v. Thunderbird Prods., 802 P.2d 1032, 1034 (Ariz. Ct. App. 2004).

18           Nelcela argues taking as true the allegations in Post's Crossclaim, it did not own the

19   source code, because it only paid Nelcela $562,000, as opposed to the price the parties

20   contracted for, $750,000. Dkt. #84 Post Crossclaim at ¶¶31,51.  Post argues its Crossclaim

21   outlines two separate contracts, one which was complete.

22           However, taking as true the allegations in the Crossclaim, it supports only a claim the

23   source code was one contract for a total purchase price of $750,000.  The Crossclaim alleges,

24   a two-phase agreement; in Phase I Nelcela would provide Post the Nelcela system; in Phase

25   II Nelcela would provide Post the customized Nelcela system for a total payment of

26   $750,000. Id. at ¶30.  This payment was to be paid in increments of 25%, a deposit, delivery

27   of Phase I, completion of 100% conversion, completion of Phase II. Id.  The Crossclaim

28   alleges Post paid a $200,000 down payment on September 20, 2000, which was characterized

1    as a "partial payment". <u>Id.</u> at ¶¶37,38.  From October to December 2000, Post paid Nelcela

2    $362,000 "for development of custom Phase I code prior to conversion." <u>Id.</u> at ¶31.

3         These are the only allegations related to payments in the Crossclaim. Nowhere does

4    the Crossclaim allege that $362,000 constituted full payment for the customized source code.

5    In fact the terms of the contract belay that notion, as the August 2000 Contract provided for

6    4 separate payments.  Taking as true the allegations in the Crossclaim, ownership of the

7    customized software occurred when Post paid the $750,000 contract price, which Post did

8    not pay.  Accordingly, the allegations in the claim fail to state Post had a right to demand the

9    source code at the time of the alleged conversion, because Post had not completed payment

10   for the source code.  Accordingly, Post's Crossclaim for conversion will be dismissed.

11   Furthermore, there appearing to be no set of facts which would alter the August 2000

12   Contract payment schedule, it appears any attempt to amend this Crossclaim would be futile.

13   Moreover, the time for amendment has passed.  Therefore, the Court will dismiss Post's

14   conversion Crossclaim with prejudice.

15        **G.    Unjust Enrichment**

16        To maintain a claim for unjust enrichment under Arizona law, Post must establish the

17   following five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between

18   the enrichment and the impoverishment; (4) absence of justification for the enrichment and

19   the impoverishment; and (5) an absence of a remedy provided by law. <u>Cmty. Guardian Bank</u>

20   <u>v. Hamlin</u>, 898 P.2d 1005, 1009 (Ariz. Ct. App.1995).  Nelcela argues both the Fourth and

21   Fifth Element are lacking because Post's Crossclaim fails to allege "absence of justification

22   for the enrichment" and because Post has an adequate remedy at law.

23        The Crossclaim alleges Post paid Nelcela $562,000 and in return received

24   nonfunctional software, resulting in significant damages. Dkt. #84 <u>Post</u> <u>Crossclaim</u> at

25   ¶¶51,52,55-56.  The Crossclaim states Nelcela neither delivered the system nor intended to

26   deliver the system. <u>Id.</u> at ¶51. While the Crossclaim also details Nelcela Defendants worked

27   towards implementing Nelcela System, representations that the Nelcela System did not

28   function, could not function, was not owned by Nelcela, and the System was not tested are

1    sufficient to allege absence of justification.  Moreover, the fact that Nelcela Defendants

2    worked toward implementing and customizing Nelcela System may support an argument the

3    entire $562,000 enrichment was not without justification However, taking as true the

4    allegations in the Crossclaim, Nelcela's efforts to implement Nelcela System were

5    insufficient to justify $562,000 enrichment.

6         Secondly, while Post cannot recover on both its breach of contract claim and its unjust

7    enrichment claim, it is not precluded from pleading alternative theories. See United States

8    v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa.1991) (finding dismissal of unjust

9    enrichment claim premature where federal rules allow pleading alternative theories of

10   recovery).  Therefore, Post's Crossclaim for unjust enrichment states a claim upon which

11   relief can be granted.

