LAW OFFICES
**RONAN & FIRESTONE, PLC**
9300 E. RAINTREE DRIVE, SUITE 120
SCOTTSDALE, ARIZONA 85260
(480) 222-9100
Merrick B. Firestone, SB #012138
Veronica L. Manolio, SB #020230
*Attorneys for the Nelcela Defendants*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Nelcela, Inc., an Arizona corporation; <br> Len Campagna, an Arizona resident; <br> Alec Dollarhide, an Arizona resident; <br> Ebocom, Inc., a Delaware Corporation; <br> POST Integrations, Inc., an Illinois Corp., <br><br> Defendants. <br><br> And Related Counterclaims and Cross-Claims. | No.   02-CV-1954 - PHX-MHM <br><br> **NELCELA, INC., LEN CAMPAGNA AND ALEC DOLLARHIDE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF MTSI ON ALL PHASE I CLAIMS** [1] <br><br> (The Honrable Mary H. Murgia) <br><br> **(Oral Argument Requested)** |

Pursuant to Rules 56(a)-(b) of the Federal Rules of Civil Procedure ("FRCP"), Nelcela, Inc., Campagna and Dollarhide (collectively "Nelcela") hereby move for summary judgment against Merchant Transaction Systems, Inc. and Gene and Tone Clothier ( "MTSI") on all "Phase I" claims.

Nelcela is entitled to summary judgment because MTSI just recently entered a new, "Settlement Agreement and Mutual Release" on January 20, 2006 admitting that it does not own any of the software it alleged it owned in this case. Though MTSI should have withdrawn or dismissed its claims of Ownership, it failed to do so. Moreover, the Settlement Agreement specifically releases Nelcela, Inc., Alec Dollarhide and Len Campagna from any claims in this suit.

---

[1] As fully outlined in its Motion for Partial Summary Judgment against the Post parties, Nelcela has attempted to limit its request(s) here to "Phase I" claims in this proceeding.

1    Even if MTSI had not made this new admission regarding its lack of ownership, MTSI does

2    not own the claims it asserted in this suit and never has. Any and all claims belonged to MTSI's

3    predecessor, Credit Card Services, Inc. ("CCS Inc."), but CCS, Inc. sold all of its assets, liabilities

4    and claims to a third-party. When CCS Inc. sold, both MTSI and CCS Inc. executed a Release that

5    specifically and forever waives the very causes of action it has filed in this case.

6    Furthermore, Nelcela cannot be liable for any claims of fraud, misappropriation, infringement

7    or related action(s) because Nelcela is the true owner of the software at issue. MTSI has no evidence

8    to dispute the System Ownership Agreement in place. MTSI has (and has always had) knowledge

9    of Nelcela's ownership.

10    This motion is fully supported by the accompanying memorandum of points and authorities

11    and the simultaneously-filed Omnibus Statement of Facts. Nelcela respectfully requests judgment

12    on all copyright-related claims and also requests an award of its attorneys' fees and costs.

13    **DATED** this 17th day of February, 2006.

14    RONAN & FIRESTONE, PLC

15

16    _____

17    Merrick B. Firestone
     Veronica L. Manolio

18    9300 E. Raintree Drive, Suite 120
     Scottsdale, Arizona 85260
     *Attorneys for the Nelcela Defendants*

19

20    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

21

22    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

23    Nelcela hereby incorporates its arguments regarding the January 20, 2006 Settlement

24    Agreement briefed in its other Motions for Summary Judgment filed contemporaneously with this

25    motion as if set forth fully verbatim here. Nelcela must prevail because **MTSI now acknowledges**

26    **that it does not own any portion of the software as it had alleged in this suit.** *See*, **SOF 83, 87.**

### A.     Background of the MTSI and Nelcela Parties

Alec Dollarhide ("Dollarhide") is a computer programmer who has developed software for credit card processing since roughly 1994. *See*, **SOF 1**. In 1994, Dollarhide was hired by Credit Card Services, Ltd. ("CCS Ltd.") to draft software for credit card processing. *See*, **SOF 2**.

On April 28, 1995, CCS Ltd. and Dollarhide entered into a specific agreement stating that Dollarhide owned any and all systems he wrote while he was employed by CCS Ltd. The System Ownership Agreement between CCS Ltd. and Alec Dollarhide reads:

> **"Alec Dollarhide will own any systems written and developed by him during the course of his employment with Credit Card Services, Ltd., including all enhancements made."**
>
> **"Credit Card Services will have a perpetual license to use, but not sell, transfer, or assign any of the systems written and developed by Alec Dollarhide during the term of his employment with Credit Card Services Ltd."**

*See*, **SOF 8**.

