**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems, Inc., | No. CV 02-1954-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Nelcela, Inc., and Arizona Corporation;) Len Campagna, an Arizona resident; Alec Dollarhide, an Arizona resident; Ebocom, Inc., a Delaware corporation; Post Integrations, Inc., an Illinois corporation | |
| Defendants. | |
| And Related Counterclaims and Cross-Claims and Third-Party Claims | |

Currently before the Court is the Lexcel, Post and MTSI Parties' Motion to Strike Nelcela's Affirmative Defenses, Counterclaims, and Third-Party Complaint (Dkt#410); Carl Kubitz and Flora Kubitz's Motion to Dismiss Nelcela, Inc., Len Campagna and Alec Dollarhide's Third-Party Complaint (Dkt.#416); the Lexcel Parties' Motion for Possession of Trial Exhibit 675 (Dkt.#502); Nelcela, Inc., Len Campagna and Alec Dollarhide's Renewed Motion for Judgment as a Matter of Law and/or Motion for Judgment Notwithstanding the Verdict, or in the Alternative Motion for New Trial (Dkt.#505); the Joint Parties' Motion for Leave to File a Motion for Partial Summary Judgment Based on the Jury's Verdict (Dkt.#512); and Joint Parties' Motion Request for Leave to Commence Phase

II Discovery. (Dkt.#539). After reviewing the pleading and holding oral argument on August 15, 2007, the Court issues the following Order.

**I.     Joint Parties' Motion to Strike Nelcela's Affirmative Defenses, Counterclaims, and Third-Party Complaint**

The Joint Parties; Lexcel, Inc., Lexcel Solutions, Inc., Merchant Transaction Systems, Inc., Post Integrations, Ebocom, Inc., Mary Gerdts, and Douglas McKinney (the "Joint Parties") move to dismiss and/or strike Nelcela, Inc., Len Campagna and Alec Dollarhide's (collectively "Nelcela") affirmative defenses, counterclaims and third-party complaint filed by Nelcela on November 17, 2006.

**A.     Procedural History**

On June 13, 2005, after the original Parties' March 11, 2005 stipulation to bifurcate the issue of ownership over the relevant computer credit card processing software (Dkt.#87), Intervening Plaintiff Lexcel Solutions, Inc., moved to intervene in this case. (Dkt.#169). On July 29, 2005, over Nelcela's opposition, the Court granted Lexcel Solutions, Inc.'s, request with a written order. (Dkt.#209). In granting the motion, the Court also extended certain dates of the June 22, 2005 scheduling order such as extending the discovery deadline to October 14, 2005. However, the previously imposed deadline of March 9, 2005 (Dkt.#76) governing the time to file motions pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, motions to amend the complaint and motion to join additional parties was not extended. On October 19, 2005, prior to any responsive pleading by Nelcela, Lexcel Solutions, Inc., filed its Amended Complaint adding Lexcel, Inc. as an intervening Plaintiff. (Dkt.#277). On November 11, 2005, after the close of discovery during Phase I of the instant litigation, Nelcela filed a motion to dismiss the Lexcel Parties' claims. (Dkt.#295). On September 30, 2006, the Court denied Nelcela's motion to dismiss the Lexcel Parties' claims. (Dkt.#383). On November 17, 2006, just prior to the Court's November 20, 2006 pretrial conference "regarding the issue of ownership" (Dkt.#383) Nelcela filed its Answer to the Lexcel Parties' Amended Complaint as well as counterclaims against the Lexcel Parties and third-party complaint against Carl Kubitz and Flora "Pete" Kubitz (the

"Kubitzes") asserting claims of fraud, conversion, aiding and abetting tortious conduct, copyright infringement, misappropriation, unfair competition and declaratory relief of ownership over the software at issue. (Dkt.#399). The Joint Parties' instant Motion to strike asserts that Nelcela's affirmative defenses, counterclaims and third-party claims are untimely pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure; run afoul of the Court's amended pleading deadline to which Nelcela was required to seek leave from; and violate Rule 9(b) of the Federal Rules of Civil Procedure.

