Peter D. Baird (001978)
pbaird@lrlaw.com
Robert H. McKirgan (011636)
rmckirgan@lrlaw.com
Richard A. Halloran (013858)
rhalloran@lrlaw.com
Kimberly A. Demarchi (020428)
kdemarchi@lrlaw.com
Lewis and Roca LLP
40 North Central Avenue
Phoenix, Arizona 85004-4429
Facsimile (602) 734-3746
Telephone (602) 262-5311
Attorneys for POST Integrations, Inc., *et al.*

George C. Chen (019704)
george.chen@bryancave.com
Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Tel: (602) 364-7367
Fax: (602) 364-7070
Attorneys for Lexcel, Inc. and Lexcel Solutions, Inc.

William McKinnon
mail@williammckinnon.com
800 East Ocean Boulevard, Unit 501
Long Beach, California 90802-5449

Nicholas J. DiCarlo (016457)
ndicarlo@thedcpfirm.com
DiCarlo Caserta & Phelps PLLC
6750 East Camelback Road, Suite 100-A
Scottsdale, Arizona 85251

Attorneys for Plaintiff MTSI and
Third Party Defendant Gene Clothier

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**Merchant Transaction Systems, Inc.**,
Plaintiff,
vs.
**Nelcela, Inc**., *et al.*,
Defendants.

And Related Counterclaims, Cross-Claims, and Third-Party Claims.

No. CIV 02-1954-PHX-MHM

**JOINT PARTIES' RESPONSE TO NELCELA'S OPENING BRIEF RE ANALYTIC DISSECTION**

(Assigned to the Honorable Mary H. Murguia)

(Oral Argument Requested)

The Court ruled on summary judgment that: "Based upon the undisputed similarities between the Lexcel 2001 software, MTSI software and Nelcela software the Court finds that as a matter of law that they are substantially similar beyond the possibility of random chance and that copying took place." (Dkt. 383 at 28:14-16.) The Court thus set for trial the question of who copied from whom. Answering that question, the jury determined that Nelcela copied from Lexcel and therefore entered its verdict that Lexcel owns the software and Nelcela does not.

In an effort to avoid both this Court's summary judgment ruling and the jury's verdict, Nelcela now attempts to excuse its copying of the Lexcel Software by claiming that the Lexcel Software is not copyrightable. Once again, Nelcela is wrong.

The question of whether or not Lexcel's software is copyrightable has already been decided by the U.S. Copyright Office, which determined that the Lexcel Software is



copyrightable when it issued Lexcel five copyright registrations for that software. Nelcela and its counsel, Fennemore Craig, further demonstrated the software is copyrightable when they filed copyright applications for software derived from the Lexcel Software. And, as explained herein, "analytic dissection" additionally confirms the copyrightability of the Lexcel Software because the numerous ***verbatim*** similarities between the Lexcel and Nelcela source code involve creative expression well within the protective scope of the U.S. Copyright laws.

Accordingly, the Joint Parties ask that the Court rule, once and for all, that (1) the Lexcel Software is copyrightable, (2) Lexcel is the owner of the entirety of the Lexcel Software on which Lexcel holds copyright registrations, and (3) the similarities between the Lexcel and Nelcela software raise a triable issue of copyright infringement by Nelcela of the Lexcel Software.

## I. INTRODUCTION

Nelcela has asked the Court to conduct an "analytic dissection" of the similarities between the Lexcel Software and the Nelcela Software. Analytic dissection is not necessary in the present case because Nelcela has copied extensive portions of the Lexcel source code verbatim, as shown in Exhibits 1-10. But even if analytic dissection was appropriate, it is a defense which Nelcela bears the burden of raising and pursuing. 4 NIMMER ON COPYRIGHT § 13.03[F][3] p.13-138. The role for the Court in evaluating that defense is to determine if there is "a genuine issue regarding whether the ideas and expressive elements of the works [*i.e.*, the Lexcel Software and Nelcela Software] are substantially similar." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992). "'[W]hen objectively speaking a triable case of expressive similarity exists, the case must be sent to the trier of fact.'" *Id.* at 1477 (quoting 4 NIMMER ON COPYRIGHT § 13.03[E][3] at 13-78.20).

As explained below, both the verbatim copying of the Lexcel Software by Nelcela, and a comparison of the similarities between the two works, raise a triable issue of substantial similarity sufficient to send the case to the jury. The jury has already

concluded that Lexcel owns the software. The jury should now be asked to determine the amount of damages Nelcela owes for its infringement.

