**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MERCHANT TRANSACTION SYSTEMS, INC., | ) Case No. CV 02-1954-PHX-MHM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| NELCELA, INC., an Arizona Corporation; LEN CAMPAGNA, an Arizona resident; ALEC DOLLARHIDE, an Arizona resident; EBOCOM, INC., a Delaware Corporation; POST INTEGRATIONS, INC., an Illinois Corporation, | ) |
| Defendants. | ) |
| And Related Counterclaims, Cross-Claims, and Third-Party Claims. | ) |

Currently before the Court are the Joint Parties' Motion for Partial Summary Judgment (Dkt. #615) and the Nelcela Parties' Cross-Motion for Partial Summary Judgment. (Dkt. #621). After reviewing the pleadings, the Court issues the following order.

**I.     FACTUAL BACKGROUND**

On June 30, 1994, Credit Card Services, Ltd. ("CCSL") hired Lexcel, Inc. ("Lexcel") to create credit card processing computer software (the "CCS System"). (MTSI and POST's Statement of Facts ("MPSOF") ¶ 6). CCSL and Lexcel entered into a

written License/Use Agreement, which stated that CCSL would have a 21 year license to use and modify the software created by Lexcel, but that Lexcel would "at all times own said system." (MPSOF ¶ 6). At that time, the CCS System included an "Authorization System" and a "Merchant System" (collectively referred to as the "Lexcel software"), as well as a "Cardholder System" and "additional systems to be designed." (MPSOF Exh. 2, p. 2).

Around that time, CCSL hired Individual Defendant Alec Dollarhide ("Dollarhide") to assist Lexcel in the creation and modification of the CCS System. (MPSOF ¶ 7). Thereafter, on or around April 28, 1995, Charles Anderson, President of CCSL, and Dollarhide allegedly entered into a "System Ownership and License Agreement," wherein CCSL would provide Dollarhide ownership of "any systems written and developed by him during the course of his employment with [CCSL] including all enhancements made," in exchange for "a perpetual license to use, but not sell, transfer, or assign any of the systems written and developed by Alec Dollarhide during the term of his employment with [CCSL]." (MPSOF ¶ 13, Exh. 13). The validity of this agreement is contested. (MPSOF ¶ 15).

Also in 1995, CCSL sued Lexcel. (MPSOF ¶ 9). The lawsuit culminated in a settlement agreement, dated July 1, 1995, wherein CCSL and Lexcel reaffirmed the 21-year license and Lexcel's ownership of the CCS System. (MPSOF ¶ 9). The settlement agreement specified that the License "included derivative works, defined as modifications of the CCS System which include [Lexcel's] source or object codes and which shall remain the property of [Lexcel]." (MPSOF ¶ 10).

In 1996, Third-Party Defendant Gene Clothier ("Clothier"), through Credit Card Services, Inc. ("CCSI"), took over majority ownership of CCSL. (MPSOF ¶ 11). Alec Dollarhide continued to work for CCSL after it had been purchased by CCSI. (MPSOF ¶¶ 11, 17). In addition, in 1997, Dollarhide and Leonard "Len" Campagna ("Campagna") formed Nelcela, Inc. ("Nelcela") (referred to collectively as the "Nelcela Parties"). (The

Nelcela Parties' Counterclaim and Third Party Complaint Against Lexcel ("Dkt. # 399"), ¶ 20).

On March 31, 1999, Lexcel wrote a letter to CCSL and/or CCSI to inquire into whether CCSL was complying with the 1995 Settlement Agreement. (MPSOF Exh. 19). CCSL (and/or CCSI) responded to Lexcel's inquiry on May 12, 1999, stating that "[a]ll of the source code ever used by [Credit Card Services] was written entirely by Alec Dollarhide." (MPSOF Exh. 19). The letter, although signed by Danielle Huffman, Vice President and Chief Operating Officer of CCSL (and/or CCSI), was allegedly written by Dollarhide. (MPSOF ¶ 19).

Less than one week later, on May 18, 1999, Nelcela filed Certificates of Registration with the U.S. Copyright Office for: (1) the Nelcela Merchant System, i.e., "[s]oftware that allows merchants to accept credit card payments in exchange for goods or services" (MPSOF, Exh. 20; Dkt. #399 ¶ 22), and (2) the Nelcela Authorization System, i.e., "software designed to authorize or reject credit card transactions based upon pre-set criteria" (id., Exh. 24). The Registrations claim that creation of the works was completed in 1999. (MPSOF, Exhs. 20, 24).

On June 1, 1999, CCSI and CCSL conveyed the credit card processing software used by CCSL and CCSI to Plaintiff Merchant Transaction Systems, Inc. ("MTSI"), a sister company of CCSI. (MPSOF ¶ 12). In addition, Dollarhide became MTSI's computer programmer. (MPSOF ¶ 12). Dollarhide and the other Nelcela Parties apparently represented to MTSI at this time either that the software MTSI had obtained was owned by Dollarhide and/or Nelcela or that Dollarhide and/or Nelcela had developed and copyrighted their own versions of the software used by MTSI; MTSI allegedly "did not appreciate that the software that it was using was derivative of the Lexcel software." (MPSOF ¶ 12, Exhs. 9, 22).

In Spring 1999, Third-Party Defendants POST Integrations, Inc. ("POST"), Ebocom, Inc. ("Ebocom"), and Mary Gerdts ("Gerdts"), (collectively, along with Douglas McKinney ("McKinney"), the "POST Parties"), contacted and entered into negotiations

with the Nelcela Parties to obtain Nelcela's credit card processing software. (MPSOF Exh. 29). Although the POST Parties and Nelcela Parties entered into a Mutual Confidentiality Agreement in May 1999, they apparently could not agree on the terms of a written contract; but they allegedly orally agreed that Nelcela would grant POST, among other things, a perpetual license to the Nelcela software in exchange for $750,000. (MPSOF Exh. 29; Dkt. #83, Nelcela's Cross-Claim Against POST ¶¶ 12, 13). As a result, by December 2000, the POST Parties had paid the Nelcela Parties $556,000. (MPSOF ¶ 34). And the Nelcela began processing credit card transactions for the POST Parties in December 2000; as of June 2001, Nelcela had processed over $600,000,000.00 transactions. (Dkt. #83, Nelcela's Cross-Claim Against POST ¶¶ 21, 22). The POST Parties, however, stopped paying the Nelcela Parties, and in May 2001 the Nelcela Parties threatened to cut off POST's access to the their software; that conflict culminated in the issuance of a temporary restraining order against the Nelcela Parties by the Maricopa County Superior Court. (MPSOF ¶ 34; Dkt. #83, Nelcela's Cross-Claim Against POST ¶ 23).

## II.     PROCEDURAL HISTORY[1]

MTSI filed a complaint in the United States District Court for the District of Arizona on October 3, 2002, invoking diversity jurisdiction under 28 U.S.C. § 1332(a) and asserting various state law claims relating to copyright infringement and breach of contract against the Nelcela and POST Parties (minus the Individual Third Party

[1]For more on the convoluted history of this action, the Court refers the reader to the Court's March 17, 2009 Phase II order on the issue of analytical dissection. (Dkt. #607, pp. 1-8). Indeed, for some time this case has teetered on the brink of unmanageability, due in no small part to the parties' pervasive inability to agree on the claims at issue in this litigation, the exact issues to be tried in the different phases of this action – despite the fact that the parties stipulated to and requested bifurcation – and the parties' inability to present the appropriate and necessary legal standards (i.e., analytical dissection), at the appropriate times, in order for the Court to properly adjudicate the claims at issue in this case (e.g., copyright infringement of software programs).

Defendants). (Dkt. #1). The case was assigned to this Court on November 21, 2002. (Dkt. #12). The Nelcela Parties lodged a Motion to Dismiss MTSI's complaint on November 15, 2002; it was filed on January 14, 2003. (Dkt. # 23). Then, on August 14, 2003, the Court granted in part the Nelcela Parties' Motion to Dismiss, and dismissed without prejudice MTSI's claims for fraudulent misrepresentation and concealment, RICO, unjust enrichment, open account, account stated, and quantum meruit. (Dkt. #36).