12        **H.    Fraud**

13        To prove common law fraud, nine elements must be established: (1) a representation;

14   (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its

15   truth; (5) the speaker's intent that the information should be acted upon by the hearer and in

16   a manner reasonably contemplated; (6) the hearer's ignorance of the information's falsity; (7)

17   the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's

18   consequent and proximate injury. Burkons v. Ticor Title Ins. Co. of Cal., 798 P.2d 1308,

19   1317 (Ariz. Ct. App.1989).

20        Here, Nelcela argues Post's Crossclaim fails to allege the Seventh and Eighth Element,

21   reliance and a right to rely.  In regards to the right to rely, Nelcela argues, Post cannot

22   maintain it had a right to rely on any of Nelcela's representations when Post licensed the

23   same software from MTSI in the midst of Nelcela's work to modify integration of Nelcela

24   System.  Taking as true allegations in the Crossclaim, Post alleges it relied on numerous

25   misrepresentations as to present facts regarding the capabilities of Nelcela System and

26   Nelcela's ability to implement and customize the Nelcela System, such as Nelcela owned the

27   copyrighted source code, that the system was functional, that it was capable of processing

28   charge backs, etc.  Moreover, as these representations were central to the efficacy of any

1   credit card processing software, for which Post was contracting to purchase, Post had a right

2   to rely on these alleged misrepresentations.  It is unclear to the Court, how engaging in a

3   substitute transaction to mitigate its damages negates Post's right to rely on the

4   aforementioned alleged misrepresentations.    Dkt. #84 <u>Post Crossclaim</u> at

5   ¶¶21,24,26,28,33,43,45-47,88.   Therefore, Post's Crossclaim states a claim for fraud upon

6   which relief can be granted.

7        **I.    Arizona Consumer Fraud Act**

8        A claim of fraud under the Arizona Consumer Fraud Act is governed by ARIZ. REV.

9   STAT. § 44-1522, which states in pertinent part:

10            The act, use, or employment by any person of any deception,
              deceptive act or practice, fraud, false pretense, false promise,
11            misrepresentation, or concealment, suppression or omission of
              any material fact with intent that others rely upon such
12            concealment, suppression or omission, in connection with the
              sale or advertisement of any merchandise whether or not any
13            person has in fact been misled, deceived, or damaged thereby,
              is declared to be an unlawful practice.
14

15       First, Nelcela argues Post's consumer fraud claims against Messrs Campagna and

16   Dollarhide must be dismissed because they are not merchants. While the purpose of the

17   Consumer Fraud Act is to eliminate unlawful practices in merchant-consumer transactions,

18   neither the plain meaning of "any person," nor any authority presented construing the act

19   limits its application to merchants. ARIZ. REV. STAT. § 44-1522.   Secondly, as noted

20   previously, Post alleges it relied on numerous misrepresentations as to present facts regarding

21   the capabilities of Nelcela System and Nelcela's ability to implement and customize the

22   Nelcela System.    Dkt. #84 <u>Post Crossclaim</u> at ¶¶21,22, 24,26,28,33,43,45-47,88.

23   Accordingly, Post's Crossclaim for violation of the Arizona Consumer Fraud Act states a

24   claim upon which relief can be granted.

25       **J.    Negligence**

26       To prove negligence, one must establish: (1) duty, (2) breach of that duty, (3)

27   causation, and (4) damages. <u>Ocotillo West v. Superior Court</u>, 488, 844 P.2d 653, 655 (Ariz.