In 1997, Dollarhide and Leonard "Len" Campagna ("Campagna") formed "Nelcela" for the purpose of writing **new** credit card processing software. *See*, **SOF 23**. Nelcela employed Dollarhide and his two brothers, Jac and Anthony, to draft this new software. *See*, **SOF 24**. Nelcela's copyrighted the "Nelcela Merchant System" at issue on May 18, 1999. *See*, **SOF 25**.

In 1996, CCS, Ltd. was purchased by Gene Clothier. *See*, **SOF 17**. Clothier began doing business under the name CCS, Incorporated ("CCS Inc."), a Nevada Corporation. *See*, **SOF 18**. When CCS Ltd. sold or "merged" into CCS Inc., CCS Inc. acquired all of the CCS Ltd. assets. *See*, **SOF 19**. To date, and despite several discovery requests in this case and the related state litigation, MTSI has never produced the executed Agreement of the sale from CCS Ltd. to Gene Clothier. *See*, **SOF 20**. Eventually, CCS, Inc. began doing business as MTSI. *See*, **SOF 21**. MTSI alleges that CCS Inc., "merged into" MTSI. *See*, **SOF 22**. However, despite that Nelcela has sent several discovery requests on this topic, MTSI has never produced any evidence to support its contention that CCS, Inc., "merged" or was otherwise acquired by MTSI. *Id.*

Also in 1999, Dollarhide resigned his position from MTSI and went to work for Nelcela full-time. *See*, **SOF 27.** When Dollarhide decided to leave MTSI, MTSI began negotiating to license or use the Nelcela Merchant System. *See*, **SOF 28.** During these negotiations, MTSI outwardly and fully admitted that Dollarhide had created the Nelcela Merchant System while working for Nelcela. *Id.; see also*, **SOF 29-31.** MTSI acknowledged that it was using Nelcela's software and never claimed that it owned software. *Id.* MTSI even licensed Nelcela's "Radio Point of Sale" software on November 29, 1998. *See*, **SOF** 30. MTSI never asserted that Dollarhide did anything improper by creating new software outside of the scope of his employment by MTSI or any of its predecessors. *See*, **SOF 31.** Huffman even acknowledged that MTSI was aware of and "supported" Dollarhide's work with Nelcela and his development of new software. *See*, **SOF 31.**

In February 2001, Mary Gerdts of Post and her previous counsel flew to California and met with Huffman. *See*, **SOF 59.** Huffman testified that Gerdts convinced MTSI that Dollarhide stole MTSI's software and "sold" it to Post. *See*, **SOF 59-60.** Huffman admits now that MTSI had no damages and never suspected that Dollarhide or Nelcela did anything wrong. *Id.* In fact, MTSI was no longer even in the processing business when Gerdts/Post called on it. *Id.*

On March 29, 2001, CCS Inc. sold to a third party, Electronic Payment Exchange, Inc. ("EPX"). *See*, **SOF 32.** EPX purchased **all** of the CCS Inc. assets and liabilities. *Id.* The CCS Inc./ EPX Agreement includes a specific Release section that prohibits this suit against Dollarhide, Campagna or Nelcela. *See*, **SOF 33.** More importantly, at the time that CCS Inc. and MTSI entered this agreement with EPX, MTSI had already "licensed" the Nelcela code to Post. *See*, **SOF 61.** MTSI had specific knowledge of Post's contentions (including that Dollarhide/Nelcela had taken its code), and MTSI still particularly agreed to release all former employees from any cause of action. *Id.* When this Agreement was entered, Dollarhide was a past employee of both CCS Inc. and MTSI as defined in the Release section. *See*, **SOF 2, 16, 27, 34.** Dollarhide was also a, "future ... stockholder" of EPX. *See*, **SOF 35.** MTSI knew these facts and agreed to the Release. *Id.*

**B.   Background of the MTSI Litigation**

MTSI first sued Nelcela in a related state action seeking reimbursement of roughly $18,000.00 for usage of certain communication lines to process credit transactions. Nelcela prevailed in that litigation because: 1) MTSI never owned any causes of action, but rather only CCS Inc. (MTSI's predecessor) could have ever filed the lawsuit; and 2) **Post** actually owed MTSI the fees. *See*, **SOF 41, 52.** Nelcela had acted as an agent of MTSI/CCS Inc. and arranged for Post and MTSI/CCS Inc. to work together. *See*, **SOF 52.**