**B.     Analysis**

**(1)     Rule 12(a)(4)(A)**

Rule 12(a)(4)(A) Fed.R.Civ.P. provides in pertinent part:

> Unless a different time is fixed by court order, the service of a motion permitted under this rule alters these periods of time as follows: (A) if the court denies the motion . . . the responsive pleading shall be served within 10 days after notice of the Court's action[.]

In this case, the Court denied Nelcela's motion to dismiss the Lexcel Parties' Amended Complaint on September 30, 2006. (Dkt.#383). However, Nelcela did not file its Answer with cross-claims and third-party claims until November 17, 2006 (Dkt.#399), well after the applicable ten-day period of Rule 12(a)(4)(A). Notably, Nelcela does not dispute the fact that the responsive pleading is untimely under Rule 12(a)(4)(A), but rather argues that its tardiness is excusable based upon its reasonable misinterpretation of the Court's September 30, 2006 order. Specifically, Nelcela states that it took the Court's setting of the pretrial conference for November 20, 2006 to address "the issue of ownership" with the Court's September 30, 2006 order (Dkt.#383) to mean that Nelcela "was to do **nothing** unless and until the Court convened on November 20th." (Dkt.#415, p.2) (Emphasis original). In addition, Nelcela states that no prejudice will result to the Joint Parties by permitting Nelcela's answer with accompanying claims.

Notwithstanding the Court's difficulty in understanding Nelcela's alleged confusion regarding the appropriate time to file the responsive pleading to the Lexcel Parties' Amended Complaint, the Court does not deem it appropriate to bar Nelcela's affirmative defenses,

- 3 -

counterclaims and third-party claims raised in its Answer to the Lexcel Parties' Amended Complaint on this basis. Considering the procedural history of this litigation and the likelihood that the Joint Parties were aware of Nelcela's intent to file its responsive pleading and related counterclaims, there is no prejudice resulting to the Joint Parties. In addition, considering the extensive discovery performed to date combined with any discovery to be performed in subsequent litigation in this case, *i.e.*, Phase II, the Court does not believe Nelcela's responsive pleading will cause material prejudice. Notably, in one of Nelcela's motions for summary judgment during Phase I of this litigation, Nelcela stated its intent to file a counterclaim against the Lexcel Parties. (Dkt.#324, p.1, n.1). Considering the stage of the litigation and the absence of any material prejudice to the Joint Parties, the Court does not find it appropriate to strike Nelcela's affirmative defenses, counterclaims and third-party claims on this basis.

### (2)   Rule 15 of the Federal Rules of Civil Procedure

The Joint Parties also contend that Nelcela's affirmative defenses, counterclaims and third-party claims should be stricken because they run afoul of Rule 15 Fed.R.Civ.P.. The Joint Parties contend that Nelcela was required to seek leave of the Court to assert such defenses and claims at this stage of the proceedings, especially considering that such defenses and claims were not asserted prior the Court's March 9, 2005 amended pleadings deadline. However, the Joint Parties' argument ignores the procedural history surrounding the intervention of the Lexcel Parties to this case. Specifically, the Court permitted the Lexcel Parties to intervene on July 29, 2005. (Dkt.#209). Once Lexcel, Solutions, Inc., intervened and prior to any responsive pleading from Nelcela, and without leave of the Court, Lexcel Solutions, Inc., filed its Amended Complaint to add Lexcel, Inc., as an intervening Plaintiff in this matter. As explained in the Court's September 30, 2006 order such action, taken without leave of the Court, was not violative of Rule 15(a) as Nelcela had yet to file any responsive pleading.