## II. VERBATIM COPYING ALWAYS IS ACTIONABLE REGARDLESS OF WHETHER THE COPIED ELEMENTS ARE COPYRIGHTABLE.

As an initial matter, even otherwise uncopyrightable elements are protected against ***verbatim*** copying. *E.g., Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994)(even when an idea and its expression are indistinguishable, the copyright laws still protect the work "against nearly identical copying"). As explained by Professor Nimmer, "Where there is literal similarity . . . between plaintiff's and defendant's works, . . . it is not necessary to determine the level of abstraction at which similarity ceases to consist of an 'expression of ideas,' because literal similarity by definition is always a similarity as to the expression of ideas." 4 NIMMER ON COPYRIGHT § 13.03[A][2], at 13-53. Thus, while every journalist writing about a newsworthy event will likely include the same key facts and even use some of the same words, a journalist could not simply copy and paste someone else's story under their own byline. Even though the elements of that story are dictated by the underlying facts, verbatim copying is nevertheless a violation of the copyright laws.

Nelcela has copied numerous portions of the Lexcel Software verbatim. (Exs. 1-10; Decl. of Dr. David Posner ¶¶ 8-27 (Ex.12).) Such verbatim copying gives rise to a triable claim of copyright infringement without the need to engage in analytic dissection.

## III. COMPUTER SOURCE CODE IS PRESUMPTIVELY COPYRIGHTABLE

Contrary to Nelcela's contentions, Lexcel does not claim a copyright in the ***functionality*** performed by its computer software, *i.e.*, credit card processing. Rather, Lexcel holds copyrights in Lexcel's ***expression*** of that functionality as reflected in Lexcel's computer software.

"Computer software is subject to copyright protection. 17 U.S.C. § 101. A computer program is made up of several different components, including the source and object code, the structure, sequence and or organization of the program, the user



interface, and the function, or purpose, of the program. Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an 'expression' of an idea, rather than the idea itself." *Johnson Controls v. Phoenix Control Sys.*, 886 F.2d 1173, 1175 (9th Cir. 1989).

Source code is the code used by computer programmers to write computer programs. Source code is typically written in what are known as high-level programming languages, which allow the programmer to creatively express her code in a human readable format. The source code must then be converted into a format known as object code which consists of the "0s" and "1s" that can be run by a computer. End users do not have access to the source code, but rather are provided only the object code which is not in a human readable or editable format.

Source code is presumptively copyrightable because "there is nearly limitless choice in how a particular data structure or algorithm (or combination of data structures and algorithms) is implemented in actual source code." *Aharonian v. Gonzales*, 77 U.S.P.Q.2d 1449, 1453 (N.D.Cal. 2006); *see also Johnson Controls*, 886 F.2d at 1175 ("Source and object code, the literal components of a program, are consistently held protected by a copyright on the program."); *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d. Cir. 1992) ("It is now well settled that the literal elements of computer programs, i.e., their source and object codes, are the subject of copyright protection.").

A programmer is given great flexibility and creativity with respect to how she writes and formats her source code. (Decl. of Dr. David Posner ¶¶ 5 (Ex.12).) As Dr. David Posner explains in his attached declaration, the process of moving from a literal blank screen at the start of the programming process to a completed suite of computer programs involves thousands of "choice points" at which the programmer must make creative choices. (*Id.*) "Within the confines of a single programming language and a given programming task, a programmer has great discretion as to how to structure and organize the code, how to comment the code, and how to format the code so it is



comprehensible to other programmers." *Aharonian*, 77 U.S.P.Q.2d at 1453. The programmer must make creative choices about how to select and express the specific structure, algorithms, procedures, and functions that constitute the code, as well as the words (including procedure, file, and variable names, as well as programmer comments) that the programmer uses to write the literal code itself. (Posner Decl. ¶ 5.) All of these choices are "heavily dependent upon the creativity of the programmer." (*Id.*) The source code results from these thousands of choice point decisions. (*Id.* ¶ 6.)

In this case, Nelcela copied verbatim substantial portions of Lexcel's source code. Lexcel's source code is copyrightable, and Nelcela's willful copying of Lexcel's source code is copyright infringement.

## IV. THE LEXCEL SOURCE CODE IS COPYRIGHTABLE

### A. The Copyright Office Has Already Determined that the Lexcel Source Code Is Copyrightable

As shown at trial, the U.S. Copyright Office has issued five copyright registrations for the Lexcel source code. (*See* Trial Exs. 576-80; Decl. of Carl Kubitz ¶ 3 (Ex.13).) The issuance of these registrations is presumptive evidence that the Lexcel Software is copyrightable. *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) (a valid certificate of registration with the copyright office gives rise to a presumption of originality). For unpublished computer programs such as the Lexcel source code, Lexcel was required to deposit with the U.S. Copyright Office "identifying portions of the program." 37 C.F.R. § 202.20(c)(2)(vii); *see also* 17 U.S.C. § 408(b). One of the primary purposes of this deposit requirement is to "furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994). The Copyright Office uses the deposited portions of the computer program to "'examine[ ] the deposit to determine the existence of copyrightable authorship.'" *Id.* (quoting 54 Fed.Reg. 13,173 (1989)).

By issuing the copyrights, the U.S. Copyright Office has determined that the Lexcel source code is copyrightable. This Court should defer to that determination.