On October 29, 2004, the Nelcela Parties filed an Answer and Counterclaims against MTSI, cross-claims against POST and Ebocom, and a third party complaint against Gerdts, McKinney, and the Clothiers. (Dkt. #50). In addition, on November 1, 2004, the POST Parties filed an Answer and Counterclaims against MTSI, and cross-claims against the Nelcela Parties. (Dkt. #51). The parties then filed answers and replies to the various claims, counterclaims, and cross-claims on December 7, 2004. (Dkt. ## 61-64). The parties amended their claims, counterclaims, and cross-claims on March 9, 2005 (Dkt. ## 83-84); answers and replies were filed on April 8, 2005. (Dkt. ##108-12). At that same time, the Nelcela Parties filed a Motion to Dismiss POST's cross-claims. (Dkt. #113).

The parties also stipulated to bifurcate this action into two phases, tracking the elements of copyright infringement: (1) ownership and (2) infringement/damages. (Dkt. #87). The stipulation provided that the "issue of ownership shall be bifurcated and tried expeditiously. In the Ownership phase, discovery shall be limited to Ownership." (Id., p.1).

MTSI filed a Motion to Dismiss the Nelcela Parties' third party claims against the Clothiers on April 27, 2005 (Dkt. #128), and on June 1, 2005, the Nelcela Parties filed a Motion to Dismiss Case. (Dkt. #159).

Then, on June 13, 2005, Lexcel moved to intervene as a plaintiff in this litigation. (Dkt. #169). The Court granted Lexcel permission to intervene (Dkt. #209), and on July 29, 2005, Lexcel filed an Intervening Complaint, alleging that the Nelcela Parties engaged in copyright infringement of Lexcel's software by unlawfully converting

Lexcel's software. (Dkt. #212). Lexcel subsequently filed an amended complaint (Dkt. #277), which the Nelcela Parties moved to dismiss on November 11, 2005. (Dkt. #295).

On December 16, 2005, the Court granted the Nelcela Parties' Motion to Dismiss Case, and dismissed Counts 10, 11, 14, 15, and 16 against the Nelcela Parties in MTSI's First Amended Complaint. (Dkt. #310). The Court also denied the Clothier's Motion to Dismiss. (Id.). In addition, the Court granted in part and denied in part the Nelcela Parties Motion to Dismiss POST's cross-claims, dismissing with prejudice POST's cross-claim for conversion. (Id., p.10).

On February 15, 2006, MTSI and the POST Parties stipulated that Lexcel owned the disputed computer software and thus entered into a Settlement Agreement and Mutual Release with Lexcel, whereby Lexcel, MTSI, and the POST Parties (collectively referred to as the "Joint Parties") "mutually released each other from all claims related to the circumstances alleged in the present lawsuit." (Dkt. #322). Pursuant to the Settlement Agreement, MTSI moved to dismiss its claim for declaratory relief (Count 17) against the POST Parties, and the POST Parties moved to dismiss their counterclaim for declaratory judgment and breach of warranty against MTSI, which the Court granted on March 3, 2006. (Dkt. ## 322, 342).

The Nelcela Parties filed Motions for Summary Judgment against each of the Joint Parties on February 17, 2006. (Dkt. ## 323-25). The Joint Parties filed a Motion for Summary Judgment on February 17, 2006. (Dkt. #333). And on September 30, 2006, the Court (1) denied the Nelcela Parties' Motion to Dismiss Lexcel's Amended Complaint, (2) denied the Nelcela Parties' Motions for Partial Summary Judgment against Lexcel and MTSI, (3) granted in part and denied in part the Nelcela Parties' Motion for Partial Summary Judgment against the POST parties, dismissing with prejudice the POST Parties' claim for declaratory relief, and (4) denied the Joint Parties' Motion for Summary Judgment. (Dkt. #383). In its Order, the Court also held that "based upon the undisputed similarities between the Lexcel 2001 software, MTSI software and Nelcela software . . . they are substantially similar beyond the possibility of random chance and that copying

- 6 -

took place." (Dkt. #383, p.28). The Nelcela Parties subsequently filed an Answer and Counterclaim against Lexcel, and asserted a Third-Party Complaint against Carl and Flora Kubitz (collectively referred to, along with Lexcel, as the "Lexcel Parties"). (Dkt. #399). And on December 26, 2006, the Kubitzs filed a Motion to Dismiss the Nelcela Parties' Third-Party Complaint (Dkt. #416), which the Court denied on August 21, 2007. (Dkt. #547).

Prior to the Phase I trial on the issue of ownership, the Nelcela Parties and the POST Parties stipulated to preserve for Phase II both the Nelcela Parties' "allegations that [the POST Parties] stole, infringed upon or otherwise had access to, the Nelcela source code," and "all issues relating to ownership of POST's code and alleged infringement by POST[.]" (Dkt. #468).

Trial began on April 10, 2007, to determine who owned the respective Merchant and Authorization Systems at issue in this case, and on April 24, 2007, the jury returned a verdict that Lexcel was the owner of the Merchant and Authorization Systems. (Dkt. #501). The jury also found that Lexcel possessed a valid copyright over the "database component or system" of the Lexcel software. (Id., p.2).

The Nelcela Parties then filed a Motion for Judgment as a Matter of Law and/or Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for a New Trial, arguing that Lexcel's claims, including its claim of ownership, are barred by the applicable statute of limitations, and that the jury improperly relied on the Court's September 30, 2006 finding of "substantial similarity" between the Lexcel and Nelcela Merchant and Authorization Systems. (Dkt. #505). The Nelcela Parties also filed an Answer to the POST Parties' claims on May 10, 2007 (Dkt. #510); and the Clothiers, as well as Diane Dollarhide and Helga Campagna, filed Answers to the POST and Nelcela Parties' various counterclaims on May 22 and 24, 2007, respectively. (Dkt. ## 520, 521). In addition, on May 17, 2007, the Joint Parties filed a Motion for Partial Summary Judgment on the Nelcela Parties' claims for copyright infringement, conversion, and

aiding and abetting tortious conduct.  (Dkt. ## 513, 548).  Furthermore, on June 27, 2007, the Joint Parties filed a Motion for Leave to Commence Phase II Discovery.  (Dkt. #539).

On August 21, 2007, the Court denied the Nelcela Parties' Motion for Judgment as a Matter of Law, noting that "the Court has consistently deemed the statute of limitations regarding Lexcel's claims . . . to be properly reserved for [Phase II]" (Dkt. #547, p.12), and that the issue of analytical dissection "was not presented to the Court by any party in the summary judgment papers."  (Id., p.14).  However, the Court also "agree[d] with the Parties that prior to any final determination of ownership, the Court must determine the copyrightability of the software by and through the 'analytical dissection' analysis presented in Apple Computers[,] [Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994)]" and its progeny.  (Id., p.15).  In addition, the Court granted in part the Joint Parties' Motion to Commence Phase II Discovery, directing the Parties to prepare a joint proposed case management plan "to address any remaining discovery and briefing addressing the statute of limitations and 'analytical dissection issues' relevant to the issue of ownership."  (Id., p.17).

The Parties filed separate case management plans, and on August 29, 2007, the Court directed Lexcel "to file a statement of the elements and works of the Lexcel software at issue in this litigation and alleged to have been infringed and copied by Nelcela," and then set forth a briefing schedule on the issue of analytical dissection.  (Dkt. #554).  The Court also allowed a limited period of documentary discovery on the issue of the Nelcela Parties' statute of limitations defense, to be followed by briefing on the issue.  (Id.).