28   Ct. App.1992).  Nelcela argues Post has failed to allege it owed Post a duty. While the duty

1   of care as an essential element of actionable negligence, arises by operation of law, it may

2   and frequently does arise out of a contractual relationship, the theory being that

3   accompanying every contract is a common law duty to perform with ordinary care the thing

4   agreed to be done, and that a negligent performance constitutes a tort as well as a breach of

5   contract. RESTATEMENT (SECOND) TORTS §385. The Crossclaim alleges Nelcela Defendants

6   possessed specialized skill and knowledge and were under a duty to exercise the degree of

7   care ordinarily expected in the business.   Dkt. #84 Post Crossclaim at ¶¶118-120.

8   Accordingly, Post's Crossclaim for negligence states a claim upon which relief can be

9   granted.

10   **K.   Dismissal of Messrs Campagna and Dollarhide**

11   Finally, Nelcela argues Messrs Campagna and Dollarhide must be dismissed because

12   the Crossclaim neither alleges they were parties to any contract nor provides allegations

13   sufficient to pierce the corporate veil.  "Corporate directors are not personally liable for torts

14   committed by the corporation or by one of its officers merely by virtue of the office they

15   hold. To be held liable, the directors or officers must participate or have knowledge

16   amounting to acquiescence or be guilty of negligence in the management or supervision of

17   the corporate affairs causing or contributing to the injury." Bischofshausen, Vasbinder, and

18   Luckie v. D.W. Jaquays Min. and Equip. Contractors Co., 700 P.2d 902, 908-909 (Ariz. Ct.

19   App. 1985).

20   The actionable misrepresentations above were made by Messrs Campagna and

21   Dollarhide.  Dkt. #84 Post Crossclaim at ¶¶21,22, 24,26,28,33,43,45-47,88.   Moreover,

22   Post's Crossclaim alleges Messrs Campagna and Dollarhide knew Post was relying on

23   representations regarding the functionality of Nelcela System. Id. at ¶6  Post alleges while

24   Mr. Dollarhide informed Ms. Gerdts he had tested the modified Nelcela System prior to

25   going live, he later stated he had never tested the modified system Id. at ¶48. Further, the

26   Crossclaim alleges Messrs Campagna and Dollarhide knew these statements were false when

27   made. Id. at ¶74.  Taking these allegations as true, they sufficiently state a claim that Messrs

28

1    Campagna and Dollarhide participated in or were guilty of negligence in the management of
2    Nelcela.

3    **IV.    The Clothier's Motion to Dismiss Third Party Claims Against Gene Clothier and**
         **Toni Clothier, (Dkt. #128).**
4

5           The Clothier's motion argues (1) Nelcela's claims are not "supported by any testimony
6    or evidence;" (2) fail to allege specific facts to support a conspiracy claim; and (3) are
7    "shrouded fraud claims" subject to Rule 9(b) particularity requirements.

8           First, the Clothier's contention Nelcela's claims are not "supported by any testimony
9    or evidence" is wholly without merit.  The Clothiers do not argue the allegations in Nelcela's
10   Third Party Complaint are conclusory, and instead, argues the allegations cannot be
11   "supported by any testimony or evidence."  The Clothiers go on to argue, Mary Gerdts' and
12   Gene Clothier's deposition has already been taken, but "the depositions were not even
13   mentioned in [Nelcela's] Response."

14          In determining whether a complaint states a claim, all allegations of material fact are
15   taken as true and construed in the light most favorable to the nonmoving party.  Wyler
16   Summit P'ship v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998).  As such, an
17   inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for
18   failure to state a claim.  Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir.
19   1998).  Had the Clothiers surmised depositions were necessary, then a motion for summary
20   judgment was appropriate.

21          Secondly, the Clothiers allegations regarding the "conspiracy claims" failing to allege
22   specific facts supporting the existence of a conspiracy is without merit.  The RESTATEMENT
23   (SECOND) OF TORTS provides: for harm resulting to a third person from the tortious conduct
24   of another, one is subject to liability if he:

25              (a) does a tortious act in concert with the other or pursuant to a
                common design with him, or
26
                (b) knows that the other's conduct constitutes a breach of duty
27              and gives substantial assistance or encouragement to the other
                so to conduct himself, or
28

1          (c) gives substantial assistance to the other in accomplishing a
           tortious result and his own conduct, separately considered,
2          constitutes a breach of duty to the third person.