MTSI then filed this lawsuit for, "ownership" of the software that Nelcela authored and copyrighted. However, when the state court ruled that MTSI did not "own" the claims in that court, MTSI provided a "Resolution" allegedly transferring ownership of some unknown software from CCS Inc. to MTSI on June 1, 1999. *See*, **SOF 37**. After Nelcela prevailed and MTSI was called into court for a Debtors' Examination before Commissioner Fink, Huffman provided a set of financial documents for MTSI that did not support the purchase of software described in the Resolution of June 1, 1999. *See*, **SOF 38.** Because Huffman could not properly answer any financial questions, Commissioner Fink ordered Ms. Huffman to re-appear for her Debtor's Exam and sanctioned MTSI for its game-playing and failure to abide by Court's Order(s). *Id.* During her second appearance, Huffman appeared with a "new" set of financials for MTSI for the same time period. *See*, **SOF 39.** Huffman admitted the financials were changed between the time of her first appearance in court and the second court-ordered appearance. *Id.* Despite the "changed" financials, there is no support for the "Resolution" of 1999 and no proof that MTSI acquired any software. *See*, **SOF 40.** There are no contracts, agreements, or other documents that prove that MTSI owned or otherwise "acquired" any software from CCS Ltd., CCS Inc., or anyone else. *Id.; see also,* **SOF 41**. There is no proof that MTSI "held back" this action when it sold everything to EPX in 2001. *See*, **SOF 32, 37, 40-41**.

MTSI knew that it would never prove the ownership that it had falsely alleged and knew that its story had changed too many times. Now, after 5 years of this litigation, **MTSI finally admits that it does not own any software as it had alleged in this lawsuit**. *See*, **SOF 87.**

## II.     LAW AND ARGUMENT

A court must grant partial summary judgment if the pleadings and supporting evidence, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law on any claim. FRCP 56(c); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Summary judgment is appropriate where a party, "fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also, Estate of Hernandez v. Flavio*, 187 Ariz. 506, 508-09 (1997).

### A.     THERE IS NO DISPUTE THAT MTSI DOES NOT OWN THE SOFTWARE AT ISSUE, AND ALL OF MTSI'S "OWNERSHIP" CLAIMS MUST BE DISMISSED.

In its recent Settlement Agreement and Mutual Release, MTSI admits it does not own the software that is at dispute in this case. *See*, **SOF 87.**   Instead, MTSI acknowledges that it, "unknowingly used" the, "computer software" but that the software was owned by the other parties. *See*, **SOF 83.**   Despite its admission, MTSI's ownership claims for "Quiet Title of Copyrights," Unfair Competition or Palming or Passing Off, Misappropriation, Conversion, Interference with Economic Relations, and Declaratory Judgment are still pending. Because there is no factual dispute on ownership, Nelcela is entitled to summary judgment on all of these claims. *See, Celotex*, 477 U.S. at 322. (Summary judgment for Nelcela is appropriate because MTSI has conceded the existence of ownership – an essential element to each of these claims.)

### 1.     Nelcela is Entitled to Judgment on the Quiet Title to Copyrights Count.

MTSI sued Nelcela alleging that it owns the software at issue based on a work-for-hire theory. *See*, First Amended Complaint ("FAC") on file with this Court at p. 9, ¶¶41 - [sic]38. MTSI claims it is the, "sole and proper owner of all rights, title and interest" in the software, and both of the MTSI principals have testified that MTSI owned the software. *Id.; see also, e.g.,* **SOF 21, 40.** To sustain its claims, MTSI has the burden of proving that it owns the software. 17 U.S.C. §501(b)

(Only owners of copyrights and persons granted exclusive licenses can sue for copyright infringement.); *see also, Coogan v. Avnet, Inc.*, 2005 WL 2789311 (D.Ariz. 2005)(To prove copyright infringement, a plaintiff **must** demonstrate ownership of the allegedly infringed work.)(Emphasis added.), *citing to Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991) and *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989). Ownership is an essential element of proving infringement or the ownership-related claims. 17 U.S.C. §501(b); *Coogan, supra*. Because MTSI now concedes that another party owns the software, MTSI now longer has a claim for Quiet Title. *Id.*

### 2. Nelcela is Entitled to Judgment on the Unfair Competition, Palming or Passing Off Count.

Unfair competition centering on palming off or passing off occurs when a defendant induces buyer(s) to purchase a product that legally belongs to the plaintiff by misrepresenting the ownership of the product. *See, e.g., Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 124, 970 P.2d 954, 956 (App. 1999). MTSI would only have a claim for "palming off" or "passing off" or unfair competition if Nelcela had attempted to induce buyers to believe that MTSI's software belonged to Nelcela. *Id.; see also, Kaibab Shop v. Desert Son, Inc.*, 135 Ariz. 487, 662 P.2d 452 (App. 1983). Because MTSI now concedes that it did not own software, it has no claim for palming or passing off.