The significance of this history is that Nelcela, with its previous challenges to the Lexcel Parties' claims upon motions to dismiss and summary judgment, had yet to file, prior

to November 17, 2006, any responsive pleading to Lexcel's allegations and claims.  As such, this Court will not preclude Nelcela from answering Lexcel's claims and asserting appropriate affirmative defenses, counterclaims and  third-party claims.  Notably, with the filing of Lexcel's intervening complaint and amended complaint, Lexcel opened the door to any applicable affirmative defenses, counterclaims and relevant third-party claim. See Massy v. Helman, 196 F.3d 727, 735 (7th Cir. 2000) (explaining that "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defense.").[1]  While any subsequent attempt by Nelcela to amend its answer, counterclaim and/or third-party claim will face stiff scrutiny considering the running of the amended pleadings deadline, such expiration does not act as a bar to Nelcela's answer to Lexcel's intervening complaint.[2]  Again, considering the unique posture of this case and history, the Court notes that the Joint Parties cannot be surprised by Nelcela's answer and accompanying claims and any alleged prejudice is minimal considering the litigation history and discovery still to come.

### (3)    Rule 9(b) Challenge to Nelcela's Fraud Claims

The Joint Parties also move to strike Nelcela's affirmative defenses, counterclaims and third-party claims against the Joint Parties because such claims allegedly run afoul of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each

---

[1] This Court has previously denied a request to amend the pleadings; however, that situation was based upon different circumstances such as the existence of the original complaint and answer which required leave to amend. (Dkt.#162).

[2] The Court notes that Rule 14(a) Fed.R.Civ.P. with respect to third-party complaints, provides that leave of the court is required if the third-party complaint is filed more than 10 days after serving the original answer.  Notably, Nelcela's third-party complaint is asserted together with its answer and counterclaim. (Dkt.#399).

defendant in each scheme." Lancaster Cmty Hosp. v. Antelope Valley Dist., 940 F.2d 397, 405 (9th Cir. 1991).

In reviewing the allegations, as a whole, of Nelcela's answer, counterclaims and third-party claims, the Court finds that Nelcela does sufficiently state its allegations of fraud with particularity pursuant to Rule 9(b) Fed.R.Civ.P.  For instance, Nelcela has sufficiently asserted the time element of its fraud claims. Specifically, Nelcela asserts that: (1) on April 6, 2001, Mary Gerdts of Post met with Mr. Kubitz of Lexcel and allegedly convinced Mr. Kubitz "to assert that Nelcela had copied Lexcel's software despite that Lexcel had already concluded Nelcela's software was not the same as Lexcel's" (Dkt.#399, ¶32); (2) shortly after the April 6, 2001 meeting and a subsequent June 4, 2001 meeting in California, Nelcela alleges Lexcel, Post and MTSI implemented a common plan to defraud Nelcela, which included Lexcel's applications for copyright protection of its software (Id. ¶¶32-35); and (3) on or about January 20, 2006, the Lexcel Parties entered into a settlement agreement with Post and MTSI in furtherance of the conspiracy to defraud and harm Nelcela. (Id. ¶43).  In addition, Nelcela has sufficiently identified the alleged acts of fraud.  For instance, as noted above, the alleged common plan between the Lexcel, Post and MTSI Parties is alleged to have included Lexcel's fraudulently obtained copyright applications, Lexcel's involvement in this suit despite its previous determination that Nelcela's software was different than that of Lexcel's, and Lexcel's receipt of money pursuant to the settlement agreement between the Lexcel, Post and MTSI Parties. (Id. ¶¶31-48).  The allegations of the counterclaim and third-party claims also adequately identify the alleged role of the relevant Parties involved in the fraudulent scheme, such as the Post and MTSI Parties push to involve the Lexcel Parties in this litigation. (Id. ¶¶31-34).

As such, when reviewing the allegations asserted by Nelcela as a whole, the Court finds that Nelcela has plead such claims with sufficient particularity so as to enable the Lexcel Parties and the Kubitzes to formulate an adequate response. See Blake v. Dierdoff, 856 F.2d 1365, 1368 (9th Cir. 1988) ("[P]leading is sufficient under Rule 9(b) if it identifies

'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" (quoting Semegen v. Weidner, 780 F.2d 727, 735 (9th Cir. 1985)).[3]

### C. Summary of Joint Parties' Motion to Strike

The Court finds that Nelcela's affirmative defenses, counterclaims and third-party claims are not procedurally deficient nor are such allegations deficient under Rule 9(b) scrutiny.