**B. Nelcela's Actions Show that Lexcel's Software Is Copyrightable**

Nelcela's current arguments cannot be reconciled with the fact that prior to this lawsuit, Nelcela through its counsel—Ray Harris & Fennemore Craig—submitted substantially similar computer software to the Copyright Office for a determination of copyrightability. (*See* Nelcela copyright registration, Ex. 14.) Nowhere in that submission did Mr. Harris tell the Copyright Office what he is telling this Court now—that the software attached to his submission (Nelcela software copied in large part verbatim from the Lexcel Software) was not copyrightable.

Mr. Harris is an excellent lawyer and surely would not have sought copyrightability from the Copyright Office if, in his professional opinion, the software was not copyrightable. Which raises the question of whether Mr. Harris and Nelcela filed Nelcela's copyright applications with the belief that the material is not copyrightable? We think not. They should not be heard to argue to the contrary now.

**C. Analytic Dissection Shows that the Lexcel Source Code Is Copyrightable**

**1. Overview**

"Analytic dissection" is the name for the process utilized by courts "to distinguish ***ideas*** from ***expression***, and to 'dissect' unlicensed elements in order to determine whether the remaining similarities lack originality, flow naturally from basic ideas, or are one of the few ways in which a particular idea can be expressed given the constraints of the computer environment." *Apple v. Microsoft*, 35 F.3d at 1439 (emphasis added).

Applying this concept, the Ninth Circuit has found in a number of cases that infringement liability does not attach where "all similarities in expression arise from the use of common ideas." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987). In a copyright infringement case involving jeweled bee pins, for example, the court determined that their only similarities – their bee-like shape and decoration with jewels– were "inevitable from the use of jewel-encrusted bee forms" and therefore did not support infringement liability. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971). In another case between makers of stuffed animals, the court




found that the only similarities between their toy dinosaurs—the posture, body design, and "gentle" and "cuddly" attributes—were dictated by the very idea of a stuffed dinosaur toy and therefore did not represent infringement. *Aliotti*, 831 F.2d at 901. And in the computer context, the Ninth Circuit has denied copyright liability for the idea of overlapping windows on a computer screen because windows must either overlap or be tiled, and copyright law could not be used to give one company a monopoly on one of those only two possible options. *Apple v. Microsoft*, 35 F.3d at 1444. [The Court should note that the *Apple v. Microsoft* case did not involve the copying of computer source code, but rather involved "a claim of copying a computer program's artistic look as an audiovisual work instead of program codes registered as a literary work." *Id.* at 1439. *Brown Bag Software* similarly did not involve the copying of source code, but instead involved only the copying of non-literal elements including the use of pull down menus, the need to access files and edit and print work, and the use of some common colors. 960 F.2d at 1472-73.]

Where a work contains both copyrightable and uncopyrightable elements, the copyrightable elements remain protected. Thus in *Apple v. Microsoft*, the court recognized that even if Apple could not own the sole right to use overlapping computer windows, "Apple's *particular expression* may be protected." *Id.* (emphasis in original). Likewise, in the stuffed animal case, where the original toys had distinctive eye shapes and stitching, the Ninth Circuit recognized that those elements are copyrightable. *Aliotti*, 831 F.2d at 901. The "original selection and arrangement of unprotected elements" is also copyrightable. *Apple v. Microsoft*, 35 F.3d at 1446; *Feist Pubs., Inc. v. Rural Tel. Svc. Co.*, 499 U.S. 340, 348 (1991) (selection and arrangement of otherwise uncopyrightable elements is protected against verbatim copying).

Furthermore, although the focus in this case has been largely on literal copying (because the evidence of that type of copying – even to the level of unique spellings and programmer comments – is so clear and so egregious) it is essential to remember that even "non-literal" elements of a creative work of expression are protected by copyright,




so long as those elements were selected from among multiple expressive options by the author of the work. Thus, copying of the plot and characters of a novel, even without verbatim copying of passages of text, can constitute copyright infringement. Comparatively, in the software context, this kind of non-literal copying would be of the structure and organization of the program. So long as those elements represented a choice among various options to accomplish the chosen functions, the copying would be copyright infringement. *Johnson Controls*, 886 F.2d at 1175-76; *Computer Assocs.*, 982 F.2d at 701 ("[C]opyright protection extends beyond a literary work's strictly textual form to its non-literal components . . . else a plagiarist would escape by immaterial variations.").

**2. Analytic Dissection of the Similarities Between the Lexcel and Nelcela Software Shows They Are Copyrightable**

The analytic dissection process begins by comparing the ideas expressed by the two works at issue. *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988). Here, the ideas expressed by the Lexcel Software and the Nelcela Software are the same—the processing of credit card transactions—so the Court needs to dissect the works further to determine copyrightability.