On August 31, 2007, the Joint Parties filed a List of Common Features and Elements Between the Lexcel Software and the Nelcela Software.  (Dkt. #555).  Also, on September 6, 2007, the Lexcel Parties filed Answers to the Nelcela Parties' counterclaims and third party complaint.  (Dkt. ## 556-58).  The Joint Parties and the Nelcela Parties subsequently filed their respective briefs on the issues of analytical dissection and the statute of limitations.  (Dkt. ## 560, 565, 572, 575, 578, 581).  And on March 20, 2008,

the Court held oral argument on the Joint Parties' Motion for Partial Summary Judgment and the parties' briefings on the issues of the statute of limitations and analytical dissection; the parties presented expert testimony on the issue of analytical dissection. (Dkt. #595).

The Court denied without prejudice the Joint Parties' Motion for Partial Summary Judgment, to be reurged if necessary after the Court's ruling on the issue of analytical dissection. (Dkt. #595). The Court also held that there were genuine issues of material fact for the Phase II jury with respect to the Nelcela Parties' statute of limitations defense. (Id.). The Court further directed the Joint Parties and the Nelcela Parties to file proposed orders on analytical dissection. (Id.).

On March 18, 2009, the Court issued its ruling on the issue of analytical dissection, holding (1) that "no reasonable juror could not find creativity in the selection and arrangement of the Lexcel software's field names, let along the remaining allegedly similar non-literal elements of the Lexcel software, sufficient to render the compilation original enough for protection," and (2) that "the Court cannot conclude that the Lexcel source code lacks sufficient originality not to warrant protection." (Dkt. #607, pp. 24, 28). However, the Court concluded that Lexcel software should be afforded only "thin" protection, and thus "the appropriate standard under the intrinsic analysis is for the trier of fact to compare the works for virtually identical copying, . . . and thus infringement will lie only if the protectable elements differ from one another by no more than a trivial degree." (Id., pp. 29, 30). In addition, the Court concluded that "[b]ased on the evidence presented, [it was] unable to find, as a matter of law, that 'no reasonable juror could conclude' that the protected elements of the works do not differ by more than a trivial degree." (Id., p.30). Moreover, based on the jury's verdict on ownership in Phase I, and the Court's order on the issue of analytical dissection, the Court denied the Nelcela Parties' claims for copyright infringement, conversion, and aiding and abetting tortious conduct (except to the extent the claims were alleged against the POST Parties due to the

POST and Nelcela Parties' April 6, 2007 Stipulation to preserve their claims for Phase II). (Id., pp. 31-34).

On April 14, 2009, the Court held a status hearing to set a trial date on the remaining claims; trial is set to begin on August 4, 2009. (Dkt. #610). At the hearing, the Joint Parties requested leave to file a summary judgment motion on some of the Nelcela Parties' remaining claims that they believed were rendered moot by the Phase I jury verdict on the issue of ownership. (Id.). The Court granted the Joint Parties' request and stated that any motions for summary judgment must be filed no later than April 28, 2009. (Id.).

On April 28, 2009, the Joint Parties' filed a Motion for Partial Summary Judgment on all of the Nelcela Parties' remaining claims, asserting that the jury's Phase I verdict and the Court's March 17, 2009 order on the issue of analytical dissection "forecloses the Nelcela Parties' claims for relief in this lawsuit." (Dkt. #615, p.2). The Nelcela Parties responded on May 12, 2009, asserting that only some of its claims were rendered moot by the Phase I verdict and the Court's analytical dissection order. (Dkt. #621). The Nelcela Parties also brought a Cross-Motion for Partial Summary Judgment in its May 12, 2009 response, asserting that some of MTSI and the POST Parties' claims against the Nelcela Parties are also rendered moot by the Phase I verdict and the Court's analytical dissection order. (Dkt. #621, pp. 9-13). The parties' motions for partial summary judgment are now fully briefed. (Dkt. ## 625, 627, 630).

**III.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." Diaz v. Eagle Produce Ltd. Partnership, 521

F.3d 1201, 1207 (9th Cir. 2008) (citing <u>United States v. Shumway</u>, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001). The moving party must present the basis for its motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. <u>See, e.g.</u>, <u>Nissan Fire & Marine Ins. Co. v. Fritz Co.</u>, 210 F.3d 1099, 1105 (9th Cir. 2000) ("A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence.").

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>Matsushia Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>accord</u> <u>Anderson</u>, 477 U.S. at 248-50; <u>see</u> <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

## IV.    THE PARTIES' RESPECTIVE MOTIONS

The Joint Parties move for summary judgment on all of the Nelcela Parties' various claims for relief in this action – copyright infringement, conversion, misappropriation of trade secrets, declaratory judgment, unfair competition, fraud, negligent misrepresentation, defamation, injurious falsehood, intentional interference with contract, intentional interference with prospective economic advantage, aiding and

abetting copyright infringement, aiding and abetting conversion, piercing the corporate veil / alter ego, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment – arguing that as a matter of law the claims are foreclosed by the ownership determination in Phase I that Nelcela does not own the software at issue in this case." (Dkt. #615).

The Nelcela Parties "do not concede that the Phase I jury verdict was correct, nor . . . agree that this Court has properly applied the Analytical Dissection test to the Software(s) at issue in this case." (Dkt. #621, pp. 2). Nonetheless, they concede "that [due to the law of the case] *some* of the claims against *some* of the parties can be decided now by virtue of the Phase I jury verdict and this Court's Order regarding analytic dissection." (Id., pp. 2-3) (emphasis in original). Those claims are: (1) their claims against MTSI for copyright infringement, conversion, intentional interference with contractual relations, intentional interference with prospective economic advantage, misappropriation of trade secrets, and unfair competition; (2) their claims against the POST Parties for copyright infringement, misappropriation, and unfair competition; (3) their claim against "the third parties" for aiding and abetting copyright infringement; and (4) all of their claims against the Lexcel Parties except their claim for declaratory relief. (Id.).

However, the Nelcela Parties argue that its remaining claims "**must** survive summary judgment" because they "are largely unrelated to the copyright issues and are wholly unrelated to the Phase I jury verdict." (Dkt. #621, p.6) (emphasis in original). Those claims are: (1) its declaratory judgment claim against Lexcel; (2) its claims against MTSI for fraud, negligent misrepresentation, declaratory relief, and piercing the corporate veil; (3) its claims against the POST and Ebocom for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, intentional interference with contractual relations, intentional interference with prospective economic advantage, fraud, negligent misrepresentation, and declaratory relief; and (4) its claims

against the third parties for aiding and abetting conversion, defamation, and injurious falsehood. (Id.).

Further, the Nelcela Parties move for summary judgment,[2] arguing they are "entitled to summary judgment as a result of the Phase I verdict on several claims against [the Joint Parties]." (Dkt. #621, p.9). Specifically, the Nelcela Parties move for summary judgment on: (1) MTSI's claims for quiet title of copyrights, unfair competition, misappropriation, conversion, interference with existing and prospective economic relations, interference with economic relations, and punitive damages; and (2) the POST Parties' claims for declaratory relief, conversion, and their request for punitive damages. (Id.).

## A. Derivative Copyrights & The Terminal Driver System

In their motion for partial summary judgment, the Joint Parties, rather than individually moving to dismiss the Nelcela Parties' various claims against each of them, merely lump the Nelcela Parties' claims together and jointly move to dismiss them based on a general assertion that they relate to contentions about ownership of the Lexcel software. (Dkt. #615). Similarly, in their response and cross-motion, the Nelcela Parties generally surmise that a number of their claims against the various Joint Parties must survive because they relate to not only the Lexcel software at issue in this case, but to among other things the Nelcela Parties' alleged "ownership of software **other** than the

---

[2]The deadline for filing summary judgment motions prior to the Phase II trial was April 28, 2009. (Dkt. #610). The Nelcela Parties did not file their cross-motion for summary judgment until May 12, 2009. (Dkt. #621). For that reason alone, MTSI and the POST Parties' ask the Court to deny the Nelcela Parties' motion for partial summary judgment. (Dkt. #627, p.1). MTSI and the POST Parties' request is well-taken, and the Court admonishes the Nelcela Parties for attempting to bypass the Court's deadline by including its motion in its response to the Joint Parties' timely Motion for Partial Summary Judgment. Nonetheless, as the parties' motions focus on whether certain claims should be dismissed as moot in light of the Phase I jury verdict and the Court's analytical dissection order, and for the most part do not seek summary judgment due to the lack of a genuine issue of material fact, the Court will, in an abundance of caution, consider and address the Nelcela Parties' Motion.

software tried in Phase I" (Dkt. #621, p.5) (emphasis in original), which the Nelcela Parties allege includes their "Terminal Driver System" (id.) and "derivative works written and developed by [Dollarhide] during the course of his employment with [CCSL]." (Dkt. #630, p.3) (internal quotation marks omitted). In particular, the Nelcela Parties argue that "Lexcel's ownership is not inconsistent with Alec Dollarhide's ownership of derivative works . . ." (Dkt. #360, p.3).