3          Nelcela's Amended Third-Party Complaint alleges: Ms. Gerdts sought out and worked

4    in concert with Mr. Clothier for the purpose of avoiding paying Nelcela and made numerous

5    misstatements regarding Nelcela, in particular, that Nelcela did not own software that it

6    legally owned.  <u>Am.</u> <u>Compl.</u> IV, at ¶¶12-19.  Nelcela alleges Gene Clothier knew these

7    misstatements were false and made them for the benefit of MTSI. <u>Id.</u> These misstatements

8    resulted in infringement of Nelcela's copyrights and conversion of Nelcela's software.  <u>Id.</u> at

9    ¶¶23,32,41.  Taking as true these allegations, the Complaint alleges Mr. Clothier worked in

10   concert with Ms. Gerdts and MTSI making misrepresentations to third parties for the purpose

11   of avoiding payment to Nelcela and benefitting MTSI, which resulted in infringement of

12   Nelcela's copyrights and conversion of Nelcela's software.   Accordingly, the Nelcela's

13   Amended Third-Party Complaint states a claim of aiding and abetting tortious conduct.

14         Finally, the Clothiers arguments Nelcela's claims are "shrouded fraud claims" subject

15   to Rule 9(b) particularity requirements.   Nelcela's third-party

16   complaint alleges: (1) Aiding and Abetting Tortious Conduct re: Copyright Infringement; (2)

17   Aiding and Abetting Tortious Conduct re: Conversion; (3) Defamation; and (4) Injurious

18   Falsehood.  Rule 9 (b) provides "all averments of fraud or mistake" must be stated with

19   Particularity. FED. R. CIV. PRO. 9(b) (2005).  Nelcela has not alleged a cause of action in

20   fraud or mistake.  Plaintiff fails to cite any authority whatsoever for the proposition Nelcela's

21   claims are subject to Rule 9(b) particularity requirements.  Furthermore, "to state a claim for

22   slander per quod or injurious falsehood a party need only meet Rule 8's liberal pleading

23   requirements." <u>Leavitt v. Cole</u>, 291 F. Supp.2d 1338, 1345 (M.D. Fla. 2003). Plaintiff has

24   failed to cite the elements for the cause of action, the allegations that are deficient, or any

25   applicable law.  The motion is without merit and will be denied.

26   **V.    Movant Charles Anderson's Motion to Dismiss State Fraud Claim, (Dkt. #211);
           Movant Charles Anderson's Motion to Strike Response, (Dkt. #246); and**
27   **     Plaintiff's Motion for Reconsideration of Order Denying Stipulation to Extend
           Time to File Response to Charles Anderson's Motion to Dismiss, (Dkt. #256).**

28

1

**A.     Movant Charles Anderson's Motion to Strike Response, (Dkt. #246); and
Plaintiff's Motion for Reconsideration of Order Denying Stipulation to
Extend Time to File Response to Charles Anderson's Motion to Dismiss,
(Dkt. #256).**

2

3

4      On September 13, 2005, the Court denied the parties stipulation for a two-day

5   extension for Plaintiff to respond to Movant Anderson's Motion to Dismiss because Plaintiff

6   failed to allege good cause for the extension.  In its motion for reconsideration, Plaintiff has

7   set forth its good cause.  Although the Court has advised the parties that absent compelling

8   good cause extensions of time will not be granted, the Court finds denying reconsideration

9   would essentially result in Plaintiff's default on the instant motion.  Such default is not

10  justified given the two-day extension did not result in delay of deadlines and the fact that

11  Movant Anderson stipulated to the extension.  Accordingly, the Court will grant the motion

12  for reconsideration and deny the motion to strike.

13

**B.     Personal Jurisdiction**

14      To establish personal jurisdiction over Mr. Anderson, Plaintiff has the burden of

15  showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident

16  defendant; and (2) the exercise of jurisdiction comports with principles of due process.