### 3. Nelcela is Entitled to Judgment on the Misappropriation Count.

MTSI could only prove a misappropriation claim if it proved that Nelcela misappropriated a trade secret that belonged to MTSI and was actually safeguarded by MTSI. See, A.R.S. §44-401, *et. seq.; see also, Miller v. Hehlen*, 209 Ariz. 462, 470, 104 P.3d 193, 201 (App. 2005); *see also, Enterprise Leasing Company of Phoenix v. Ehmke*, 197 Ariz. 144, 23, 3 P.3d 1064, 1070 (App. 1999). The new Settlement Agreement concedes that: 1) the software was never MTSI's; and 2) Nelcela allegedly stole it from Lexcel. *See*, **SOF 83, 87**. Based on MTSI's own admissions, any claim for "misappropriation" is now lost. *Id.*

**4.      Nelcela is Entitled to Judgment on the Conversion Count.**

Conversion only occurs when one exercises wrongful dominion or control over the personal property of another. *See, Focal Point, Inc. v. U-Haul Co. of Arizona*, 746 P.2d 488 (App. 1986); *see also*, *Sears Consumer Financial Corp. v. Thunderbird Products*, 166 Ariz. 333, 334, 802 P.2d 1032, 1033 (Ct. App. 1991). MTSI would have to prove that it owned the software at issue or that it was entitled to demand it from Nelcela. *Id.* at 1034. Because MTSI concedes that it does not own the software (or even have rights to it), MTSI has no claim for conversion against Nelcela. *Id. all.*

**5.      Nelcela is Entitled to Judgment on the Interference Counts.**

MTSI claims interference with both its existing as well as its prospective economic relations because Nelcela interfered with MTSI's ability to market and sell its own software. *See*, FAC at ¶¶71-82. Now that MTSI acknowledges it does not own the software, Nelcela could not have impeded its ability to sell, market, license or otherwise distribute the software.

**6.      Nelcela is Entitled to Judgment on the Declaratory Judgment Count.**

MTSI can no longer ask the Court to declare it is the true owner when it now acknowledges in writing that Lexcel is the true owner.

**B.      NELCELA IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS AGAINST MTSI.**

**1.      Nelcela is Entitled to Judgment for Copyright Infringement and Conversion and should be Given Declaratory Judgment of its Ownership of the Software.**

To sustain its claim for copyright infringement, Nelcela must show that it owns the copyrighted Nelcela Merchant System and that MTSI has copied or used its copyrighted system. *See*, 17 U.S.C. §501(b); *see also, Coogan, supra,* 2005 WL 2789311; *Pasillas, supra,* 927 F.2d at 442; *Narell, supra,* 872 F.2d at 910. (Copyright infringement is proven when the plaintiff can demonstrate ownership as well as copying of the work by the defendant(s).) The undisputed evidence here proves that Nelcela owns the software and that MTSI illegally "licensed" it to Post:

1.     On April 28, 1995, CCS Ltd. and Dollarhide entered into a specific agreement stating that Dollarhide owned any and all systems he wrote while he was employed by CCS Ltd. *See*, **SOF 8**. The two persons entering the System Ownership Agreement testify that it is valid. *Id.*

2.     In 1997, Dollarhide and Campagna formed Nelcela to write new software. **SOF 23**.

3.     Dollarhide and his brothers transferred all ownership rights they may have had to Nelcela, Inc. *See*, **SOF 24, 26**.

4.     Nelcela properly and legally copyrighted its software, including the, "Nelcela Merchant System" on May 18, 1999. *See*, **SOF 25**.

5.     In February 2001, MTSI "licensed" the Nelcela code to Post. *See*, **SOF 61**.

6.     Pursuant to its recent Settlement Agreement, MTSI now admits that it does not own the software that it used and that it licensed to Post. *See*, **SOF 87**.

**(a.)    MTSI Cannot Rebut the *Prima Facie* Evidence of Nelcela's Ownership.**

While MTSI originally alleged ownership of the Nelcela Merchant System and now concedes that it does not own the code, MTSI also lacks any evidence to rebut Nelcela's ownership. Nelcela has provided the Certificate of Registration for its Nelcela Merchant System, and this Certificate acts as *prima facie* evidence of Nelcela's copyrighted work. *See, e.g., In re Napster, Inc. Copyright Litigation*, 191 F.Supp.2d 1087 (2002), where the Court ruled that, "A copyright certificate establishes prima facie evidence of the validity of a copyright and of the facts in the certificate." *See also*, 17 U.S.C. §410(c). The burden is shifted to MTSI to prove the **invalidity** of Nelcela's copyright. *See, Entertainment Research Group, Inc. v. Genesis Research Group*, 122 F.3d 1211, 1217 (9th Cir. 1997), citing to *North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) and *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085-86 (9th Cir. 1989).