## II. Carl Kubitz and Flora Kubitz's Motion to Dismiss Nelcela's Third-Party Complaint

### A. Background and Standard of Review

On December 26, 2006, the Kubitzes filed their instant Motion to dismiss Nelcela's Third-Party Complaint against them on the grounds that the Third-Party Complaint is barred by the applicable statute of limitations and/or Nelcela's fraud claim does not comply with Rule 9(b)'s particularity requirement. (Dkt.#416). The Court has already addressed the Rule 9(b) Fed.R.Civ.P. issue above, thus will not revisit the issue here. Therefore, the sole issue presented by the Kubitzes' Motion to dismiss is whether Nelcela's claims are barred by the applicable statute of limitations.[4]

As noted in Nelcela's response to the Kubitzes' Motion, in the context of a Rule 12(b)(6), the court will not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Wyler Summit Partnership v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir.1998). Moreover, Rule 12(b)(6) Fed.R.Civ.P. provides that a motion to dismiss must be treated as a motion for summary judgment when "matters outside the

---

[3] The Court accepts as true the allegations of Nelcela's counterclaim and third-party claims for purposes of the Rule 9(b) and 12(b)(6) review.

[4] The Court notes that the Kubitzes did not file any reply in support of their Motion to dismiss.

- 7 -

1  pleadings are presented to and not excluded by the court." However, if the court does not
2  rely on the extraneous matters, the motion to dismiss will not be converted into a motion for
3  summary judgment. See North Star Intern. v. Arizona Corp. Commission, 720 F.2d 578,
4  581-82 (9th Cir. 1983).

5  As a preliminary matter, the Court notes that it will not rely on the extraneous
6  declarations and exhibits relied upon by the Kubitzes in support of their Motion to dismiss.
7  See North Star Int'l v. Arizona Corporation Comm'n, 720 F.2d 578, 582 (9th Cir. 1983) ("[A]
8  motion to dismiss is not automatically converted into a motion for summary judgment
9  whenever matters outside the pleading happen to be filed with the court . . . ."). Were the
10 Court to do so, the Court would be forced to convert the instant 12(b)(6) Motion into a Rule
11 56 Fed.R.Civ.P. summary judgement motion. Given the stage of the proceedings and the
12 unique discovery schedule created by the Parties' stipulation to bifurcate this litigation, the
13 Court finds no prejudice to the Kubitzes. As such, the instant Motion to dismiss will be
14 reviewed only as a facial challenge to Nelcela's Third-Party Complaint.

**B.     Analysis**

As noted by the Kubitzes, Nelcela's claims for conversion, aiding and abetting
tortious conduct and unfair competition are governed by a two-year limitation period. A.R.S.
§ 12-542. Moreover, Nelcela's claim for fraud, misappropriation and copyright infringement
are governed by a three-year limitation period. A.R.S. §§ 12-543 and 44-406; 17 U.S.C. §
507(b). The Kubitzes cite an accrual date of all of Nelcela's claims of January 3, 2003, based
upon the submission of their declarations in support of the Post Parties' response to Nelcela's
motion to dismiss. (Dkt.#26). However, as noted above, the Court will not consider the
declarations as evidence in support of the accrual date at this stage of the proceedings.
Moreover, even considering the Kubitzes' reliance upon a January 3, 2003 accrual date, the
Court finds, based upon 12(b)(6) analysis, that Nelcela's claims survive the Kubitzes' facial
challenge.