The next level consists of a comparison of the non-literal elements of the two works. *See Apple v. Microsoft*, 35 F.3d at 1442-46 (comparing the artistic look of visual displays); *Brown Bag Software*, 960 F.2d at 1472-73 (comparing use of pull-down menus and other non-literal elements).[1] Here, the Lexcel and Nelcela software share numerous similarities in their non-literal elements, including:

1. The tasks performed by the Lexcel and Nelcela software are the same, including authorizing, processing, and storing credit card transactions and data;
2. The Lexcel and Nelcela Software are designed to operate on common computer platforms (*i.e.*, personal computers); and
3. The Lexcel and Nelcela Software share a common system design and layout, including:

[1] In the computer software context, "[l]iteral expression is the computer code itself. Non-literal expression is everything about a computer program not expressed in the code." *Adobe Sys. Inc. v. Southern Software Inc.*, 1998 WL 104303 (N.D.Cal. 1998).



a. The breakdown of functionality into components, including an authorization, merchant, and database component;

b. The interaction of the components;

c. The further breakdown of functionality within a component into particular files and modules, often having the same name and performing the same tasks as the corresponding Lexcel file or module;

d. The utilization of a single database by all components. (Dkt. 555.)

Nelcela does not contest the existence of these numerous similarities in non-literal elements between the Lexcel and Nelcela Software. (Nelcela's Op. Br. at 5-9). Instead, Nelcela argues that these similarities – ***when viewed in isolation*** – are not, on their own, copyrightable. (*Id.*). Nelcela's analysis is misplaced; these elements cannot be examined in isolation because Lexcel's copyright interest in the non-literal elements listed above flows from Lexcel's copyrights in its source code. *Computer Assocs.*, 982 F.2d at 701.

Given the existence of the substantial similarities between the non-literal elements of the Lexcel and Nelcela software, the Court must dissect the works even further, to the source code level, to distinguish the ideas embodied in the software (*i.e.*, credit card processing) from the expression of those ideas. As explained above, source code is presumptively copyrightable. To overcome that presumption, Nelcela must show that the verbatim similarities between the Lexcel and Nelcela source code "lack originality, flow naturally from basic ideas, or are one of the few ways in which a particular idea can be expressed given the constraints of the computer environment." *Apple*, 35 F.3d at 1439.

**(a) The Lexcel Source Code Copied by Nelcela Involves Lexcel's Creative Expression and Is Thus Copyrightable**

Nelcela attempts to evade liability for its wholesale, verbatim copying of the source code created by Lexcel (and the derivative works prepared by MTSI) by urging this Court to examine the code at a level of generality that would eviscerate the very existence of copyright protection. Thus, Nelcela claims that because the Lexcel Software is (1) designed to process credit card transactions and submit transaction data to VISA and (2) written in common computer programming languages that have their own vocabulary and grammar, no copyright protection is available.

Nelcela's argument is the equivalent of saying that, because all novels written in English obviously use English words and conventions of formatting and grammar, even a novel that copies plot, characters, and whole passages of text verbatim cannot be deemed to infringe on the predecessor novel from which it was copied. If Nelcela's argument were correct, no computer software designed to process credit card transactions could ever be copyrightable, because all such software would have to comply with both the requirements of VISA and the requirements of whatever computer language was used to write it. Leaving aside the fact that Nelcela's argument, if true, would invalidate Nelcela's own copyrights in the software on which it has sued in this case, Nelcela's argument collapses when the actual copying that took place in this case is examined.

Submitted herewith as Exhibits 1 through 10 are source code files from the Lexcel Software with highlighting showing portions that have been copied ***verbatim*** by Nelcela. These exhibits demonstrate that the substantial similarities between the Lexcel and Nelcela software are not the result of random chance and that copying took place:

- Exhibit 1 is a copy of the Lexcel source code file "Account.sql" showing portions that appear verbatim in various Nelcela files including "Merrpts.pbl" and "Accmast.pbl." As shown on Exhibit 1, both the database table name "account_master" and all of the column names in the Lexcel file appear verbatim in the Nelcela files. (Decl. of Dr. David Posner ¶¶ 11 (Ex.12).)
- Exhibit 2 is a copy of the Lexcel source code file "Authdaem.c" showing portions that appear verbatim in the Nelcela file "Authdaem.c." As shown on Exhibit 2, in addition to having the identical file name, almost the entirety of the Lexcel file, including variables, parameters, formatting, and the unique way in which Lexcel chose to express the functionality performed by the file appear verbatim in the Nelcela file. (*Id.* ¶ 12.)
- Exhibit 3 is a copy of the Lexcel source code file "Card.sql" showing portions that appear verbatim in various Nelcela files including the file "Accmast.pbl." As shown on Exhibit 3, both the database table name "cardholder_master" and all of the column names in the Lexcel file appear verbatim in the Nelcela file. (*Id.* ¶ 13.)
- Exhibit 4 is a copy of the Lexcel source code file "Cmdexec.c" showing portions that appear verbatim in the Nelcela file "Cmdexec.c." As shown on Exhibit 4, in



addition to having the identical file name, almost the entirety of the Lexcel file, including variables, parameters, formatting, and the unique way in which Lexcel chose to express the functionality performed by the file appear verbatim in the Nelcela file. (Decl. of Dr. David Posner ¶ 14 (Ex. 12).)