In certain circumstances, a work that copies the expression (i.e., protectable elements) from a pre-existing work is itself entitled to copyright protection under the Copyright Act as a "derivative work." See 17 U.S.C. § 103(a); 1 NIMMER ON COPYRIGHT § 3.01 (2009) ("Section 103(a) of the Copyright Act provides that the subject matter of copyright as specified by Section 102 includes derivative works."). However, a work will only be considered a derivative work if "it has substantially copied from a prior work. . . . Put another way, a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work has been taken without the consent of a copyright proprietor of such pre-existing work." Id.; see Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1078 (9th Cir. 2000) ("Under the Copyright Act, a work is not a derivative work unless it is based upon one or more preexisting works and, in order to qualify as a preexisting work, the underlying work must be copyrightable.") (internal quotation marks omitted). Here, the Phase I jury has already determined that Lexcel owns the Merchant and Authorization Systems at issue in this case. The jury also found that Lexcel possessed a valid copyright. In addition, the Court determined that Lexcel's Merchant and Authorization Systems are copyrightable, but for reasons stated in its analytical dissection order, those systems are to be afforded only "thin" protection by the Phase II jury. (Dkt. #607, p.30). Accordingly, in order for Nelcela's software to be considered a derivative work, the Phase II jury must compare the Lexcel and Nelcela software and determine that there is virtually identical copying of the Merchant and Authorization Systems and thus that the Nelcela software constitutes an

- 14 -

infringing work.[3]  If the Phase II jury comes to the opposite conclusion and determines that the Nelcela Parties' software does not constitute an infringing work, then the Nelcela Parties' software will not be considered a derivative work for purposes of the Copyright Act.[4]

The Nelcela Parties' blanket assertion that all new elements and original contributions made to a derivative work are entitled to copyright protection is incorrect. See Dkt. #563 ¶ 4.  In <u>Sobhani v. @Radical.Media Inc.</u>, the district court addressed this exact question, remarking that "[t]he Second Circuit (in dicta) and Nimmer on Copyright appear to agree substantially with Plaintiff's [argument that he is entitled to copyright protection of any new elements in unauthorized derivative works]."  257 F. Supp. 2d 1234, 1239 (C.D. Cal. 2003) (citations omitted).  The district court, however, declined to address the viability of the plaintiff's argument and instead relied on "an important limitation suggested by both authorities and ignored entirely by Plaintiff: copyright protection does not extend 'to derivative works if the pre-existing work tends to pervade the entire derivative work.'"  <u>Id.</u>, at 1239-40 (quoting 1-3 NIMMER ON COPYRIGHT at § 3.06 (2002)).[5]  Here, as the Court stated in its March 17, 2009 analytical dissection order:

_____

[3]Alternatively, if the Court had determined that Lexcel's Merchant and Authorization Systems were subject to "broad" protection, then Lexcel would have only had to show that Nelcela's software substantially copied, rather than virtually identically copied, their Merchant and Authorization Systems.

[4]The Nelcela Parties appear to recognize this in the reply in support of their motion for partial summary judgment. (Dkt. #630, p.7).  Indeed, the Nelcela Parties conclude that "[i]f the Phase II jury finds no infringement no license from Lexcel is required."  (Id.).  However, the Nelcela Parties have also stated that they do not oppose entry of partial summary judgment on any of their claims related to copyrights. (Dkt. #621).  Thus, the Court need not speculate as to whether, absent such a concession, the Nelcela Parties could have pursued any copyright infringement claims against any of the Joint Parties if the Phase II jury returns a verdict of non-infringement.

[5]Likewise, this Court need not conclusively determine whether copyright protection may inhere in any original contributions contained in an unauthorized derivative work. Nevertheless, the Court is inclined to agree with the Third and Seventh Circuit's conclusion

Although Nelcela argues in its Response to the Joint Parties' Motion for Partial Summary Judgment, that its copyright infringement claim is still actionable because "even if the Nelcela Merchant System is an unauthorized derivative work, no precedent conveys ownership of the material contributed by Alec Dollarhide or others" (Dkt. #562, p.2), the Court is not aware of any "material contributed by Alec Dollarhide or others" in the Nelcela software that Nelcela has identified as being copied by the Joint Parties apart from what has already been found to be owned and/or copied from the Lexcel software. The ownership phase is over; Phase II is well under way. Nelcela was afforded a full and fair opportunity during Phase I to identify the material in the Nelcela software that it contends is original and was copied by the Joint Parties (Dkt. #s 323-25, 349); the Court need not consider any new arguments with respect to ownership at this late stage.

(Dkt. #607, p.32).

Nonetheless, the Nelcela Parties now argue that the Court failed to distinguish between the different software at issue in this case. (Dkt. #621, p.4 n.3). But the Nelcela Parties have never identified any new elements or original contributions that they allegedly made to the Lexcel System; and they did not raise the issue of derivative works until after the Phase I jury found that Lexcel owned the merchant and authorization systems at issue in this case (in what can only be described as an attempt to have one's cake and eat it too). In fact, the only similarity ever identified by the Nelcela Parties between their software and the POST Parties' software is one computer file – the "bnkmerch.pbl" file. (JPSOF ¶¶ 7, 8; Dkt. #83, Nelcela Counterclaim Against MTSI ¶ 17). But the "bnkmerch.pbl" file is part of both the Nelcela Merchant System and the Lexcel Merchant and Authorization Systems (Dkt. #555, p.3), and the Phase I jury found that Lexcel owns the merchant system. In addition, the only other software that the Nelcela Parties identified as at issue in this action is their Terminal Driver System. (Dkt.

_____

that no copyright obtains in any portion of an unauthorized derivative work. See Dam Things from Denmark, a/k/a Troll Company ApS, v. Russ Berrie & Co., Inc., 290 F.3d 548, 563 (3d Cir. 2002) ("[I]f the underlying work is itself protected by copyright, then [the author of the derivative work] will receive no protection at all; on the contrary, he is a copyright infringer, because in order to create his work he has copied the underlying work."); Pickett v. Prince, 207 F.3d 402 (7th Cir. 2000) ("Section 103(a) means only . . . that the right to make a derivative work does not authorize the maker to incorporate into it material that infringes someone else's copyright.").

- 16 -

#83, Nelcela's Counterclaim Against MTSI ¶ 17; Dkt. #399 ¶¶ 22, 107).[6]  However, the Nelcela Parties explicitly limited their claims relating to the Terminal Driver System to those involving a single database – "the merchant system" – which also happens to be part of the Nelcela Merchant System.  (Joint Parties' Supplemental Statement of Facts, Dkt. #626 ("JPSSOF") ¶¶ 2, 3); but again, the Phase I jury determined that Lexcel owns the merchant system.

Also, although the Nelcela Parties raised the issue of the Terminal Driver System on the first day of the Phase I jury trial (Dkt. #525), the Nelcela Parties failed to raise any issue with respect to that system, or any alleged similarities between it and any of the Joint Parties' software, in any of their three Phase I motions for summary judgment (Dkt. ## 323-25) or in their Response to the Joint Parties' Motion for Summary Judgment. (Dkt. #351).  And, by failing to identify any new elements or original contributions that they made to the Lexcel System, and by failing to identify any portions of the Terminal Driver System other than the "merchant system," the Nelcela Parties have forfeited their right to have this Court determine whether any of that software, derivative or not, and regardless of the Phase II jury verdict, is entitled to copyright protection.  See, e.g., Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment."); USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1284 (9th Cir. 1994) ("It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment.").