17  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995).  Arizona's

18  long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process

19  Clause of the United States Constitution. ARIZ. R. CIV. PRO. 4.2(a) (2004); Doe v. American

20  Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997).  Therefore, the only issue is whether

21  the exercise of jurisdiction over Defendant accords with due process.  See Omeluk, 52 F.3d

22  at 269.

23      To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only

24  make a prima facie showing of jurisdiction.  Ziegler v. Indian River County, 64 F.3d 470,

25  473 (9th Cir. 1995).  In determining whether the plaintiff has met his burden, the Court must

26  take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional

27  facts in the plaintiff's favor. Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lamber, 94 F.3d

28  586, 588-89 (9th Cir. 1996).

1    Due process requires that the nonresident defendant have "certain minimum contacts

2   with [the forum] such that the maintenance of the suit does not offend 'traditional notions of

3   fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316

4   (1945) (internal citation omitted).  There, are two types of personal jurisdiction, general and

5   specific. Plaintiff concedes "the MTSI claim against Anderson is not necessarily related to

6   Anderson's contacts with this state," and accordingly, Plaintiff must establish Mr. Anderson

7   is subject to general jurisdiction in Arizona. Burger King Corp. v. Rudzewicz, 471 U.S. 462,

8   472 (1985) (holding a finding of specific jurisdiction requires that the alleged injuries "arise

9   out of or relate to" the activities between resident and non-resident).

10    A defendant is subject to general jurisdiction only where the defendant's contacts with

11   a forum are "substantial" or "continuous and systematic." Bancroft & Masters, Inc. v.

12   Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir.2000).  The only allegations regarding Mr.

13   Anderson's contacts with Arizona are that: Mr. Anderson entered a contract with an Arizona

14   resident and that Mr. Anderson attended a deposition in Arizona.  Neither is sufficient to

15   establish jurisdiction over Mr. Anderson.  "[M]erely contracting with a resident of the forum

16   state is insufficient to subject the nonresident to the forum's jurisdiction." Holt Oil & Gas

17   Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir.1986); see also Moylan v. AMF Overseas Corp.,

18   354 F.2d 825, 829 (9th Cir.1965) (holding that a forum visit for purposes of a deposition does

19   not establish the type of "purposeful availment" necessary to confer jurisdiction over the

20   deponent).

21    While Plaintiff cites to the "effects test" in support of its argument Mr. Anderson

22   purposefully availed himself of the benefits and privileges of conducting business in Arizona,

23   there are no allegations whatsoever on the face of the complaint establishing Mr. Anderson

24   "expressly aimed at or targeted" Arizona or that Mr. Anderson knew his conduct would cause

25   harm in Arizona.  See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817 (9th Cir.1988)

26   (finding effects test inapplicable and stating that, "unlike Calder and Haisten, in this case

27   personal jurisdiction is sought on a contract claim, not on a tort claim.").

28

1       Again, although Plaintiff argues it makes no sense to litigate this matter in

2 Nevada and it is more convenient to join Mr. Anderson in this litigation, the Due Process

3 Clause "protects an individual's liberty interests in not being subject to the binding judgment

4 of a forum with which he has established no meaningful contacts, ties, or relations." Burger

5 King Corp., 471 U.S. at 471-72. "[A state] does not acquire [personal] jurisdiction by being

6 the 'center of gravity' of the controversy, or the most convenient location for litigation . . . the

7 issue is personal jurisdiction, not choice of law" Hanson v. Deckla, 357 U.S. 235, 254 (1958).