MTSI's first theory was that it owned the code at issue. *See*, FAC. To support that theory, MTSI's own expert finds that there is, "substantial similarity" between the code MTSI produced and

1  that which Nelcela produced. *See*, **SOF 81.** MTSI's expert stated – in several instances – that the

2  MTSI code and the Nelcela code were derived from one another. *Id.* However, MTSI now has a new

3  theory – that the Nelcela code is "derived from" the Lexcel code. *See*, **SOF 83.** Unless MTSI could

4  offer **proof** that Nelcela's work is, "not original," but that its code was actually, "copied from"

5  Lexcel, MTSI cannot overcome the presumption of Nelcela is the legal owner. *See, Entertainment*

6  *Research, supra*, 122 F.3d at 1218.   This, "originality" of the work is the, "indispensable

7  prerequisite" that MTSI must disprove to overcome Nelcela's copyright, and MTSI has not

8  disproved the originality. *See, North Coast Industries, supra*, 972 F.2d 1031 at 1033.

9  **MTSI's expert did not even perform any analysis or comparison between the**

10  **MTSI/Nelcela code and either of the two Lexcel codes produced.** *See*, **SOF 81.** Moreover, the

11  remaining experts **disprove** that the MTSI/Nelcela code and the Lexcel code are similar. *Id.* Post's

12  expert, Robert Zeidman, compared both of the Lexcel codes to the Nelcela code only to find:

13      ... **No files in common**.
    ... almost **no correlation** between sets of files.
14      ... **no significant correlation**.

15  *See*, **SOF 81.**

16  Mr. Zeidman further confirmed that he has, "**not been able to determine which source code files**

17  **were the original ones**" between the Nelcela and Lexcel codes. *Id.* Emphasis added.

18  Nelcela's expert, Jeff Pell, confirmed Mr. Zeidman's findings in that, "The Lexcel source

19  code appears to have **very few if any similarities** to the "Merchant System" [...] at issue in this

20  litigation." *Id.* Emphasis added. "The two sets of codes are not even written in the same language,

21  one in C/C++ and the other in Powerbuilder, [...] it would be my conclusion that **they are not**

22  **duplicates of each other**, and thus are **not copies**." *Id.* Emphasis added.

23  The "originality" element is key in disproving Nelcela's ownership. MTSI has offered no

24  evidence to rebut this presumption, entitling Nelcela to summary judgment. *Entertainment*

25  *Research, supra,* 122 F.3d at 1218; *North Coast, supra*, 972 F.2d at 1033.

26

**(b.)   MTSI Admits it "Licensed" the Nelcela Code.**

The evidence of infringement in this matter is clear. MTSI admits that it used the Nelcela Merchant System, that it licensed the system to Post (or an affiliate company), and that MTSI received $50,000 for a "license" to use software that MTSI now admits was not its in the first place. *See*, **SOF 61, 87**. As noted above, Nelcela must only show that MTSI has copied or used its work to prevail on copyright infringement. 17 U.S.C. §501(b); *see also, Coogan, supra,* 2005 WL 2789311; *Pasillas, supra,* 927 F.2d at 442 and *Narell, supra,* 872 F.2d at 910. MTSI has always conceded that the code it "licensed" to Post was written by Dollarhide. *See*, MTSI's FAC at ¶22. (Dollarhide developed the software at issue in this case); *see also*, **SOF 28-29, 31** (MTSI outwardly acknowledged that Dollarhide and Nelcela developed the complete "backend system" for which it sued here.)   Based on MTSI's own admissions, Nelcela is entitled to summary judgment for copyright infringement. *See, Celotex, supra,* 477 U.S. at 322 (Summary judgment is appropriate because MTSI cannot disprove the essential element of ownership and admits the element of use.)

**(c.)   MTSI Admits to Conversion of Nelcela's Code.**

MTSI is liable for conversion if it exercises dominion and control over Nelcela's copyrighted software inconsistent with Nelcela's rights. *Sears Consumer Financial Corp. v. Thunderbird Products*, 166 Ariz. 333, 334, 802 P.2d 1032, 1033 (Ct. App. 1991). MTSI does not concede who owns the Nelcela copyrighted code, but MTSI does admit to licensing the Nelcela copyrighted version to Post. *See*, **SOF 61, 87**. MTSI admits to having accepted $50,000 from Post for licensing code that did not belong to MTSI. *See*, **SOF 61.** MTSI's use and license to Post demonstrates its dominion, control and use of Nelcela's copyrighted software is in denial of Nelcela's right(s) to earn money and/or profit from its own software. *Id.*; *see also, Focal Point, Inc. v. U-Haul Co. of Arizona,* 746 P.2d 488 (App. 1986); *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977, 983 (App. 1984). MTSI deprived Nelcela of (at least) $50,000 for the software, and Nelcela is now entitled to judgment on its conversion claim. *See, Celotex, supra,* 477 U.S. at 322-23.