First, the Kubitzes' fail to consider Nelcela's allegations invoking a tolling of the
applicable limitations period based upon estoppel. See Roer v. Buckeye Irr., Co., 809 P.2d

970, 972 (Ariz.App. 1990) (stating that "[a] defendant will be estopped from asserting the defense of statute of limitations if by its conduct the defendant induces the plaintiff to forego litigation . . ."). For instance, the Third-Party Complaint in referencing the May 1999 meeting between the Kubitzes and Nelcela expressly states that after the Parties had agreed that Nelcela was not using Lexcel's software that "Lexcel and Nelcela agreed to go their separate ways, agreeing that Nelcela had developed processing software for the Merchant side of the credit card business [and] . . . they agreed they were not doing the same type of work." (Dkt.#399, ¶ 27). Such allegations, taken as true within the context of the Third-Amended Complaint, demonstrate that Nelcela may have reasonably believed any claims were eliminated by the Parties' agreement. Moreover, as noted by Nelcela, assuming it had such a reasonable belief that litigation between it and the Kubitzes and Lexcel was waived, Lexcel did not attempt to intervene in this matter until June 13, 2005 (Dkt.#169), which is within the two and three year limitation period created by Nelcela's November 17, 2006 Third-Party Complaint. (Dkt.#399).

It is also relevant to note that Nelcela's Third-Party claims invoke a theory of continuing wrongs or violations by the Kubitzes such as January 20, 2006 settlement agreement between the Joint Parties "in furtherance of the conspiracy . . . to defraud and harm Nelcela." (Dkt.#399, ¶43). Such continuing acts into the limitations period would not be barred by the statute of limitations.

### C. Summary of Kubitzes' Motion to Dismiss

In taking the allegations of Nelcela's Third-Party Complaint as true, and excluding any reliance on matters outside the pleadings, the Court finds that Nelcela's claims are not barred by the applicable statute of limitations. Consistent with the Court's handling of the Nelcela's statute of limitations argument, this issue is better reserved for subsequent proceedings.

### III. The Lexcel Parties' Motion for Possession of Trial Exhibit 675

Based upon the jury's April 25, 2007 verdict finding Lexcel, Inc., to be the true owner of the software at issue in this litigation (Dkt.#501), the Lexcel Parties move this Court to

obtain possession of Trial Exhibit 675. Trial Exhibit 675 is the "Original Lexcel floppy disks" of the software that was the subject of the agreement between Charlie Anderson of CCS, Ltd., and Lexcel, Inc. Specifically, these floppy disks were to be transferred to CCS as part of a settlement agreement and were ultimately produced in this litigation by Alec Dollarhide. The Lexcel Parties assert that because Lexcel, Inc., is the owner of the source code saved on those disks, the disks should be turned over to Lexcel, Inc. In opposition, the Nelcela Parties contend that the Court should either return the disks to Nelcela or hold the disks "until such time as each party can (in a 'forensically sound' and 'proper' environment' inspect them and/or evaluate them . . ." (Dkt.#507). Nelcela's argument is based primarily on its contention that the issue of ownership has not been finally resolved because of the pending "analytical dissection" analysis, discussed below, that must be performed by the Court before a true ownership determination can be made. Notably, while disagreeing with Nelcela's position, the Lexcel Parties do not object to the Court retaining possession of the floppy disks "pending completion of this litigation." (Dkt.#515, p.3).

Considering the Parties' common recommendations that the Court retain possession of the floppy disks (Trial Exhibit 675) the Court, without reviewing the merit of the Parties' competing positions, will retain possession of the disks until the conclusion of the litigation or upon stipulation of the Parties.

**IV.    Nelcela's Renewed Motion for Judgment as a Matter of Law and/or Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial**

   **A.    Background and Standard of Review**

Nelcela moves for judgment as a matter of law pursuant to Rules 50(b) Fed.R.Civ.P. notwithstanding the jury's verdict on April 25, 2007 finding Lexcel, Inc., to be the true owner of the software systems at issue in this litigation. In the alternative, Nelcela moves for a new trial pursuant to Rule 59 Fed.R.Civ.P. The two grounds identified by Nelcela in support of the instant Motion are: (1) all claims by Lexcel, including Lexcel's claim of ownership over the relevant software, are barred by the applicable statute of limitations; and (2) the jury improperly relied on the Court's September 30, 2006, finding of "substantial

1  similarity" between the Lexcel software and Nelcela software and that "copying took place."
2  During the trial, both of these grounds were presented to the Court and were denied. As
3  such, Nelcela re-raises them pursuant to Rule 50(b).