- Exhibit 5 is a copy of the Lexcel source code file “Cmdexec.h” showing portions that appear verbatim in the Nelcela file “Cmdexec.h.” As shown on Exhibit 5, in addition to having the identical file name, almost the entirety of the Lexcel file, including variables, parameters, and the unique way in which Lexcel chose to write this source code appear verbatim in the Nelcela file. (*Id.* ¶ 15.)

- Exhibit 6 is a copy of the Lexcel source code file “Idr.sql” showing portions that appear verbatim in various Nelcela files including “Base2out.pbl,” “Base2in.pbl,” and “Visamgt.pbl.” As shown on Exhibit 6, more than 80 database column names from the Lexcel file appear verbatim in the Nelcela files. (*Id.* ¶ 16.)

- Exhibit 7 is a copy of the Lexcel source code file “Interchange.h” showing portions that appear verbatim in the Nelcela file “Intercha.h.” As shown on Exhibit 7, in addition to having a nearly identical file name, almost the entirety of the Lexcel file, including variables, parameters, formatting, commenting, and the unique way in which Lexcel chose to write this source code appear verbatim in the Nelcela file. The similarities even include the programmer’s comment “Visa specific,” which makes sense in the Lexcel file but is not accurate in the context used in the Nelcela file. (*Id.* ¶ 17.)

- Exhibit 8 is a copy of the Lexcel source code file “ISO8583Struct.h” showing portions that appear verbatim in the Nelcela file “ISO8583S.h.” As shown on Exhibit 8, in addition to having a very similar file name, a substantial portion of the Lexcel file, including variables, parameters, formatting, commenting, and the unique way in which Lexcel chose to write this source code appears verbatim in the Nelcela file. (*Id.* ¶ 18.)

- Exhibit 9 is a copy of the Lexcel source code file “Select.sql” showing portions that appear verbatim in various Nelcela files including “Base2out.pbl,” “Base2in.pbl,” and “Visamgt.pbl.” As shown on Exhibit 9, more than 80 database column names from the Lexcel file appear verbatim in the Nelcela files. (*Id.* ¶ 19.)

- Exhibit 10 is a copy of part of the Lexcel source code file “Tables” showing portions that appear verbatim in the Nelcela file “Accmast.pbl.” As shown on Exhibit 10, both the database table name “ISO8583Settle” and many of the column names in the Lexcel file appear verbatim in the Nelcela files. (*Id.* ¶ 20.)




(*See also* Decl. of Carl Kubitz ¶¶ 10-19 (Ex. 13).)

As shown in Exhibits 1-10, entire passages of code were copied word-for-word by Nelcela, complete with discretionary word choices, misspellings, and even blank programmer comments. (Decl. of Dr. David Posner ¶¶ 8-28 (Ex.12).)[2] Each of these areas of copying involved a creative decision and expression among multiple programming options, despite the constraints of the chosen programming language and the need to make a program that could communicate with VISA pursuant to VISA's specifications for the transmission of data. (*Id* ¶¶ 29-32; *see also* Decl. of Carl Kubitz ¶¶ 7-9 (Ex. 13).)

Nelcela's expert witness, Jeffrey Pell, agreed. As Mr. Pell explained on cross-examination at trial, although different credit card processing systems will perform the same function (*i.e.*, credit card processing), different programmers will go about expressing that functionality differently. (Trial Tr. 4/19/07 p.1376:21 – 1377:3). Mr. Pell agreed that Lexcel, when writing its software, defined its own variables and functions, and wrote its code in a unique way. (*Id.* at 1377:12 – 1378:11.) Mr. Pell further agreed that Lexcel exercised its discretion when naming its variables, functions, etc. (*Id.* at 1382:7-19, 1382:24 – 1383:1, 1385:7-8.) Mr. Pell testified that the programmers' comments (which add nothing to the functionality of the computer code) are the result of unique determinations made by the Lexcel programmers when they wrote the code. (*Id.* at 1387:10-19). And Mr. Pell agreed that the Lexcel code has quirks such as commands that do not add to the functionality of the computer code. (*Id.* at 1378:6 – 1379:24.) All of these areas reflect Lexcel's creative expression and therefore are copyrightable. The Lexcel source code is thus copyrightable.

**(b) The Similarities Are Not the Result of External Constraints**

As set forth in Dr. Posner's declaration, the similarities between the Lexcel Software and the Nelcela Software are not the result of constraints imposed by the

[2] *See also* Dr. Posner's Expert Report, docket no. 334 ex. 12; Robert Zeidman's Expert Report, docket no. 334 ex. 16; Robert A. Lerche's Expert Report, docket no. 334 ex. 14.