In sum, the Court rejects the Nelcela Parties' contention that their claims encompass allegations of ownership of software other than the software tried in Phase I. The Nelcela Parties have not identified – and failed to raise during the Phase I summary judgment proceedings – any elements or contributions that they allegedly made to the Lexcel System, or that are contained in their Terminal Driver System, apart from the

---

[6]But see Nelcela's Phase I Motion in Limine, Dkt. # 423, p.3 ("The only code that has **ever** been at issue in this litigation is the *merchant* code[.]") (former emphasis in original, latter emphasis added).

databases and code contained in the merchant and authorization systems at issue in this case.  Thus, to the extent that any of their claims are – or have ever been – based on ownership of software, derivative or otherwise, other than their merchant and authorization systems, the Nelcela Parties have waived those claims before this Court.[7] The Court will not consider any claims based on alleged ownership of software other than that tried in Phase I.

### B.   The Nelcela Parties' Claims

The Nelcela Parties seek to proceed on their claims for: (1) declaratory judgment against Lexcel; (2) fraud, negligent misrepresentation, declaratory relief, and piercing the corporate veil against MTSI; (3) breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, intentional interference with contractual relations, intentional interference with prospective economic advantage, fraud, negligent misrepresentation, and declaratory relief against POST and Ebocom; and (4) aiding and abetting conversion, defamation, and injurious falsehood against the third parties.  (Dkt. #621).

#### i. Copyright Claims

The Nelcela Parties argue that their claims for declaratory judgment against the Lexcel and the POST Parties survive to the extent that the Nelcela Parties "ask[ ] this Court . . . to declare that Nelcela owns the Terminal Driver System it copyrighted" (Dkt. #621, p.9).  In addition, the Nelcela Parties argue that their claims for conversion against

---

[7]The Nelcela and POST Parties' Stipulation to preserve for Phase II "all issues relating to ownership of POST's code and alleged infringement by POST" (Dkt. #468), does not save the Nelcela Parties' claims of ownership or infringement of software other than the merchant and authorization systems.  The Nelcela Parties have never – in Phase I or Phase II – identified any software other than that in the merchant and authorization systems that the POST Parties allegedly infringed upon.  In addition, the Nelcela Parties state that they do not oppose entry of summary judgment on any of their claims related to copyrights, presumably including those against the POST Parties.  (Dkt. #621).  As such, the stipulation does not preserve the Nelcela Parties' claims to the extent they are based on software other than merchant and authorization systems.

the POST Parties and aiding and abetting conversion against the third parties, survive to the extent that any of the Joint Parties converted or assisted to convert any of the code that Dollarhide wrote.  (Id., p.8).

The Nelcela Parties' declaratory judgment claims against Lexcel and the POST Parties are foreclosed due to the foregoing discussion – the Court has dismissed the Nelcela Parties's claims to the extent that they require determination of ownership of the Terminal Driver System or any other alleged new elements or original contributions made to the Lexcel Merchant and Authorization Systems.  That determination, however, does not similarly foreclose the Nelcela Parties' claim against MTSI for declaratory judgment to the extent that it relates to any alleged employment contracts between Dollarhide and MTSI (and/or CCSL, MTSI's successor-in-interest).

In addition, if the Phase II jury returns a verdict of noninfringement, then presumably the Nelcela Parties would have the right to possess the software at issue in this case and could seek to establish the elements of conversion (and aiding and abetting conversion).  But as the Court noted in its analytical dissection order, "conversion claims with respect to intellectual property arise from the reproduction, copying and misuse of a work. . . . [and] are clearly equivalent to [those of] a copyright claim."  Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, 2006 WL 1062070, at *4 (E.D. Cal. 2006) (internal quotation marks and citation omitted); NIMMER at § 1.01[B][1][I] ("[A] cause of action denominated by "contract" or "conversion" should be held pre-empted, to the extent that it uses labels to disguise a pure copyright claim.").  Thus, "to the extent that [the Nelcela Parties] allege[ ] the conversion of otherwise noncopyrightable intellectual property contained within [the Nelcela software], the [conversion] claim is preempted by the Copyright Act."  Id.  But see G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 904 (9th Cir. 1992) (defendant's use of intangibles contained in plaintiff's aircraft design permit constituted conversion under state law, immune from copyright preemption).  As a result, although the Court reserved judgment on the Nelcela Parties' remaining conversion claims against the POST Parties and the individual third

parties in its previous order (Dkt. #607, p.33 n.14), the Court now dismisses those claims as preempted by the Copyright Act.[8]

### ii. Breach of Contract & Fraud Claims

The Nelcela Parties argue that their claims against MTSI for fraud, negligent misrepresentation, and piercing the corporate veil / alter ego survive because they rest on facts not adjudicated in Phase I. (Dkt. #621, p.3). In addition, the Nelcela Parties argue that their claims against the POST Parties for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, intentional interference, fraud, and negligent misrepresentation survive because they "are largely unrelated to the copyright issues and are wholly unrelated to the Phase I jury verdict." (Id., p.6). For that same reason, the Nelcela Parties argue their claims against the third parties for defamation and injurious falsehood should remain alive. (Id., pp. 7-8).

The Joint Parties do not challenge the Nelcela Parties' claims against them for failure to establish a genuine issue of material fact; they merely contend that all of "the Nelcela Parties' claims [are now moot because they] depend on Nelcela's disproved claim of ownership of the software at issue in this lawsuit." (Dkt. #625, p.4). This Court, however, does not agree. In addition, to the extent that the Nelcela Parties' remaining claims do not depend on ownership of the software at issue in this case, the Joint Parties do not meet their burden on summary judgment to identify those portions of the record that demonstrate the absence of a genuine issue of material fact.[9] <u>See, e.g.</u>, <u>Nissan Fire & Marine Ins. Co.</u>, 210 F.3d at 1105 ("A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence.").

---

[8]The Court will similarly dismiss MTSI and Lexcel's claims for conversion as preempted.

[9]The Court will not consider the Joint Parties' challenges to the factual bases of the Nelcela Parties' allegations to the extent that they are raised for the first time in the Joint Parties' reply.

The Joint Parties assume that the Phase II jury will return a verdict of infringement; but "[w]hether the Nelcela software infringed the Lexcel copyright remains to be determined." (Dkt. #630, p.2). However, if the Phase II jury finds that the Nelcela Parties' software did not virtually identically copy Lexcel's Merchant and Authorization Systems, i.e., the Nelcela software only copied a quantitatively or qualitatively insignificant portion of Lexcel's Merchant and Authorization Systems, then the Nelcela software will not be found to be an infringing (or derivative) work. In that event, the Nelcela Parties could presumably argue that they validly possessed, and thus had the right to sell or license, their "enhanced" or "altered" software. In that event, the Nelcela Parties would not appear to be foreclosed from pursuing their claims relating to fraud and breach of contract.

On the other hand, if the Phase II jury finds that the Nelcela Parties' software infringes Lexcel's copyright, then the Nelcela Parties' claims relating to fraud and breach of contract are unsustainable. First, the Nelcela Parties' claims against the POST Parties for misrepresentation, and against the third parties for defamation and injurious falsehood, are based on the POST Parties' alleged false statements that Nelcela did not own the Nelcela software and that POST conspired to defraud Nelcela of ownership of its software.[10] Those statements cannot form the basis of claims for fraud or negligent misrepresentation if the Phase II jury returns a verdict of infringement.[11] See St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins., 154 Ariz. 307, 312 (1987) (negligent

---

[10]The Court is not equally convinced that the Nelcela Parties could not sustain their claims against MTSI for fraud and negligent misrepresentation despite a Phase II verdict of infringement to the extent that those claims involve MTSI's alleged knowledge of and misrepresentation of Dollarhide's alleged agreement with CCSL wherein Dollarhide would own any systems and enhancements written and developed by him during the course of his employment with CCSL.