8 Because the Court finds it lacks personal jurisdiction over Mr. Anderson, it declines to reach

9 Mr. Anderson's alternative arguments for dismissal.

10 **VI.**    **Defendant Post's Motion for Sanctions Against Nelcela Regarding: Spoliation of Evidence, which Plaintiff and the Clothier's have joined (Dkt. #243); and Defendant Post's Motion to Strike Defendant Nelcela's Supplemental Response to Post's Motion for Sanctions Re: Spoliation of Evidence or for Leave to Reply to Same (Dkt. #274); and Defendant Post's Motion for Leave to Submit Post-Hearing Memorandum Regarding Issues Raised at Spoliation Hearing (Dkt. #296).**

14

15     **A.**    **Background**

16       Post filed a lawsuit in Maricopa County Superior Court on May 25, 2001, against

17 Nelcela, which was removed and consolidated in this action. Post's allegations were

18 substantially similar to those alleged in the Amended Crossclaim, which was the subject of

19 Nelcela's motion to dismiss outlined above, and involved claims related to breach of the

20 August 2000 Contract to provide Post a customized Nelcela System to enable Post to process

21 credit card transactions in house. Post's state law complaint alleged that on information and

22 belief Nelcela did not own Nelcela System.

23       On June 29, 2001, Post filed a Rule 34 request for inspection of Nelcela's server, SQL

24 database, audit/security system, and VPS in the state court litigation. On July 9, 2001,

25 Nelcela sought a protective order to prevent the inspection, which the state court denied on

26 August 23, 2001. Post contends its request for inspection was never rescinded. Nelcela

27 disputes this and alleges the Rule 34 inspection was related to the discrete issue of

28 determining whether Post violated the Temporary Restraining Order, by accessing data and

1  stealing Nelcela's source code. Nelcela further argues the state court judge denied Nelcela's

2  motion for a protective order because the state court was dissatisfied with the parties

3  stipulation to vacate the hearing on the protective order and both parties stipulated to

4  withdrawal of motions for sanctions related to alleged violations of the temporary restraining

5  order. Post contends it continued to seek inspection, sending Nelcela a request to maintain

6  the integrity of the system as it existed in December 2000 on June 18, 2002.  Post also argues

7  it raised the issue of inspection on September 3, 2002.

8        While the issue of whether Nelcela system was at issue in 2001 is disputed, the

9  underlying facts related to allegations Nelcela Defendants destroyed evidence are not in

10  dispute.  Specifically, this dispute involves Messrs Dollarhide and Campagna beating seven

11  computer hard drives with a hammer and overwriting older versions of source code.

12

13

14        **B.     Legal Standard**

15        A trial court has inherent authority to sanction a party for destroying relevant

16  evidence.   Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  Courts applying this

17  sanction have done so, when the moving party established (1) duty to preserve; (2) relevancy;

18  and (3) prejudice.  Id.  First, a court can instruct the jury that it may draw an inference

19  adverse to the party or witness responsible for destroying the evidence. Id.  Second, a court

20  can exclude witness testimony proffered by the party responsible for destroying the evidence

21  and based on the destroyed evidence. Id.  Finally, a court may "in extreme circumstances"

22  dismiss the claim of the party responsible for destroying the evidence.   See Halaco

23  Engineering Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988). Furthermore, "a finding of 'bad

24  faith' is not a prerequisite to this corrective procedure." Glover, 6 F.3d at 1329 (citing

25  Unigard Sec. Ins. v. Lakewood Engineering & Mfg., 982 F.2d 363, 368-70 & n. 2 (9th

26  Cir.1992)).

27        1.     **Duty to Preserve**

28

1    The record before the Court is one with two opposing versions of the conduct in state

2    court and the importance of Nelcela's system during 2001.  Notably, neither party has

3    provided information for which the Court can ascertain the validity of arguments related to

4    the basis for the inspection request, denial of a protective order, and effect of the parties

5    stipulation to withdraw motions for sanctions. Furthermore, both parties have stated that Post

6    was represented by different counsel in 2001, during the time period at issue.  Due to the

7    lapse of time, change in counsel, change in court, and lack of information, the precise facts

8    related to the inception of this litigation, centrality of Nelcela's system, and whether the

9    system was the subject of an ongoing request for inspection have not been fully developed.