1       **(d.)    Nelcela Must be Declared the Owner of the Software at Issue.**

2       MTSI's claims for ownership were based on a, "work for hire" theory, but MTSI has always

3 admitted that Alec Dollarhide and/or Nelcela authored the software at issue. *See*, FAC at ¶22

4 (Dollarhide developed the software at issue in this case); *see also*, **SOF 28-29, 31** (MTSI outwardly

5 acknowledged that Dollarhide and Nelcela developed the complete "backend system" for which it

6 sued here.) As fully discussed above, Nelcela has put forth *prima facie* evidence of ownership by

7 supplying its Copyright Certificate for the Nelcela Merchant System, and MTSI has not rebutted

8 Nelcela's ownership. MTSI has simply made "conclusions" or "statements" regarding ownership

9 in a Stipulation to Dismiss before this Court. *See*, **SOF 83, 87**; *see also*, Docket #322. These mere

10 "facts" are insufficient to disprove Nelcela's ownership. *See*, *Cimino v. Alway,* 18 Ariz.App. 271,

11 273, 501 P.2d 447, 449. (Statements by counsel are **not entitled to consideration** on summary

12 judgment. Emphasis added.); *see also, Tamsen v. Weber*, 166 Ariz. 364, 368 (App. 1990).

13

14       **2.    Nelcela is Entitled to Judgment for Misappropriation of Trade Secrets,**
          **Unfair Competition and Intentional Interference Claims.**

15       The Nelcela Merchant System constitutes a "trade secret" within the meaning of the Arizona

16 Uniform Trade Secrets Act because it, "derives an independent value," it is not, "readily

17 ascertainable by proper means," and other persons can and have, "obtain[ed] economic value from

18 its disclosure or use." *See, Miller v. Hehlen*, 209 Ariz. 462, 470, 104 P.3d 193, 201 (App. 2005);

19 *see also*, A.R.S. §44-401(4). The System is also a trade secret because Nelcela has made reasonable

20 efforts to maintain its secrecy. *Id., citing to Enterprise Leasing Company of Phoenix v. Ehmke*, 197

21 Ariz. 144, 23, 3 P.3d 1064, 1070 (App. 1999). MTSI's admitted retention and "licensing" of

22 Nelcela's copyrighted system prove that it misappropriated Nelcela's trade secret. *See, Miller,*

23 *supra,* 209 Ariz. at 470; *see also*, A.R.S. §44-401(1).

24       Likewise, there is undisputed evidence that MTSI misrepresented its "ownership" of the code

25 (for at least 5 years of litigation). MTSI even entered into a fraudulent "license" for code it now

26 admits it never owned. *See*, **SOF 61, 87**. MTSI "passed off" or "palmed off" the Nelcela code as

1    its own both when it licensed code to Post and when it filed this lawsuit. *Id.* This behavior is

2    explicitly prohibited by the Lanham Act. *See, e.g., Smith v. Montoro*, 648 P.2d 602, 603 (9th Cir.

3    1981). Though traditionally one would have to show actual "palming off" or "passing off," the

4    *Smith* Court has concluded that, "...the Lanham Act explicitly condemns false designations or

5    representations in connection with **any** goods or services." *Smith,* 648 P.2d at 605. Emphasis added.

6    (The Lanham Act prohibits false designations of origin. One cannot misrepresent or falsely

7    designate the origin of creation of either a good or a service.)

8         Even if MTSI was unsure of the origin of the copyrighted Nelcela Merchant System, MTSI

9    continued to cause, "confusion" or "mistake" for the past 5 years of litigation. No new facts were

10   "learned," but MTSI suddenly "realized" in January of this year (when it entered the settlement) that

11   it did not really own the software. Not only does MTSI's conduct run afoul of Rule 11 for failure

12   to properly investigate its claims for 5 years, but this new "realization" makes MTSI liable under the

13   Lanham Act for causing confusion and mistake as to the origin of the software for which it sued. *See,*

14   *Smith, supra,* 648 P.2d at 605; *see also,* 15 U.S.C.A. §1125 (Any party is likely to cause confusion

15   or mistake as to the origin of a good or service shall be liable under the Act.)

16        Along these same lines, undisputed evidence proves that MTSI interfered with the business

17   relationship between Nelcela and Post. *See,* **SOF 61**. MTSI is liable for intentional interference

18   because MTSI knew about the relationship between Post and Nelcela – including that Post was

19   indebted to Nelcela for a large sum of money, MTSI's interference in that relationship caused a

20   breach in the relationship, Nelcela was monetarily damaged by MTSI's interference, and MTSI's

21   actions were improper. *See, Snow v. Western Savings and Loan Association*, 152 Ariz. 27, 34, 730

22   P. 2d 204, 211 (1986). There is no dispute that MTSI knew about the Post/Nelcela relationship or

23   that it interfered. MTSI interrupted the working relationship to "license" Post code for $50,000 at

24   the same time Post owed Nelcela an excess of $100,000. *See,* **SOF 61**. MTSI acted improperly

25   because it now admits that it "licensed" software it did not even own. *See,* **SOF 61, 87**. MTSI's

26   own principal testified that MTSI did not do an inquiry into the facts of this case. *See,* **SOF 59-60**.