4  Rule 50(b) provides in pertinent part:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment - and may alternatively request a new trial or join a motion for new trial under Rule 59. In ruling on a renewed motion, the court may:
>
> (1) if a verdict was returned:
>
> (A) allow the judgment to stand,
> (B) order a new trial, or
> (C) direct entry of judgment as a matter of law

Fed.R.Civ.P. 50(B)

Judgment as a matter of law may be granted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . ." Juhnke v. EIG Corp., 444 F.2d 1323, 1325 (9th Cir. 1971) (noting that directed verdict and motion for judgment notwithstanding the verdict "are measured by the same standards as the latter is merely a renewal of the former."). In considering a motion for judgment as a matter of law under Rule 50(b), "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Therefore, the Court's role is not to substitute its view of the evidence for that of the jury. Winarto v. Toshiba Am. Electronics Components, 274 F.3d 1276, 1283 (9th Cir. 2001). When two possible sets of inferences are supported by the record, "the inferences that support the jury's verdict of course win the day." Id. at 1287.

Under Rule 59 of the Federal Rules of Civil Procedure, the Court "may grant a new trial if the 'verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of

- 11 -

justice.'" Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (quoting United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999)).

**B.     Analysis**

**(1)     Statute of Limitations**

With respect to the statute of limitations issue, Nelcela asserts that "[l]egally the statute of limitations must be addressed now . . . [and] the evidence proved that Lexcel's claims have all expired and that Lexcel was not entitled to **any** claims, ownership included." (Dkt.#505, p.2) (Emphasis original). Nelcela further asserts that Lexcel has been fully heard on the statute of limitations issue and there is no evidentiary basis for a reasonable jury to find any of Lexcel's claims to be viable.

However, the Court finds that Nelcela's reliance on the statute of limitations issue provides no basis to support judgment as a matter of law or a new trial in Nelcela's favor. As detailed in Nelcela's motion, the Court has consistently deemed the statute of limitations regarding Lexcel's claims, based upon a summary judgment or evidentiary standard, to be properly reserved for subsequent litigation. For instance, in the Court's September 30, 2006 order the Court denied Nelcela's limitations challenge to Lexcel's claims pursuant to a Rule 12(b)(6) standard of review, but because of the unique posture of the case created by the Parties' stipulation to bifurcate the issue of ownership combined with Lexcel's intervention, the Court determined that the limitations issue, upon summary judgment review, was better placed in Phase II with the benefit of a full discovery period. (Dkt.#383, pp.16-17). On March 26, 2007, the Court denied Nelcela's subsequent request to defer a trial on the issue of ownership so as to first address the limitations issue. (Dkt.#454). The Court explained that should Lexcel, Inc., be deemed to be the owner of the software nothing would prevent Nelcela from making a subsequent limitations challenge to Lexcel's claim of legal ownership. (Dkt.462, pp.21-22, ll.19-5). Moreover, the Court rejected Nelcela's argument that inconsistent verdicts could exist should Lexcel's claims turn out to be time-barred. Specifically, the Court rejected Nelcela's argument that Nelcela could somehow be deemed

- 12 -

to be the owner of the software should Lexcel's ownership turn out to be time barred. (Id., pp.22-23, ll. 17-3).

The Court, again, finds no basis for this statute of limitations issue to justify a finding of judgment as a matter of law or a new trial. The Court has consistently maintained that the jury's determination of ownership would not be wholly determinative of the issue. Rather, with respect to the jury's verdict, Lexcel, Inc., has been deemed to the be the owner of the relevant software based upon the timing of creation of its software and the overlapping similarity between Lexcel, Inc.'s and Nelcela's software. However, that determination in no way limits or impacts Nelcela's ability to present a challenge to Lexcel's ultimate legal status as owner of the relevant software. Should Lexcel, Inc.'s ownership claim be time-barred then its declaratory claim for ownership and claims dependent on ownership will likely fail.