programming languages used to create the source code, nor can the degree of similarity between the Lexcel Software and the Nelcela Software be explained by efficiency concerns. (Decl. of Dr. David Posner ¶ 29 (Ex.12)) That is due to the fact that "[t]he programming languages used by Lexcel (C and SQL) afford innumerable ways to efficiently express the functionality performed by the Lexcel Source Code." (*Id.*; *see also* Trial Tr. 4/19/07 at 1381:11-13[3] (Jeffrey Pell) (the expression of functionality in the Lexcel source code is not required by the C programming language).) Although "[i]t is true that all programming languages have constraints such as grammar and a vocabulary, as does the English language, [w]ithin the constraints of the programming language, there is virtually an unlimited number of ways or choice points to express a given set of functionality." (Decl. of Dr. David Posner ¶ 30 (Ex.12).) In Dr. Posner's professional opinion, "the multitude of choice points reflected in the Lexcel Source Code is a unique reflection of the quirks and creativity of the Lexcel programmers." (*Id.*)

The similarities between the Lexcel Software and the Nelcela Software likewise are not dictated by the computer hardware on which the systems were designed to operate. Although all computer hardware has limitations, the programming languages used by Lexcel are specifically designed to be used on any type of computer hardware. (Decl. of Dr. David Posner ¶ 31 (Ex.12).) Accordingly, in Dr. Posner's professional opinion, "the multitude of choice points reflected in the Lexcel Source Code are not the result of any hardware limitations." (*Id.*)

**(c) The Similarities Are Not the Result of Programming Manuals or Programming Conventions**

"Lexcel uniquely created the Lexcel Source Code from scratch. The Lexcel Source Code was not copied from VISA or other third party payment network publications, or from programming manuals or software available from the public domain." (Decl. of Carl Kubitz ¶ 4 (Ex. 13).)[4] As confirmed by Dr. Posner, the verbatim

[3] Pursuant to Local Rule 7.1(d)(1), copies of the referenced trial transcripts have been attached to the chambers copy of this brief for the Court's convenience.

[4] Nelcela's Opening Brief asserts that Mr. Kubitz made a number of "admissions" during his trial testimony. The cited transcripts do not support Nelcela's characterization of the

similarities between the Lexcel and Nelcela source code cannot be explained by reliance on programming manuals, programming conventions, or third-party sources:

> I am very familiar with programming conventions often utilized by C and SQL computer programmers. I am also very familiar with books and other texts involving the C programming language, as well as manuals for Sybase and other databases. In fact, I have taught classes on both C programming and database architecture and design. **I am not aware of any programming conventions, books, manuals, or public domain sources from which the similarities between the Lexcel Source Code and the Nelcela Source Code have been derived.** (Decl. of Dr. David Posner ¶ 33 (Ex.12) (emphasis added).)

Nelcela's contentions to the contrary should be given no weight. When Nelcela's expert witness, Jeffrey Pell, was examined at his deposition, he testified that he saw no evidence in the Lexcel code that it had been copied from anywhere else. (Trial Tr. 4/19/07 at 1355:1-9). At trial, however, he speculated that the Lexcel source code copied by Nelcela "could have" come out of various software manuals or an old appendix to the VISA technical specifications. But, Mr. Pell never testified that he actually reviewed any of the manuals or appendices and found the copied code at issue – he agreed only that such copying was "entirely possible." (*Id.* at 1348:24 – 1349:19.) To this day, Nelcela has failed to come forth with these phantom third-party sources. Nelcela's argument is based on nothing more than hearsay, and the evidence it seeks to offer is barred by both the hearsay and best evidence rules. FED.R.EVID. 802, 1002, 1003. Moreover, producing these alleged sources would only be the first step. In order to rely on third-party sources as a defense, Nelcela would have to establish not only that Lexcel copied a preexisting work (which never happened), but also that Lexcel's source code "is substantially similar to the prior work in both ideas and expression." *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033-34 (9th Cir. 1992).

The only third party source that Nelcela actually provided—a printed data screen from Sun West Bank—does not correspond to Lexcel's actual code. It corresponds to a

---

evidence. Given space limitations, the Joint Parties do not rebut each misstatement in detail, but instead refer this Court to the actual trial transcripts and provide their own citations to the facts in evidence. By doing so, the Joint Parties do not concede the accuracy of Nelcela's assertions about the record.



set of handwritten notes found in Lexcel's development files, but those notes do not themselves turn up in the software source code, which abbreviates the field names actually used by Lexcel completely differently than those used by Sun West Bank. The Sun West Bank printout was not copied by Lexcel in its source code and is not substantially similar to the Lexcel Software. (*Compare* Nelcela Exs. D, E & G *with* Exs. 1-10).

If Nelcela wishes to avoid liability for copying Lexcel's code by showing that what it copied is in the public domain or that it was copied from a third-party source in the first place, then it bears the burden of actually producing the public domain or third-party source to verify its existence and similarity. *North Coast Indus.*, 972 F.2d at 1033-34. Nelcela cannot meet its burden through unverified tales of phantom manuals and third-party sources that do not match the copying at issue.