[11]Despite the Phase I jury verdict that Lexcel owns the merchant and authorization systems, if the Phase II jury finds that the Nelcela Parties did not infringe Lexcel's copyright, then it appears that the Nelcela Parties might be able to contend that they "owned" their software.

misrepresentation claim requires proof of false representation and damages caused by that representation); Echols v. Beauty Build Homes, Inc., 132 Ariz. 498, 500 (1982) (same for fraudulent misrepresentation).  The same goes for the Nelcela Parties' claims relating to intentional interference with contractual relations and prospective economic advantage. RESTATEMENT (SECOND) OF TORTS § 771 (giving truthful information does not constitute improper interference).

In addition, the Nelcela Parties' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit / unjust enrichment are based on allegations relating to the POST Parties' use and adaptation of the Nelcela software.  And if the Nelcela Parties' are found to have virtually identically copied the Lexcel Merchant and/or Authorization System, then the Nelcela Parties had no right to sell or license an unauthorized derivative work; that right belonged only to Lexcel and its licensees.  See 17 U.S.C. §§ 106, 117.  To the extent that the Nelcela Parties contend that they would retain such a right with respect to any original contributions made to Lexcel's merchant and authorization systems, that issue has been addressed above and those claims dismissed.

In sum, the viability of the Nelcela Parties' claims relating to fraud and breach of contract depends on infringement.  If the Phase II jury determines that the Nelcela Parties' software virtually identically copied Lexcel's Merchant and Authorization Systems, then the Nelcela Parties' claims for fraud and breach of contract cannot be sustained (save the possibility, as discussed above, of the Nelcela Parties' claims against MTSI for fraud, negligent misrepresentation, and piercing the corporate veil / alter ego as they relate to the alleged Dollarhide / CCSL Agreement).  On the other hand, if the Phase II jury finds noninfringement, then the Nelcela Parties may pursue their claims for fraud and breach of contract.

### C.    MTSI & The POST Parties' Claims

The Nelcela Parties seek summary judgment on MTSI's claims for quiet title of copyrights, unfair competition, misappropriation, conversion, interference with existing

- 22 -

and prospective economic relations, interference with economic relations, and punitive damages. (Dkt. #621). The Nelcela Parties also seek summary judgment on the POST Parties' claims for declaratory relief, conversion, and their request for punitive damages. (Id.).

### i. The POST Parties' Claims

The Court dismissed with prejudice the POST Parties' claim for conversion against the Nelcela Parties on December 16, 2005. See Dkt. #310, pp. 9-10. In addition, the Court dismissed with prejudice the POST Parties' claim for declaratory judgment against the Nelcela Parties on September 30, 2006. (Dkt. #383, pp. 23-24, 31). Therefore, the Court need not revisit those claims at this time, and can only assume that none of the parties remembered those decisions or took the time to review them prior to filing their briefs.

### ii. MTSI's Claims

The Nelcela Parties argue that they are entitled to summary judgment on MTSI's claims because the Phase I jury found that Lexcel owns the software at issue in this case. In response, MTSI states that it does not oppose dismissal of its claim against the Nelcela Parties for quiet title of copyrights; it "acknowledges" that its claim "has been resolved by the Phase I jury verdict." (Dkt. #627, p.4 n.1). However, MTSI argues that its remaining claims are not similarly barred by the Phase I verdict "[b]ecause MTSI – unlike Nelcela – has Lexcel's permission to use, possess, and even prepare derivative works based on the Lexcel software." (Id., p.4).

As stated above, MTSI's claim for conversion against the Nelcela Parties is preempted by the Copyright Act. See, e.g., Meridian Project, 2006 WL 1062070, at *4 (conversion claim preempted by Copyright Act); Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001) (same); Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996) (same).

In addition, the Nelcela Parties argue for the first time in their reply brief that MTSI's claims for unfair competition, interference with existing and prospective

economic relations, and interference with economic relations are similarly preempted. (Dkt. #630, p.6). And in fact, the Court notes that the Nelcela Parties may have a point. See, e.g., RSI Corp. v. International Business Machines Corp., 2009 WL 605837, at *6 (N.D. Cal. 2009) (dismissing plaintiff's misappropriation claim as preempted); Enreach Technology, Inc. v. Embedded Internet Solutions, Inc., 403 F. Supp. 2d 968 (N.D. Cal. 2005) (dismissing plaintiff's claims for unfair competition based on its allegations of copyright infringement as preempted); Aagard v. Palomar Builder, Inc., 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (dismissing defendant's intentional interference with prospective economic advantage counterclaim as preempted); Fairway Constructors, Inc. v. Ahern, 193 Ariz. 122, 124-25 (Ariz. App. 1998) (misappropriation claim, but not properly stated unfair competition claim, preempted by federal law). However, "[courts] do not address any arguments raised for the first time in [a party's] reply brief." Reed ex rel. Reed v. Astrue, 2009 WL 1638630, at *1 n.1 (9th Cir. 2009) (citing Sanchez v. Pac. Powder Co., 147 F.3d 1097, 1100 (9th Cir. 1998)). None of the Joint Parties have had the chance to address the issue of preemption as it relates to any of the remaining state law claims. Thus, the Court will not address preemption of the remaining state law claims at this time; and as a result, absent stipulation to dismiss such claims, the next stage at which the parties may raise the issue, if warranted, is Judgement as a Matter of Law pursuant to Fed.R.Civ.P. 50.

Also, the Court does not agree with the Nelcela Parties that MTSI's claims for unfair competition, misappropriation, and intentional inference are moot because they "are based on ownership." MTSI's claims are based not merely on ownership but on its right to possess and use the Lexcel software and any derivatives thereof under the Lexcel/CCSI License and the 1995 Settlement Agreement. As a licensee, MTSI may assert claim for unfair competition. See Fairway Constructors, 193 Ariz. at 125 ("If [the plaintiff] stated a valid [unfair competition] claim regarding the [ ] design, it could prosecute that action even though it held only a non-exclusive license to use that design."). In addition, both Arizona law and the Restatement recognize that an action for

damages may be based on an interference with a mere but valid expectation of a business relationship.[12] See Bar J Bar Cattle Co., Inc. v. Pace, 158 Ariz. 481, 486 (Ariz. App. 1988) ("[T]he tort may be committed even where the plaintiff has no contractual rights but simply the prospect of a contractual relationship."); RESTATEMENT (SECOND) OF TORTS § 766B, cmt. c (1979) ("The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations[.]"). Finally, the applicability of the Nelcela Parties' statement that "[a] claim for interference with perspective [sic] economic advantage is subject to the competitor's privilege if no wrongful means were used[,]" (Dkt. #630, p.6 n.3), is dependent on whether the Phase II jury finds infringement.[13] Thus, save its conversion claim, the Court denies at this time the Nelcela Parties' motion for partial summary judgment on MTSI's remaining state law claims.

### iii. Punitive Damages

The Nelcela Parties contend that summary judgment is appropriate on MTSI's claim for punitive damages and the POST Parties' request for an award of punitive damages "because there is no evidence that the Nelcela parties acted with any malice, intent, or willful misconduct." (Dkt. #621, p.10). MTSI and the POST Parties, on the

---

[12]Although the Nelcela Parties' argument that "MTSI has not identified any contract or prospective contract with POST that MTSI was prevented from performing" may have merit, as it is unclear whether MTSI did in fact have any sort of "prospective relationship" with the POST Parties, the Nelcela Parties improperly raise their challenge to the factual basis for MTSI's claims for the first time in their reply brief. See Reed, 2009 WL 1638630 at *1 n.1.