10    However, Nelcela's arguments "ownership" was not at issue when this litigation was

11    commenced in state court are not well taken.  Although Post's claims were for breach of

12    contract and various torts, Post challenged Nelcela's ownership of the source code in its

13    complaint. Furthermore, where litigation has commenced, the system is the lynchpin of the

14    litigation, the system is the subject of the temporary restraining order, the Court finds at a

15    minimum Nelcela should have ensured it had produced all materials required before allowing

16    destruction of the hard drives and firewall at issue.  Nelcela has made numerous contentions

17    related to the scope of the Rule 34 inspection demand, the facts surrounding the denial of the

18    protective order, and contentions the parties resolved the matter.  The court finds these issues

19    must be developed and will be relevant to the bad faith (or good faith) of Mr. Dollarhide

20    when destroying the hard drives and firewall.  Accordingly, it appears Nelcela had a duty to

21    preserve the integrity of its system as it existed in December 2000.

22                            **2.    Relevance**

23    Post argues destruction of the hardware is relevant to this litigation, because Post is

24    now unable to have a forensic expert inspect these computers to find when and how the

25    Nelcela System source code was developed, extract prior versions of the source code, and

26    disprove Nelcela's claim Post went through Nelcela's firewall and stole the source code.

27    Nelcela contends it has provided Post the source code as it existed in December 2000.

28    Nelcela discarded only outdated equipment and preserved software.  Furthermore, Nelcela

1   argues "writing over" older versions of software is commonly followed in the industry.  As

2   indicated above, while Post put Nelcela's ownership of the source code at issue, it is unclear

3   to the Court whether Post's inspection request was narrowed to the issue of whether there

4   had been a violation of the temporary restraining order.

5               **3.      Prejudice**

6               Post argues inspection of the destroyed hard drives is "vital" to its defense and,

7   specifically, Post's forensic expert cannot inspect the hardware to rebut Nelcela's allegations

8   Post breached the firewall and stole Nelcela's source code. Nelcela argues the hardware was

9   irrelevant because all relevant information was preserved.  After reviewing the papers and

10  arguments, the Court finds Post's allegations of the extreme importance of inspecting this

11  hardware is *significantly* belayed by Post's conduct.  The last request from Post (which

12  appears to be an oral request of some kind) was made three years ago.  Post did not discover

13  the destruction because its expert attempted to inspect Nelcela's system, and instead,

14  discovered Mr. Dollarhide had destroyed the hard drives in an August 2005 deposition.

15  While Post's expert report was ultimately due in  September 2006, the deadline  was initially

16  April 15, 2005. Dkt. #52.  On March 31, 2005, the Court extended Post's expert report

17  deadline to May 27, 2005. Dkt. #104.  Again on June 22, 2005 the Court extended Post's

18  expert report deadline to September 2, 2005. Dkt. #178.  Moreover, the Court repeatedly

19  admonished the parties that continuances would not be granted absent compelling good

20  cause.  Given the reluctance of the Court to extend deadlines, it is curious Post had not

21  sought inspection of Nelcela's system prior to August 2005, given looming expert disclosure

22  deadlines.  Where as here, the Court is presented with opposing allegations, the Court is

23  obliged to make assessments of the credibility of the arguments.  The Court finds Post's

24  contentions of prejudice are significantly belayed by its conduct.

25          **C.      Bad Faith**

26          In order to warrant the requested sanction of dismissal, the Court must conclude Mr.

27  Dollarhide's conduct was willful and in bad faith.  Century ML-Cable Corp. v. Carrillo, 43

28  F. SUPP.2d 176 (D.P.R.1998) (held that defendant's willful destruction of his laptop and

1    business records justified entry of default judgment against him and order to pay attorneys'

2    fees and costs);  Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc., 593 F. SUPP. 1443

3    (C.D.Cal.1984) (entry of default judgment and costs against defendant for destroying

4    documents and erasing computer tapes and discs preventing plaintiff from presenting critical

5    evidence to a jury); Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166

6    (D.Colo.1990) (default judgment only appropriate remedy against defendant who destroyed

7    all copies of its source code despite duty to preserve as evidence materials within its control).