1   Huffman was convinced to sue Nelcela, and MTSI obviously filed suit (and maintained suit for more

2   than 5 years) before ever doing a proper investigation to determine **it never owned any software**.

3   *Id.* MTSI caused Nelcela significant damages, including loss of business by Post and the attorneys'

4   fees for 5 years of defending ownership. *Id.; see also,* **SOF 49, 54-55, 61.**

5       MTSI's actions in this case almost mirror its actions in the state court.  There, MTSI waited

6   until the day of arguments on summary judgment and then appeared with new documents, trying to

7   add a new or "proper" party to the case.  Here, MTSI waited until after 5 years of litigation to admit

8   it never really owned the software for which it sued.  *See,* **SOF 87.**  Nelcela was granted judgment

9   below based, in part, on MTSI's games, and the same result should apply here.

10
11  **C.      MTSI NEVER OWNED ANY CLAIMS AS ALLEGED IN THIS SUIT, AND NELCELA
            MUST BE GRANTED SUMMARY JUDGMENT FOR MTSI'S IMPROPER ACTION.**

12      As fully discussed in the factual section above, and as fully briefed and outlined in the

13  underlying state litigation, MTSI could never have had the rights to file this lawsuit.  *See,* **SOF 20,**

14  **32.**  MTSI sold **all** of its assets and liabilities to EPX on March 29, 2001.  *See,* **SOF 32.**  MTSI never

15  completed any, "hold back" to the rights to any lawsuit(s).  *Id.; see also,* **SOF 37-41.**  MTSI never

16  owned any software.  *See,* **SOF 41.**  MTSI put forth a false "Resolution" purporting to transfer

17  ownership of software that it now admits it did not own.  *See,* **SOF 37-40, 87.**  MTSI was never able

18  to provide one piece of evidence to support its false "Resolution" or its alleged "hold back" of this

19  lawsuit when it sold to EPX.  *See,* **SOF 37-41.**  MTSI either provided inaccurate and "changed"

20  financial statements and documents in a court-ordered debtor's examination, or it just created

21  documents to avoid its false statements about ownership.  *Id.*

22      Furthermore, because MTSI has **never** produced any evidence of a "hold back" when MTSI

23  sold everything to EPX in March 2001, this Court may presume MTSI's failure to produce as

24  adverse to MTSI's allegations.  *See, e.g., Ponce v. Industrial Commission,* 120 Ariz. 134, 584 P.2d

25  598, 600 (1978); *Sears Robuck & Co. v. Walker,* 127 Ariz. 432, 621 P.2d 938, 942 (App. 1980);

26  *Ammer v. Arizona Water Co.,* 169 Ariz. 205, 209, 818 P.2d 190, 194 (App. 1991)(When vital

1    information is within the custody and control of a party but the party fails to produce the information,

2    there is a presumption that that the failure to produce is essentially an admission of a lack of merit

3    in an asserted claim or defense.)  MTSI never had the right to file this lawsuit in October **2002**

4    because it sold to EPX an entire year-and-a-half prior and failed to "hold back" any cause of action.

5    *Id.*  This was one of the exact reasons that Judge Fields granted Nelcela summary judgment in the

6    related state case, and this is one of the reasons MTSI now owes Nelcela nearly $60,000.00 for

7    game-playing in that court. *See*, **Exhibit 12** to the **SOF** filed herewith.

8

9        **D.    MTSI SPECIFICALLY RELEASED THE NELCELA PARTIES FROM THESE CLAIMS.**

10        When MTSI settled with Lexcel and Post on January 20th of this year, it very specifically

11   agreed that all, "former employees," "agents," and "all other representatives" of CCS Ltd., CCS Inc.,

12   and MTSI were forever discharged from any claims arising out of the circumstances alleged in this

13   lawsuit. *See*, **SOF 83-86**.

14        There is absolutely no doubt that MTSI knew Alec Dollarhide was a former employee of

15   CCS Ltd., CCS Inc. **and** MTSI when MTSI entered this release. *See*, **SOF 2, 16, 27, 34**. There is

16   also no doubt that MTSI was aware of and acknowledged that Nelcela, Inc. and Len Campagna have

17   both acted as agents and/or "representative" of CCS Inc. and MTSI.  *See*, **SOF 36, 52**.  Acting as an

18   agent or representative of MTSI, Nelcela negotiated use of the VAP and MIPP by Post. **SOF 52**.

19   Acting as an agent or representative of CCS Inc., Campagna negotiated the sale of CCS Inc. to EPX.

20   *See*, **SOF 36**.  Each of these parties is fully identified in this new Mutual Release. *See*, **SOF 83-86**.