It is important to note, as discussed more fully below, at oral argument the Parties seemed to be in general agreement that judgment as a matter of law or a new trial was not necessary to address the statute of limitations issue. The Parties were in general agreement that the issue could and should be addressed in short order, with the benefit of some discovery, prior to the start of Phase II of this litigation. The Court does not disagree with the Parties' assessment. As such, the jury's verdict finding Lexcel, Inc., to be owner will be subject to Nelcela's statute of limitations challenge before any final determination of legal ownership is afforded to Lexcel, Inc.. Thus, the Court finds Nelcela's challenge to the statute of limitations issue to be unpersuasive in support of judgment as a matter of law pursuant to Rule 50(b) or a new trial pursuant to Rule 59.

**(2)   "Analytical Dissection"**

Nelcela further asserts that judgment as a matter of law or a new trial is warranted because of the Court's error or mistake of law in not performing a proper "analytical dissection" of the Lexcel and Nelcela software prior to finding such software to be "substantially similar beyond the possibility of random chance and that copying took place." (Dkt.#383, p.28). Nelcela's argument is based primarily on the Ninth Circuit's decision in

Apple Computers, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994). Specifically, in Apple Computers, the Ninth Circuit instructed "[b]ecause only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytical dissection to determine the scope of copyright protection before works are considered 'as a whole.'" Id. at 1443; see also Data East U.S.A., Inc. v. Epyx, Inc., 862 F.2d 204, 208 (9th Cir. 1988) ("The rule in the Ninth Circuit . . . is that . . . copyright protection [cannot] be afforded to elements of expression that necessarily flow from an idea, or to 'scenes a faire,' *i.e.*, expressions that are 'as a practical matter,' indispensable or at least standard in the treatment of a given [idea]."). The Ninth Circuit provides a three-step inquiry in performing "analytical dissection" of competing works: (1) the plaintiff must identify the sources of the alleged similarity between its work and the defendant's work[5]; (2) using analytical dissection and, if necessary, expert testimony, the court must determine whether any of the alleged similar features are protected by copyright, which may entail sorting unprotectable ideas from protected expression; and (3) having dissected the alleged similarities, the court must then define the scope of the plaintiff's copyright, *i.e.*, whether it is entitled to "broad" or "thin" protection and depending on the degree of protection set the appropriate standard for a determination of whether the works are sufficiently similar to support a finding of illicit copying. Id.

Nelcela correctly notes that this "analytical dissection" process was not presented to the Court by any party in the summary judgment papers and, as a result, the "analytical dissection" procedures set forth in Apple Computers for comparison of the software versions was not performed by the Court during the summary judgment proceedings. Rather, the Court made its finding that the Lexcel and Nelcela software were "substantially similar beyond the possibility of random chance and that copying took place" based upon the overlapping common features of the competing Lexcel and Nelcela code and the opinions

---

[5] see also Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1177 (C.D. Cal. 2001) ("It is the copyright plaintiff's burden to identify the 'elements' for the purposes of comparison.").

- 14 -

of the experts. As such, in light of the absence of the "analytical dissection" analysis the Court's determination of "substantial similarity" possesses the real possibility that some, many or all of the overlapping features between the two software versions are not subject to copyright protection. Therefore, the issue created is whether the lack of an "analytical dissection" justifies setting aside the jury's ownership verdict or setting the ownership issue for a new trial with an "analytical dissection" performed prior to such a trial. The Court finds that it does not.

Notably, although the papers presented to the Court suggested otherwise, at oral argument the Parties appeared to be in agreement with respect to the future handling of the "analytical dissection" issue. Specifically, the Parties agreed, that prior to any final determination or judgment regarding ownership, the issue of whether the software is subject to copyright protection must be addressed by the Court. See Newton v. Diamond, 204 F.Supp.2d 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements of a copyrighted work is a question of law for the court.") (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348-51 (1991)). The Court agrees with the Parties that prior to any final determination of ownership, the Court must determine the copyrightability of the software by and through the "analytical dissection" analysis presented in Apple Computers. Thus, although the jury deemed Lexcel, Inc., to be the owner of the software, as noted above, this determination is subject to the copyrightability or "analytical dissection" analysis. For instance, should it be determined that Lexcel's claims for copyright infringement are based upon overlapping software versions that are common in nature and not protectable, Lexcel's claims based upon copyright ownership and infringement may be invalidated. See Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 208 (9th Cir. 1988) (substantial similarity of unprotected expression does not support finding of infringement). Therefore, while Lexcel, Inc., has been deemed to be the owner of the software by the jury, this ownership determination will face scrutiny based upon the requisite "analytical dissection."

Thus, based upon the Parties' agreement with respect to the issue of "analytical dissection" and good cause shown the Court will deny Nelcela's Motion for judgment as a

matter of law or Motion for new trial based upon the omission of the "analytical dissection" analysis prior to the jury's verdict.

### C. Summary

The Court will deny Nelcela's renewed Motion for judgment as a matter of law and in the alternative Motion for new trial. As agreed by the Parties at oral argument, the statute of limitations and "analytical dissection" analyses do not warrant setting aside the jury's verdict. Rather, to finally resolve these issues, the Court, taking into consideration the Parties' pending recommendation, will authorize a limited discovery period and consider the appropriate motions to finally resolve the issue of legal ownership.

## V. Joint Parties' Motion for Leave to File Joint Parties' Motion for Partial Summary Judgment

The Joint Parties' move this Court for leave to file a motion for summary judgment based upon the jury's ownership verdict to address several of Nelcela's claims against the Joint Parties. Specifically, the Joint Parties contend that allowing the Joint Parties to file such a partial dispositive motion will materially advance the litigation as the motion will likely dispose of Nelcela's copyright infringement, conversion and aiding and abetting of tortious conduct cross-claims, counterclaims and third-party claims against the Joint Parties. At oral argument, Nelcela, while contesting the Joint Parties' position, did not oppose the Joint Parties' request for leave and stated its intent to oppose any such motion on the merits. In light of the absence of any objection to the Joint Parties' Motion for leave and in the interests of advancing the litigation, the Court will grant the Joint Parties' request.

**Accordingly,**

**IT IS HEREBY ORDERED** denying the Joint Parties' Motion to Strike Nelcela's Affirmative Defenses, Counterclaims, and Third-Party Complaint. (Dkt#410).

**IT IS FURTHER ORDERED** denying the Kubitzes' Motion to Dismiss Nelcela, Inc., Len Campagna and Alec Dollarhide's Third-Party Complaint. (Dkt.#416).

**IT IS FURTHER ORDERED** denying the Joint Parties' Motion for Possession of Trial Exhibit 675. (Dkt.#502). The Court will retain possession of this trial exhibit pending resolution of this matter or upon agreement of the Parties.

**IT IS FURTHER ORDERED** denying Nelcela's Motion for Judgment as a Matter of Law and/or Motion for Judgment Notwithstanding th Verdict, or in the Alternative Motion for New Trial. (Dkt.#505).

**IT IS FURTHER ORDERED** granting the Joint Parties' Motion for Leave to File a Motion for Partial Summary Judgment Based on the Jury's Verdict. (Dkt.#512).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to file the Joint Parties' lodged Motion for Partial Summary Judgment. (Dkt.#513).

**IT IS FURTHER ORDERED** granting, in part, the Joint Parties' Motion for Leave to Commence Phase II Discovery. (Dkt.#539). The Joint Parties' Motion is granted in that the Court will consider the Parties' joint proposed case management plan to address any remaining discovery and briefing addressing the statute of limitations and "analytical dissection" issues relevant to the issue of ownership. The joint proposed case management plan is to be filed by August 22, 2007.

DATED this 21st day of August, 2007.

_____
Mary H. Murguia
United States District Judge