**(d) The Similarities Are Not Dictated by VISA**

A crucial part of the Lexcel Software is what is known as a relational database, which Lexcel created to store all data processed by the Lexcel system including data to be communicated to or received from VISA. A relational database is a means for electronically storing data in structures known as "tables." Data is entered in tables as rows. The rows in a given table have a common set of data elements called fields. A table is defined by specifying the fields, which are also called columns, and the type and size of information contained in the fields. (Decl. of Dr. David Posner ¶ 23 (Ex.12).)

To create its database, Lexcel had to design what is known as a database "schema," which is the collection of the tables in a database along with their definitions and auxiliary information about the tables. (*Id.* ¶ 24; Decl. of Carl Kubitz ¶ 8 (Ex. 13).) "In database intensive applications such as the Lexcel Source Code, schema design is probably the most important element in determining the consistency, correctness, and performance of the system." (Decl. of Dr. David Posner ¶ 24 (Ex.12).)

The design of a database schema entails many critical and creative choices, including the selection of the tables to include, the selection of the types of data to be




stored in each table, the selection of the appropriate rows and columns to include in each table, the relationship amongst the tables, and the names to be given to all of the various components of the schema. (*Id.* ¶ 25.) Accordingly, database schemas are accorded copyright protection. *Positive Software Solns. v. New Century Mort.*, 259 F.Supp.2d 531, 535 (N.D.Tex. 2003); *Szen Corp. v. Anderson*, 2007 WL 1728717 (E.D.Wash. 2007); R.Nimmer, INFORMATION LAW §§ 3.23, 4.4 (May 2007).

VISA did not provide a database schema or any source code to Lexcel. (Decl. of Carl Kubitz ¶ 5 (Ex. 13).) The "flow charts" mentioned by Nelcela have nothing to do with the design of Lexcel's database schema. All that VISA provides are lists of data records describing the kinds of data to be communicated back and forth with VISA. (*See, e.g.,* Ex. F to Nelcela's Brief.) The schema is the organization and names that the programmer uses to establish a computer database and to reference data stored in the database. (Decl. of Dr. David Posner ¶ 26 (Ex.12).) The data, on the other hand, is the information stored in the database. "The manner in which data is stored and organized in the database is completely separate from how the data is presented to VISA or any third party." (*Id.* ¶ 26.) Lexcel had to design a schema for its database to store the data to be sent to and from VISA, and then Lexcel had to write source code to establish the database that Lexcel designed. (Decl. of Carl Kubitz ¶¶ 7-9 (Ex. 13).) That source code is copyrightable. *Positive Software*, 259 F.Supp.2d at 535.

Nelcela copied Lexcel's database schema and source code, as shown in Exhibits 1-10. Although Nelcela now contends that the database fields copied by Nelcela were provided by VISA, Nelcela's own expert witness Jeffrey Pell refuted that contention at trial. Mr. Pell testified that he has not seen "any VISA publication that sets forth in writing the common elements that appear in the Lexcel and Nelcela source code," that Lexcel could have named its database fields any way it wanted, and that the names used by Lexcel were not mandated by VISA. (Trial Tr. 4/19/07 at 1355:16-24, 1360:3-9, 1370:25 – 1371:1.) Indeed, Mr. Pell testified that all of the database field names used by Lexcel could have been written differently. (*Id.* at 1356:22 – 1357:2.). Most tellingly,



Mr. Pell demonstrated this fact at trial, when he stood at the easel and showed the jury that he would have used different database field names than those used by Lexcel. (*Id.* at (1358:18 – 1361:25, 1363:3 – 1364:15, 1365:9 – 1367:25, 1370:1 – 1371:1).)

Exhibit 11 provides a good example of the uniqueness of Lexcel's database schema, and the copying of it by Nelcela. As shown in Exhibit 11, no matter how idiosyncratically Lexcel chose to name its database fields, Nelcela copied those names letter-for-letter. Such copying is copyright infringement.

**(e) The Similarities Are Not Excusable Under the Doctrines of Merger or *Scenes A Faire***

"Merger" occurs when "an idea and its expression are indistinguishable," in which case "the expression will only be protected against nearly identical copying." *Apple*, 35 F.3d at 1444. The doctrine of *scenes a faire* is closely related. Under the doctrine of *scenes a faire*, features which are "'as a practical matter indispensable, or at least standard, in the treatment of a given idea' . . . are treated like ideas and are therefore not protected by copyright." *Id.* (quoting *Frybarger v. IBM,* 812 F.2d 525 (9th Cir. 1987)).

Here, neither merger nor *scenes a faire* applies because the idea expressed by the Lexcel Software, *i.e.*, credit card process, is not indistinguishable from Lexcel's expression of that idea, and is not indispensable to the treatment of the idea. Rather, as explained above, the Lexcel source code is the creative result of numerous choice point decisions made by Lexcel when creating the software. (*See also* Decl. of Dr. David Posner ¶¶ 28-31 (Ex.12).)

**D. Nelcela's Copying of the Lexcel Software Is Not *De Minimis***

To determine whether enough copying occurred to give rise to a violation of the Copyright laws, the Court must look "to the plaintiff's [*i.e.*, Lexcel's] work because a contrary rule that measured the significance of the copied segment in the defendant's work would allow an unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by burying them beneath non-infringing material in the defendant's own work" *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th



Cir. 2004) (emphasis added), *cert. denied*, 545 U.S. 1114 (2005). "It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." (*Id.* (internal quotation omitted).

Here, the portions of the Lexcel Software copied by Nelcela are both substantial and significant. As explained by Dr. Posner, "The database schema, the variable names, the functions, and other choice points of the Lexcel Source Code that appear verbatim in the Nelcela Source Code comprise a crucial and indispensable part of the Lexcel Source Code such that absent such portions, the value of the Lexcel Source Code would be severely diminished." (Decl. of Dr. David Posner ¶ 34 (Ex. 13).) Accordingly, Nelcela's copying is substantial enough to constitute copyright infringement.

**V. NELCELA'S COPYING OF THE MTSI SOFTWARE IS ALSO ACTIONABLE.**

The Joint Parties' statement of the elements and works of the Lexcel software at issue in this litigation and alleged to have been infringed and copied by Nelcela includes the MTSI Software, an authorized derivative of the Lexcel Software that Lexcel owns both by agreement and pursuant to operation of the copyright law.[5] (Trial Ex. 3; Docket no. 332 ex. 60, at § 3.1; 17 U.S.C. §§ 103, 106.) Like the similarities this Court found between the Lexcel and Nelcela Software, the substantial similarities found by this Court between the Nelcela Software and the MTSI Software are actionable because they consist of verbatim copying and because they involve copyrightable expression of ideas. (*See* Decl. of Robert Lerche (Ex. 15).)

**VI. LEXCEL'S LITIGATION WITH MASTERCARD INVOLVED WHOLLY DIFFERENT SOFTWARE NOT RELEVANT TO THE ANALYSIS HERE.**

Nelcela also attempts to argue that Lexcel has already lost the copyrightability issue in another lawsuit with MasterCard and that the result in that case controls the disposition of copyrightability here. The MasterCard suit, however, involved completely

[5] If Lexcel is found not to own the source code at issue in this case—a determination the Nelcela parties continue to resist—MTSI also has preserved its contention that it would own the MTSI software because of its employment relationship with Alec Dollarhide. (Dkt. 351 at § VI:A; dkt. 424 at 3; Apr. 3, 2007 Pretrial Conference Trans., dkt. 474, at 77:7 – 81:8.)

different computer software than the Lexcel source code at issue in the present case. (Trial Tr. 4/13/07 at 785:7-10; *see also* Decl. of Carl Kubitz ¶ 23 (Ex. 13).) Whatever may have happened in the MasterCard case, it is not relevant here.[6]

## CONCLUSION

At a minimum, Nelcela's ***verbatim*** copying of the Lexcel source code is sufficient to support the jury's ownership verdict and to require a jury trial on copyright infringement without the necessity for analytic dissection. Even if analytic dissection were required in light of these verbatim similarities, the result of the dissection is clear—the source code copied by Nelcela is the product of Lexcel's creative expression, and thus copyrightable. Consequently, this Court should enter an order that (1) the Lexcel Software is copyrightable, (2) Lexcel is the owner of the entirety of the Lexcel Software on which Lexcel holds copyright registrations, and (3) the similarities between the Lexcel and Nelcela software raise a triable issue of copyright infringement by Nelcela of the Lexcel Software.

RESPECTFULLY SUBMITTED this 28th day of September, 2007.

BRYAN CAVE LLP

By s/ George C. Chen
George C. Chen
Attorneys for Lexcel, Inc. and Lexcel Solutions, Inc.

DICARLO CASERTA & PHELPS PLLC
Nicholas J. DiCarlo
and
LAW OFFICES OF WILLIAM McKINNON

By s/ William McKinnon
William McKinnon
Attorneys for Merchant Transaction Systems, Inc., Gene Clothier, and Tone Clothier

LEWIS AND ROCA LLP

By s/ Kimberly A. Demarchi
Peter D. Baird
Robert H. McKirgan
Richard A. Halloran
Kimberly A. Demarchi
Attorneys for POST Integrations, Inc., Ebocom, Inc., Mary L. Gerdts, and Douglas McKinney

[6] Notably, Nelcela does not provide this Court or the other parties with a copy of the decision in the MasterCard case, and according to the court docket the summary judgment ruling in that matter is sealed and therefore unavailable to the parties in this case (including Nelcela). *See* Docket in No. 03-CV-01454-JAT.

LEWIS AND ROCA LLP LAWYERS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Merrick B. Firestone
m.firestone@ronan-firestone.com
Veronica L. Manolio
vmanolio@ronan-firestone.com
RONAN & FIRESTONE, PLC
9300 East Raintree Drive, Suite 120
Scottsdale, Arizona 85260

Raymond K. Harris
FENNEMORE CRAIG, P.C.
3003 North Central Avenue, Suite 2600
Phoenix, Arizona 85012

s/ Debi Garrett