[13]As the Court stated above in regards to the viability of the Nelcela Parties' state law claims, MTSI and the POST Parties' claims also seem to some extent dependent on whether the Phase II jury finds that the Nelcela Parties' software infringes on Lexcel's Merchant and Authorization System. To that end, the Court will direct the parties to meet and confer on the issue of whether the Phase II jury trial should be bifurcated into two parts – the first to deal with infringement and the second to deal with the state law claims – to be tried in front a single jury. The Court will also direct the parties to meet and confer on whether they will stipulate to the dismissal of any of their respective claims depending on the jury's verdict on infringement.

other hand, argue that the "evidence [in this action] is more than sufficient to permit a jury to conclude that the Nelcela Parties' actions were 'aggravated and outrageous conduct' entitling MTSI and POST to the recovery of punitive damages." (Dkt. #627, p.3).

"Punitive damages require a demonstration that the defendant had an 'evil mind' and demonstrated 'aggravated and outrageous conduct.'" Herbal Care Systems, Inc. v. Plaza, 2009 WL 692338, at *5 (D. Ariz. 2009) (quoting Linthicium v. Nationwide Life Ins. Co., 150 Ariz. 326, 331 (1986)). And "recovery of punitive damages [is] awardable only upon clear and convincing evidence of the defendant's evil mind." Linthicium, 150 Ariz. at 332.

"In determining whether a defendant acted with an evil mind, courts look, in part, at 'the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred[,] . . . [t]he duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." Thompson v. Better-Bilt Aluminum Products Co., Inc., 171 Ariz. 550, 556 (1992).

> The key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them. While the necessary "evil mind" may be inferred, it is still this "evil mind" in addition to outwardly aggravated, outrageous, malicious, or fraudulent conduct which is required for punitive damages.

Linthicium, 150 Ariz. at 331 (citation omitted); Dawson v. Withycombe, 216 Ariz. 84, 111 (Ariz. App. 2007) ("Punitive damages may be warranted upon a showing that the defendant was consciously aware of the wrongful or harmful nature of his conduct and nonetheless persisted in that conduct in deliberate contravention to the victim's rights.") (citation omitted). In addition, "[t]he intent or deliberate indifference required to justify the additional imposition of punitive damages is focused on the harm to the plaintiff. This is distinct from the intent required to establish many intentional torts." Dawson, 216

Ariz. at 84; Rawlings v. Apodaca, 151 Ariz. 149, 162 (requiring "[s]omething more than the mere commission of a tort" for punitive damages).

The Nelcela Parties are incorrect to the extent they contend BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), stands for the proposition that the only way MTSI or the POST Parties may pursue punitive damages is by "showing that the Nelcela parties caused physical harm (opposed to economic harm), disregarded the health or safety of others, targeted a person/entity with financial vulnerability, or repeated harm toward MTSI (or others)."  (Dkt. #621, p.10).  These enumerated factors are merely taken from a nonexhaustive list of "aggravating" factors that the BMW court considered in determining whether an award of punitive damages violated the due process clause.  517 U.S. at 575.

More applicable here is Herbal Care, where the district court held that punitive damages were unwarranted under Arizona law because although the plaintiff's "evidence tend[ed] to support the theory that [the defendant] drew money away from [the plaintiff] and directed it [elsewhere] for his own material benefit[,] . . . . [it] only began to make a showing that the harm [suffered by the plaintiff] was the result of intentional malice, trickery, or deceit."  2009 WL 692338, at *5.  And in Linthicum, the Arizona Supreme Court held that the defendant's alleged acts of misconduct were insufficient to warrant punitive damages because the plaintiff failed to show "that there was a deliberate ignoring of [the plaintiff's] rights and needs."  150 Ariz. at 333.

Likewise, here, the POST Parties fail to establish that the Nelcela Parties intentionally ignored their rights or persisted in conduct in deliberate contravention to their rights.  The POST Parties contend only that the Nelcela Parties "deceived POST into paying them [money] to purchase software they did not own," "tricked [them] into converting [their] credit card processing operations to the so-called Nelcela software[,]" and then "held POST hostage and threatened to bring POST's business operations to [a] stop – an action that was thwarted only by a temporary restraining order[.]"  (Dkt. #627, p.3).  But "punitive damages are not recoverable in every fraud case, even though fraud is

- 27 -

an intentional tort." <u>Rawlings</u>, 151 Ariz. at 162 n.8; <u>Hunter Contracting Co. v. Sanner</u>

<u>Contracting Co.</u>, 16 Ariz. App. 239, 246 (1972) (simple fraud without evidence of

aggravated, wanton, reckless or malicious intentional wrongdoing insufficient for

punitive damages); <u>see also</u> <u>Babbitt v. Blauert Const., Inc.</u>, 2008 WL 2231507 at *9

(Ariz. App. 2008) (same for bad faith claim).  The Nelcela Parties' alleged

misrepresentations do not appear to rise above simple fraud, and their "threat" to cut off

POST's access to the software occurred only after the POST Parties stopped paying the

Nelcela Parties pursuant to their alleged agreement.  In addition, the temporary restraining

order merely prohibited the Nelcela Parties from unilaterally terminating their agreement

with the POST Parties until the POST Parties could find a replacement system to process

its credit card transactions.  (MPSOF ¶ 34, Exh. 30).  Although the Nelcela Parties'

alleged acts of misconduct may be sufficient to establish that bad faith or fraudulent

misrepresentation, the Court simply cannot conclude that a reasonable juror could find by

clear and convincing evidence that the Nelcela Parties' motives were so improper or so

outrageous or malicious as to constitute an "evil mind."  Thus, the Court grants the

Nelcela Parties' motion for summary judgment on the POST Parties' request for punitive

damages.

However, the same can not be said in regards to MTSI's claim for punitive

damages.  The Nelcela Parties' alleged acts of misconduct toward MTSI could be

sufficient to indicate an "evil motive" on the Nelcela Parties' part: Lexcel licensed its

software (at issue here, the Merchant and Authorization Systems) to CCSL, but retained

ownership over the software and any derivative works; CCSL hired Dollarhide to assist

Lexcel in creating and modifying the software; the software's license was eventually

conveyed to MTSI as CCSL/CCSI's successor-in-interest; Dollarhide became MTSI's

computer programmer; Dollarhide began representing that the software used by MTSI

was owned not by Lexcel but by him and the other Nelcela Parties; Dollarhide and the

other Nelcela Parties allegedly fabricated an agreement between CCSI and himself that

purports to provide Dollarhide with ownership of any derivative works of the Lexcel

software; Dollarhide and the other Nelcela Parties allegedly obtained money from MTSI by representing that they owned the software; the Nelcela Parties entered into a contract with the POST Parties to sell the software; and the Phase I jury found that Lexcel owned the merchant and authorization systems at issue in this case. Therefore, if MTSI can prove by clear and convincing evidence that Dollarhide knew of the terms of the Lexcel/CCSL license and/or the 1995 Settlement Agreement and knew that the Nelcela software was derivative of Lexcel's Merchant and Authorization Systems (which requires infringement), then it appears that a reasonable inference may be drawn that the Nelcela Parties were "consciously aware of the wrongful or harmful nature of [their] conduct and nonetheless persisted in that conduct in deliberate contravention to [MTSI's] right[ ]" to possess and use the Lexcel software.

In reviewing the Nelcela Parties' motion for summary judgment, the Court must draw all reasonable inferences in the light most favorable to MTSI, the nonmoving party. In doing so, the Court concludes that a reasonable juror could find by clear and convincing evidence that the Nelcela Parties' motives in claiming ownership of the software used by MTSI were so improper or "oppressive, outrageous or intolerable" as to constitute an "evil mind." As such, the Court denies summary judgment on MTSI's claim for punitive damages.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part the Joint Parties' Motion for Partial Summary Judgment. (Dkt. #615).

The Court enters summary judgment in favor of Lexcel on the Nelcela Parties' claims for fraud (Count 1), conversion (Count 2), aiding and abetting tortious conduct (Count 3), copyright infringement (Count 4), misappropriation of trade secrets (Count 5), and unfair competition (Count 6). Summary judgment is also entered in favor of Lexcel on the Nelcela Parties' claim for declaratory relief (Count 7) to the extent that it relates to the merchant and authorization systems at issue in this case.

The Court enters summary judgment in favor of MTSI on the Nelcela Parties' claims for copyright infringement (Count 1), conversion (Count 2), intentional interference with contract (Count 3), intentional interference with prospective economic relations (Count 4), misappropriation of trade secrets (Count 5), and unfair competition (Count 6).

The Court enters summary judgment in favor of POST and Ebocom and against the Nelcela Parties on the Nelcela Parties' claims for copyright infringement (Count 4), conversion (Count 5), misappropriation of trade secrets (Count 8), and unfair competition (Count 9).

The Court enters summary judgment in favor of Third Party Defendants Mary Gerdts, Douglas McKinney, Gene Clothier, Toni Clothier, Carl Kubitz, and Flora Kubitz, on the Nelcela Parties' claims for aiding and abetting copyright infringement (Count 1). Summary judgment is also entered in favor of Mary Gerdts, Douglas McKinney, Gene and Toni Clothier, and Carl and Flora Kubitz, on the Nelcela Parties' claim for aiding and abetting conversion (Count 2), to the extent that it relates to the merchant and authorization systems at issue in this case. In addition, as discussed in the above order, the Nelcela Parties' claims are dismissed to the extent they relate to any alleged derivative (or other) works.

**IT IS FURTHER ORDERED** granting in part and denying in part the Nelcela Parties' Cross-Motion for Partial Summary Judgment. (Dkt. #621, pp. 9-13).

The Court already dismissed with prejudice the POST Parties' claims for conversion (Count 3) and declaratory judgment (Count 1). (Dkt. ## 310, 383). Summary judgment is granted in favor of the Nelcela Parties on the POST Parties' claims to the extent they seek punitive damages. In addition, MTSI's claim against the Nelcela Parties for quiet title of copyrights (Count 2) is dismissed as moot pursuant to the Phase I jury verdict, and summary judgment is granted on MTSI's claim against the Nelcela Parties for conversion (Count 7), which is preempted by the Copyright Act. Further, to the extent that MTSI and the POST Parties' claims relate to any derivative (or other) work(s) apart

from Lexcel's Merchant and Authorization Systems, those claims are dismissed.  MTSI and the POST Parties' claims must be limited to the Nelcela Parties' alleged infringement of Lexcel's Merchant and Authorization Systems.

**IT IS FURTHER ORDERED** that the parties' remaining claims[14] are:

**LEXCEL**

(1) Lexcel's claim against the Nelcela Parties for copyright infringement (Count 1);

(2) Lexcel's claim against the Nelcela Parties for misappropriation of trade secrets (Count 2);

(3) Lexcel's claim against the Nelcela Parties for unfair competition (Count 3); and

(4) Lexcel's claim against the Nelcela Parties for breach of contract (Count 4).

**MTSI**

(1) MTSI's claim against the Nelcela Parties for breach of written contract (Count 1);

(2) MTSI's claim against the Nelcela Parties for unfair competition (Count 3);

(3) MTSI's claim against the Nelcela Parties for misappropriation of trade secrets (Count 4);

(4) MTSI's claim against the Nelcela Parties for breach of good faith and fair dealing (Count 5);

(5) MTSI's claim against the Nelcela Parties for breach of employee's duty of loyalty (Count 6);

(6) MTSI's claims against the Nelcela Parties for interference with existing and prospective economic relations (Count 8);

---

[14]In addition to those claims already addressed, MTSI's claims against the Nelcela Parties for fraud (Count 10), RICO (Count 11), Open Account (Count 14), Account Stated (Count 15), and Quantum Meruit (Count 16), were dismissed on August 14, 2003 (and again on December 16, 2005).  (Dkt. ## 36, 310).  Also, MTSI's claim against the POST Parties for declaratory relief (Count Seventeen) was dismissed on February 15, 2006.  (Dkt. #322).

(7) MTSI's claims against the Nelcela Parties for interference with economic relations (Count 9);

(8) MTSI's claim against the Nelcela Parties for punitive damages (Count 12); and

(9) MTSI's claim against the Nelcela Parties for unjust enrichment (Count 13).

**The POST Parties**

(1) The POST Parties' claim against the Nelcela Parties for breach of contract (Count 2);

(2) The POST Parties' claim against the Nelcela Parties for unjust enrichment (Count 4);

(4) The POST Parties' claim against the Nelcela Parties for fraud (Count 5);

(5) The POST Parties' claim against the Nelcela Parties for consumer fraud (Count 6);

(6) The POST Parties' claim against the Nelcela Parties for negligent misrepresentation (Count 7);

(7) The POST Parties' claim against the Nelcela Parties for breach of contract (Count 9);

(8) The POST Parties' claim against the Nelcela Parties for breach of express warranty (Count 10);

(9) The POST Parties' claim against the Nelcela Parties for breach of implied warranty (Count 11); and

(10) The POST Parties' claim against the Nelcela Parties for negligence (Count 12).

**The Nelcela Parties**

(1) The Nelcela Parties' claim against MTSI for fraud (Count 7);

(2) The Nelcela Parties' claim against MTSI for negligent misrepresentation (Count 8);

(3) The Nelcela Parties' claim against MTSI for declaratory relief (Count 9);

1    (4) The Nelcela Parties' claim against MTSI for piercing the corporate veil / alter
2  ego (Count 10);

3    (5) The Nelcela Parties' claim against POST and Ebocom for breach of contract
4  (Count 1);

5    (6) The Nelcela Parties' claim against POST and Ebocom for breach of the
6  covenant of good faith and fair dealing (Count 2);

7    (7) The Nelcela Parties' claim against POST and Ebocom for unjust enrichment
8  (Count 3);

9    (8) The Nelcela Parties' claim against POST and Ebocom for intentional
10  interference with contractual relations (Count 6);

11    (9) The Nelcela Parties' claim against POST and Ebocom for intentional
12  interference with prospective economic advantage (Count 7);

13    (10) The Nelcela Parties' claim against POST and Ebocom for fraud (Count 10);

14    (11) The Nelcela Parties' claim against POST and Ebocom for negligent
15  misrepresentation (Count 11);

16    (12) The Nelcela Parties' claim against the Individual Third Party Defendants for
17  defamation (Count 3); and

18    (13) The Nelcela Parties' claim against the Individual Third Party Defendants for
19  injurious falsehood (Count 4).

20    The parties may proceed on the aforementioned claims only as reflected in the
21  instant order.

22    **IT IS FURTHER ORDERED** directing the parties to meet and confer in person
23  to determine whether any of their remaining state law claims are preempted by the
24  Copyright Act.  The parties must address the result of their meet and confer in the Joint
25  Proposed Pretrial Order.  In the event the parties determine that any of their claims are
26  subject to preemption, they must immediately file a Stipulation for Dismissal of Certain
27  Claims.

28

1     **IT IS FURTHER ORDERED** directing the parties to meet and confer in person
2 to discuss whether there are any reasons why the Court should not bifurcate the Phase II
3 trial to have the jury resolve the issue of infringement prior to addressing the remaining
4 state law claims.  The parties must also discuss the possibility of a entering into a
5 conditional stipulation to resolve any remaining claims that are dependent on the jury's
6 infringement verdict.  These issues must be addressed in the Joint Proposed Final Pretrial
7 Order.

8     **IT IS FURTHER ORDERED** extending the deadlines set forth in the Court's
9 Order Setting Final Pretrial Conference (Dkt. #611) and June 8, 2009 Text Order (Dkt.
10 #635) as follows:  The Parties' Joint Proposed Pretrial Order must be filed no later than
11 July 1, 2009; all motions in limine must be filed no later than July 1, 2009; and responses
12 to motions in limine must be filed no later than July 6, 2009.  No further extensions will
13 be granted.

14     **IT IS FURTHER ORDERED** referring this matter to U.S. Magistrate Judge
15 Edward C. Voss for the purpose of conducting a final settlement conference, to occur
16 within the next two weeks.  The parties are directed to immediately contact Judge Voss's
17 chambers to schedule the conference.

18     DATED this 25th day of June, 2009.

19

20

21 _____
22 Mary H. Murguia
    United States District Judge

23

24

25

26

27

28