8          The Court is troubled by the timeline of events surrounding the destruction of the hard

9    drives.  For example, the state court litigation commenced on May 25, 2001, and Post

10    demanded inspection of Nelcela's system a short time thereafter on June 29, 2001.  And

11    apparently in late 2001 Mr. Dollarhide took a hammer to the hard drives.  Nonetheless, the

12    record is simply unclear, due to the fact these issues were presented in state court, the fact

13    Post was represented by different counsel during the relevant time this litigation was

14    commenced, the opposing arguments regarding the scope of the Rule 34 inspection, the basis

15    for the state court's denial of Nelcela's motion for a protective order, and finally the nearly

16    four years that has lapsed since the destruction of the evidence at issue.  Nonetheless, here

17    where Post seeks dismissal of Nelcela's claims, Post bears the burden of persuasion. The

18    Court finds there has been an insufficient showing of bad faith conduct and prejudice to

19    warrant the extreme sanction of dismissal.  Moreover, the issues of relevancy remain unclear.

20          Accordingly, the Court will deny the motion.  However, Post is granted leave to

21    reurge the issue in limine before the jury trial, should the Court not resolve the issue of

22    ownership on the papers.  Post is advised the Court will only address the issue after

23    presentation of evidence in the trial, so the Court will be in a better position to evaluate all

24    the evidence.  At that time, and if appropriate, the Court will consider whether a sanction is

25    warranted.

26          **IT IS HEREBY ORDERED** Defendant Nelcela's Motion to Dismiss Post's

27    Crossclaim is **DENIED IN PART** and **GRANTED IN PART**.  (Dkt. #113).  The Motion

28

1   is granted only as to Post's Crossclaim for Conversion, Count 3, which is hereby dismissed
2   with prejudice.

3       **IT IS FURTHER ORDERED** Upon Nelcela's Motion to dismiss and MTSI's consent
4   thereto, Defendant Nelcela's Motion to Dismiss Case is **GRANTED**. (Dkt. #159). Count 10,
5   Count 11, Count 14, Count 15, and Count 16 are hereby dismissed from Plaintiff's First
6   Amended Complaint.

7       **IT IS FURTHER ORDERED** Nelcela is granted leave to file a motion for attorney's
8   fees with respect to its' motion at Dkt. #159, outlining the legal and factual basis for a fee
9   award.

10      **IT IS FURTHER ORDERED** the Clothier's Motion to Dismiss Third Party Claims
11  Against Gene Clothier and Toni Clothier is **DENIED**. (Dkt. #128).

12      **IT IS FURTHER ORDERED** Movant Charles Anderson's Motion to Dismiss State
13  Fraud Claim is **GRANTED**. (Dkt. #211). Movant Anderson is hereby dismissed from this
14  action for lack of personal jurisdiction.

15      **IT IS FURTHER ORDERED** Movant Charles Anderson's Motion to Strike
16  Response is **DENIED**. (Dkt. #246).

17      **IT IS FURTHER ORDERED** Plaintiff's Motion for Reconsideration of Order
18  Denying Stipulation to Extend Time to File Response to Charles Anderson's Motion to
19  Dismiss is **GRANTED**. (Dkt. #256).

20      **IT IS FURTHER ORDERED** Defendant Post's Motion to Strike Defendant Nelcela's
21  Supplemental Response to Post's Motion for Sanctions Re: Spoliation of Evidence or for
22  Leave to Reply to Same is **DENIED IN PART** and **GRANTED IN PART**.  The Court will
23  grant Post leave to file a supplemental response. (Dkt. #274).

24      **IT IS FURTHER ORDERED** Defendant Post's Motion for Leave to Submit Post-
25  Hearing Memorandum Regarding Issues Raised at the Spoilation Hearing is **DENIED**. (Dkt.
26  #296).

27

28

DATED this 16th day of December, 2005.

Mary H. Murgula
United States District Judge