21        The Restatement (Second) of Torts §885 dictates that if a release, "expressly" provides an

22   intended releasee, that party shall be released.  Where the language of a general release specifies a

23   class of releasees (like "former employees" in this matter) and there is no language in the release

24   showing a different intent, the relasee shall be encompassed by the release. *See, Spain v. General*

25   *Motors Corp.*, 829 P.2d 1272, fn. 2 (Ariz.App. 1992).  Once a party is identified (like all former

26   employees are identified here), that party becomes an intended beneficiary of the release. *Id.*

1   The agreement here was well-thought and carefully crafted by sophisticated lawyers. There

2   should be no dispute that Release section(s) was intended to be binding. *See, Shanks v. Davey Tree*

3   *Surgery Co.*, 845 P.2d 483, 173 Ariz. 557 (Ariz. App. 1992) (review denied). This Court should

4   now presume that these parties put that language into its Release for a specific purpose, and that both

5   parties intended that purpose to be binding. *Shanks, supra.,* 845 P.2d at 483. Thus, the Court must

6   presume that all parties intended that the Nelcela parties be released from all claims, "**including any**

7   **Claims related to any of the circumstances alleged in the lawsuit**." *Id.*; *see also*, **SOF 84.**

8   Similarly, MTSI had previously entered into a full Release when it sold to EPX in 2001. See,

9   **SOF 32-33.** In the purchase agreement between EPX and CCS, Inc., both CCS Inc. and MTSI

10  specifically agreed to release all past employees and all stockholders of EPX from any liability or

11  any type of litigation. *Id.* When that agreement was entered, MTSI already knew about Post's

12  claims and knew of Nelcela's claim that it owned the software at issue. *Id.; see also,* **SOF 59-61.**

13  Furthermore, MTSI knew that Dollarhide was an employee of MTSI/CCS Inc. and, thus, specifically

14  covered in the release section of the sale to EPX. *See,* **SOF 2, 16, 27, 34.** Having all of that

15  knowledge, MTSI still agreed to, "forever discharge" Dollarhide from any, "claims, demands,

16  Proceedings, causes of action ... whether known or unknown, suspected or unsuspected...." from then

17  and into the future. *See,* **SOF 32-33.**

18

19  **III.   CONCLUSION**

20  MTSI now concedes that it does not own any software, eliminating all of its ownership-based

21  claims in this lawsuit. Though MTSI should have voluntarily dismissed its claims against Nelcela,

22  it has failed to do so and has caused Nelcela to defend claims with no merit.

23  Moreover, Nelcela is entitled to judgment on its own claims because MTSI has absolutely

24  no proof to dispute Nelcela's valid copyright. MTSI cannot sustain its burden to defend the

25  copyright infringement.

26  Lastly, and perhaps most importantly, MTSI's claims must be dismissed and Nelcela must

1  be granted summary judgment because MTSI never had a right to bring this suit.  MTSI sold all of

2  its assets and liabilities to another entity in 2001 – more than a year-and-a-half before it filed this

3  lawsuit – and never "held back" this lawsuit in the sale.  MTSI also agreed to release any and all

4  claims it would have, even into the future, but then filed this suit in disregard for its own release.

5      For all of these reasons, Nelcela is entitled to summary judgment and should be awarded its

6  attorneys' fees and costs for having to defend this matter for 5 years without any justification by

7  MTSI for bringing this suit.

8

9      **RESPECTFULLY SUBMITTED** this 17th day of February, 2006.

10

11      **RONAN & FIRESTONE, PLC**

12

13      Merrick B. Firestone
        Veronica L. Manolio
14      9300 E. Raintree Drive, Suite 120
        Scottsdale, Arizona 85260
15      *Attorneys for the Nelcela Defendants*

16  **ORIGINAL** filed electronically with the Clerk's Office
    and **COPIES** electronically transmitted to the following
17  CM/ECF registrants this same date to:

18  Lyndon B. Steimel
    lyndon@steimellaw.com
19  *Local Counsel for Merchant Transaction Systems*

20  William McKinnon
    mail@williammckinnon.com
21  *Attorney for Merchant Transaction Systems*

22  Peter D. Baird
    pbaird@lrlaw.com
23  Robert H. McKirgan
    rmckirgan@lrlaw.com
24  Richard A. Halloran
    Rhalloran@lflaw.com
25  Kimberly Demarchi
    Kdemarchi@lrlaw.com
26  *Attorneys for POST and Ebocom*

Nicholas J. Wallwork
nwallwork@steptoe.com
Fredric D. Bellamy
fbellamy@steptoe.com
Bridget S. Bade
bbade@steptoe.com
*Attorneys for Lexcel, Inc.*

By: