**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MERCHANT TRANSACTION SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NELCELA, INC., an Arizona Corporation; LEN CAMPAGNA, an Arizona resident; ALEC DOLLARHIDE, an Arizona resident; EBOCOM, INC., a Delaware Corporation; POST INTEGRATIONS, INC., an Illinois Corporation, <br><br> Defendants. <br> _____ <br> And Related Counterclaims, Cross-Claims, and Third-Party Claims. <br> _____ | Case No. CV 02-1954-PHX-MHM <br><br> **ORDER** |

Currently pending before the Court is the Lexcel Parties' (Lexcel, Inc., Lexcel Solutions, Inc., Carl Kubitz, and Flora Kubitz), the POST Parties' (POST Integrations, Inc., Ebocom, Inc., Mary Gerdts, and Douglas McKinney), and MTSI Parties' (Merchant Transaction Systems, Inc., Gene Clothier, and Tone Clothier) (collectively, the "Joint Parties") Motion to Exclude "Nelcela Authorization System" Source Code Not Timely Produced. (Dkt. #649). Also pending are the Nelcela Parties' (Nelcela, Inc., Len Campagna, and Alec Dollarhide) Motion in Limine To Exclude Evidence of Copyright

Ownership By MTSI (Dkt. #645) and MTSI's Motion for Reconsideration of Part of The Court's Order of June 25, 2009 (Dkt. #662). The Court heard oral argument on these motions at the Final Pretrial Conference on July 15, 2009, at which time the Court granted the motion for reconsideration and directed the parties to file supplemental briefing on the motions in limine. (Dkt. #s 676, 682). The instant order explains the Court's reasons for granting MTSI's motion for reconsideration and rules on the parties' remaining motions in limine.

## I.     MTSI's MOTION FOR RECONSIDERATION

On July 8, 2009, MTSI moved the Court pursuant to LRCiv 7.2(g) to reconsider the part of its June 25, 2009 order dismissing MTSI's claim for conversion against the Nelcela Parties as preempted by the Copyright Act. (Dkt. #662, pp. 1-2). Specifically, MTSI asserts that it did not have a chance to brief the issue of preemption and contends that although the Copyright Act has broad preemptive powers, a state law claim such as conversion is not preempted if it contains elements in addition to the improper reproduction, performance, distribution, or display of the copyrighted or copyrightable works that are the exclusive domain of the Copyright Act. (Id., p.2). In other words, "[i]f an extra element changes the nature of the state law claim so that it is qualitatively different from a copyright infringement claim, the state-law claim is not preempted." (Id.). To that end, MTSI argues that its conversion claim is not preempted because it contains two "extra" elements: intentional unlawful possession of the property of another and the conversion of that property to one's own use, i.e. unlawful benefit to the Nelcela Parties. (Id., p.5)

The Nelcela Parties respond that MTSI's conversion claim does not in fact contain an "extra element" that prevents it from being preempted by the Copyright Act. (Dkt. #670). The Nelcela Parties contend that Alec Dollarhide was in lawful possession of the

MTSI software because he was employed by MTSI (id., p.4),[1] and argue that if intentional and wrongful possession of the property of another supplied the necessary extra element, then that would "prevent preemption of any conversion claim under Arizona law" (id., pp. 4-5).

First, the Court notes that MTSI is correct; the Nelcela Parties inappropriately raised the issue of preemption of MTSI's claims for the first time in their reply brief. As such, the Court should not have addressed the issue (as it did with the remaining issues of preemption);[2] but did so in an effort to streamline the remaining issues for the Phase II trial and because the Joint Parties had previously raised the issue of preemption with respect to the conversion in its August 22, 2007 Motion for Partial Summary Judgment (Dkt. #548).

Second, the parties do not dispute that a state law claim is not preempted by the Copyright Act "if there is an 'extra element' that is required in place of or in addition to the acts of reproduction, performance, distribution, or display in order to constitute a state-law cause of action, and the 'extra element' required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim. . . ." Firoozye v. Earthlink Network, 153 F.Supp. 2d 1115, 1125 (N.D. Cal. 2001) (citations omitted); see also Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008).

Here, MTSI's claim for conversion involves the element of the wrongful taking, i.e., theft, of their computer software. Although MTSI's claims do not involve tangible property, the element of theft is not analogous to unauthorized reproduction or

---

[1]That, however, is a question of fact; it does not establish that MTSI's conversion claim is preempted as a matter of law.

[2]See, e.g., Reed ex rel. Reed v. Astrue, 2009 WL 1638630, at * 1 n.1 (9th Cir. 2009) ("[Courts] do not address any arguments raised for the first time in [a party's] reply brief.") (citing Sanchez v. Pac. Powder Co., 147 F.3d 1097, 1100 (9th Cir. 1998)); Coos County v. Kempthorne, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

distribution. But see Firoozye, 153 F.Supp. 2d at 1130 ("[W]hile a claim for conversion typically involves tangible property and thus may be immune from preemption, where a plaintiff is only seeking damages from a defendant's reproduction of a work – and not the actual return of a physical piece of property – the claim is preempted."). In Firoozye, the defendants were legally in possession of the copyrighted material. 153 F.Supp. 2d at 1130. But here, MTSI's conversion claim "requires [MTSI] to demonstrate that [the Nelcela Parties] wrongfully obtained possession over a specific piece of property," i.e., the MTSI software. Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, 2006 WL 1062070, at *4 (E.D. Cal. 2006). In addition, damages for conversion include not only "the value of the property taken, but also damage suffered because of the wrongful detention or deprivation of the property, such as damages for loss of use." Collins v. First Financial Services, Inc., 168 Ariz. 484, 486 (App. 1991). And the damages sought by MTSI extend beyond the Nelcela Parties' alleged unlawful reproduction of their software. See G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 907 n.15 (9th Cir. 1992) (conversion claim based on deprivation of plaintiff's property right was not preempted because "[t]he property right is in the use of the [property], not in the physical possession of the [property]"). MTSI's conversion claim thus contains the extra element necessary to save it from preemption;[3] and the Court will grant MTSI's Motion for Partial Reconsideration and reinstate its state law claim against the Nelcela Parties for conversion (Count 7).

## II.    NELCELA'S MOTION IN LIMINE

On July 1, 2009, the Nelcela Parties moved to exclude evidence of copyright ownership by MTSI. (Dkt. #645). The Nelcela Parties' object to one of MTSI's disputed issues of fact in the parties' joint proposed pretrial order: "If Nelcela is found not to have

---

[3]This does not mean, however, that no conversion claim in Arizona is preempted by the Copyright Act. For example, the Nelcela Parties' conversion claims remain preempted, as discussed in the Court's March 17, 2009 order, as they do not involve the element of unlawful taking. (Dkt. #607, p.33).

infringed the Lexcel 1994/95 software, then [the question is] whether Nelcela infringed the MTSI software." (Dkt. #645, p.1). The Nelcela Parties contend that "any copyright claim by MTSI and any evidence related to infringement of any MTSI copyright must be excluded as immaterial." (Id., p.2). MTSI, however, responds that it is not seeking to pursue a copyright infringement claim in this action.[4] (Dkt. #653, p.1). Nonetheless, MTSI argues that because the Lexcel Parties own both the Lexcel software and the MTSI software (a derivative work), and the Nelcela Parties are not permitted to infringe either one, "if the jury finds that Nelcela did not infringe the 'Lexcel Software,' it must also consider whether Nelcela infringed the 'MTSI Software' owned by Lexcel too." (Id., p.2).

First, based on the Court's review of the parties' supplemental briefing on this issue (Dkt. #s 677, 680), it appears undisputed that "a plaintiff may bring a suit for unauthorized distribution of an unregistered derivative work as long as the suit is based on elements 'borrowed' from a registered underlying work and not on elements original to the derivative work." Johnson v. Gordon, 409 F.3d 12, 20 (1st Cir. 2005); see also Dalton Ross Homes, Inc. v. Williams, 2007 WL 2461892, at *3 (D. Ariz. 2007) ("[C]opying an unregistered derivative may give rise to liability based upon copyright registration of the underlying original work contained in the derivative."); 2-7 NIMMER ON COPYRIGHT § 7.16[B][2][b] at 7-174.1. "Put another way, elements distinct to an unregistered work cannot draw protection from a registered work. . . ." Id. (citing 2-7 NIMMER at § 7.16[B][2][b]). Thus, the MTSI software may serve as a basis for the Lexcel Parties' infringement claim only to the extent that the MTSI software contains the same identified, protectable elements as the Lexcel software. The Lexcel Parties may not, on the other hand, assert their infringement claims based on any elements unique to the

---

[4]The Nelcela Parties' motion in limine is thus moot as styled; but beyond the title, the substance of the motion is to prevent the Lexcel Parties from asserting copyright infringement of the MTSI software, not to exclude evidence of copyright ownership by MTSI.

MTSI software, such as the files identified by the Joint Parties in their List of Common Features and Elements.[5]  (Dkt. #555 §B(10)).

However, the Court is skeptical of the Joint Parties' apparent contention that the Phase II jury could find that the Nelcela Parties did not infringe the Lexcel software, but did infringe the MTSI software.  As stated above, the Lexcel Parties may maintain an action for copyright infringement based on the MTSI software, an unregistered derivative work, only to the extent the MTSI software contains protectable elements derived from the pre-existing, copyrighted Lexcel software.  Thus, because any infringement must be based on copying of the protected elements common to both the Lexcel and MTSI software, the Court fails to see at this time how the Phase II jury could find copying of the MTSI software but not the Lexcel software.

Nonetheless, the specific question before the Court is whether the Lexcel Parties may maintain an action for infringement of the derivative MTSI software in addition to the original Lexcel software.  As stated above, the answer is yes: the Copyright Act protects against "unauthorized copying or other infringing use of the underlying work *or any part of that work contained in the derivative product* so long as the underlying work itself remains copyrighted."  Russell v. Price, 612 F.2d 1123, 1128 (9th Cir. 1979) (emphasis added); see also Montgomery v. Noga, 168 F.3d 1282, 1292 (11th Cir. 1999) (where the evidence at trial showed that an unregistered derivative of the plaintiff's copyrighted work "incorporated over seventy percent of the original source code from the registered work," the defendants, by downloading and incorporating the later work as a utility on its product, "infringed [plaintiff's] registered copyright in the original work").

_____

[5]Not to mention the fact that the Court explicitly declined to conduct analytic dissection of those elements in its March 17, 2009 order on analytical dissection, stating "that as the only issue presently before the Court is whether Nelcela copied protected elements of the Lexcel software, the Joint Parties' reference to various sections of the MTSI source code is inapposite."  (Dkt. #607, p.16 n.10).  To the extent the Joint Parties now challenge that determination, it is long past the time to request reconsideration and ask the Court to conduct analytic dissection of the MTSI code.

Thus, the Court will deny the Nelcela Parties' motion in limine as reflected in this order. However, in an abundance of caution, the Court will reiterate that "in order to successfully assert an infringement claim based on the unregistered [MTSI software], [the Lexcel Parties] must show that in copying the [MTSI software], [the Nelcela Parties] also copied protectable elements of the registered [Lexcel software]." <u>Dalton Ross</u>, 2007 WL 2461892, at *3.

## III.    THE JOINT PARTIES' MOTION IN LIMINE

On June 18, 2009, the day before the parties' deadline to exchange copies of trial exhibits for the Phase II trial, Mr. Harris, counsel for the Nelcela Parties, gave the Joint Parties written copies of a computer file(s) comprised of approximately two hundred pages of source code, which allegedly belong to the Nelcela Authorization System. (Dkt. #649, p.2; Dkt. #682, p.59). These documents, marked as Trial Exhibits 1006 and 1007 in the parties' Joint Proposed Pretrial Order, were not disclosed by the Nelcela Parties prior to this time. (Id.; Dkt. #661, p.3). As a result, the Joint Parties filed a motion in limine to exclude Trial Exhibits 1006 and 1007 pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, arguing that the Nelcela Parties' failed to comply with their disclosure obligations under Rules 26(a)(1), 26(e)(1)(A), and 34. (Dkt. #649). In response, the Nelcela Parties state that "[p]rior to the Phase I trial Nelcela believed that the parties' [ ] Authorization System(s) were not at issue in this litigation" (Dkt. #661, p.2); contend that "no party ever asked for the Nelcela Authorization System after the Phase I trial" (id., p.5); complain that "Lexcel never provided any independent 'Authorization System,' nor did any other party" (id., p.3); and assert that "Nelcela would suffer great prejudice" (id., p.6) if the Court were to exclude Trial Exhibits 1006 and 1007 because "[i]n order for Nelcela to put on a proper defense, . . . [the Nelcela Parties] must be permitted to show the jury the entirety of an Authorization System to show the changes are not trivial" (id., p.5).

Federal Rule of Civil Procedure 26(a) imposes an automatic initial disclosure requirement on each party to a lawsuit to produce, among other things, "a copy – or a

description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party . . . may use to support its claims or defenses. . . ." Fed.R.Civ.P. 26(a)(1). In addition, Rule 26(e) imposes a supplemental disclosure requirement:

> A party . . . must supplement or correct its [initial] disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed.R.Civ.P. 26(e)(1). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Specifically, Rule 37(c)(1) provides that "[i]f a party fails to produce information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1); see Dickenson v. Cardia and Thoracic Surgery of Eastern Tenn., P.C., 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."). The burden of proving "substantial justification" or "harmlessness" is on the party that failed to comply with its disclosure obligations under Rule 26(a) or (e). Yeti by Molly, 259 F.3d at 1106.

## A. The "Software" At Issue

The Nelcela Parties contend that they did not have an obligation to disclose the entirety of the Nelcela Authorization System prior to the Phase I trial because they did not believe it was at issue prior to the Phase I trial. The Court, however, disagrees with that contention.

In its original complaint, MTSI asserts claims against the Nelcela Parties for, among other things, quiet title of copyrights in "the software (hereinafter 'the software')" developed by Alec Dollarhide during his employment with Credit Card Services, Ltd.,

Credit Card Services, Inc., and MTSI. (Dkt. #1, ¶¶ 21-23). The Nelcela Parties counterclaimed against MTSI for, among other things, copyright infringement, alleging that although "Nelcela and Dollarhide believe that MTSI is claiming ownership of the copyrighted 'Merchant System'" (Dkt. #83, ¶ 23), "Alec Dollarhide (and others) authored and developed the software that is at issue here, and regardless of which software MTSI is now claiming ownership, the software was initially owned solely by Alec Dollarhide." (Dkt. #83, ¶50). Thus, despite MTSI's failure to more specifically identify in their complaint the software at issue, the Nelcela Parties recognized that MTSI's claims might involve software allegedly developed by Mr. Dollarhide other than the Merchant System, allegedly including the Authorization System. That in an of itself was sufficient to raise the Nelcela Parties' Rule 26(a)(1) obligation to disclose, "without awaiting discovery," at the very least a description of the Nelcela Parties' Authorization System and its location.[6] Fed.R.Civ.P. 26(a)(1).

However, the Court is aware that "[p]arties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." Sagan v. Apple Computer, Inc., 874 F.Supp. 1072, 1077 (C.D. Cal. 1994). And based on the lack of specificity in MTSI's complaint and the representations made by the parties during the Court's March 31 and June 17, 2005 hearings, the Court does not necessarily doubt that the Nelcela Parties proceeded through Phase I discovery under the impression that the only software at issue in the claims between MTSI, the POST Parties, and the Nelcela Parties was the parties' respective merchant systems.

For example, at the March 31, 2005 status hearing, Mr. Steimel, counsel for MTSI, asserted that MTSI had produced a "Merchant Suites's source code." (Dkt. #126, p.13). But despite the fact that the case was almost two years old by that time, neither Mr.

---

[6]The Court is unable to locate the Nelcela Parties' initial disclosure statement; it does not appear to have been submitted to the Court. As such, the Court may not speculate as to whether the Nelcela Parties failed to comply with their initial disclosure obligations in response to MTSI's complaint.

Steimel nor Mr. Firestone, counsel for the Nelcela Parties, apparently knew what software or systems were contained in that code. (Id., p.19).

Mr. McKirgan, counsel for the POST Parties, explained that he was unable to determine what software was at issue because the Nelcela Parties had not produced their software in electronic format, and as a result the POST Parties' expert could not compare the parties' software to determine whether, and to what extent, anything had been copied. (Id., p.20). Although Mr. Firestone agreed that "it's hard to really hone in on what's going to be at issue until the parties have had the opportunity to have their experts make these comparisons of these *various source codes* that are in the possession of the different parties" (id., p.37) (emphasis added), he then stated that it would be "preposterous" for the Nelcela Parties to have to produce the "nine or twelve copyrighted pieces of software that [they] ha[ve] copyrighted," including an authorization source code,[7] when only the merchant system was at issue (id., pp. 38-39). Mr. Steimel, however, expressed hesitation with that contention, stating that he wanted the Nelcela Parties to determine what software or systems were in MTSI's disclosed Merchant Suites source code and then disclose any source code possessed by the Nelcela Parties that related to MTSI's source code. (Id., p.45). Mr. Firestone agreed to that request, but only if MTSI was required to do same, i.e., take the Nelcela Merchant System source code and then have its experts determine whether there is additional source code that MTSI wants the Nelcela Parties to produce. (Id., p.49). Mr. Steimel did not object, and the Court imposed those obligations on the parties.[8] (Id.).

_____

[7]Based on the Court's review of the docket, this is the first time any party referred to an "authorization source code."

[8]With the benefit of hindsight, the Court recognizes that it may have been preferable simply to direct the Nelcela Parties to disclose, pursuant to a protective order, all software that the Nelcela Parties' alleged to have independently created during the time in question, i.e., during Alec Dollarhide's relationship with CCSL, CCSI, and MTSI. The parties' experts then would have been able to match any similarities in the parties' respective software and conclusively determine what software was at issue in this case. Unfortunately, none of the

MTSI disclosed additional source code to the Nelcela Parties on May 12, 2005. (Dkt. #181, p.9). And at a June 17, 2005 hearing, Mr. McKinnon, counsel for MTSI,[9] explained that MTSI's experts had recently discovered that the source code originally produced by MTSI, which Mr. Dollarhide had provided to MTSI, was not a complete verison of the MTSI source code. (Dkt. #181, pp. 10-11). After further discussion, the Court noted that "[i]t seems quite clear . . . that the parties have been playing games with production of the source code in the state litigation and here." (Dkt. #181, p.23). Thus, the Court directed "[e]very party and Lexcel [to] produce their source code in its entirety, in a . . . machine-readable format."[10] (Id., pp. 31-38).

In sum, while counsel for MTSI and the POST Parties sometimes indicated that systems other than the merchant system may be at issue, they did not expressly contend that Nelcela Parties' belief that only the merchant system was at issue was mistaken. As of June 2005, neither MTSI, the POST Parties, nor the Nelcela Parties had conducted the discovery necessary to determine exactly what software was at issue, other than the parties' merchant systems. And while nothing at those hearings indicates exactly what systems are contained in either version of the MTSI software, after reviewing the parties' Phase I expert reports, it appears that neither MTSI nor the POST Parties' experts referred to any sort of authorization system within the MTSI software. (Dkt. #337, Exhs. 14, 16).

---

parties clearly raised this option to the Court.

[9]Mr. Steimel withdrew as counsel for MTSI on May 22, 2006. (Dkt. #319).

[10]The parties did not appear to be discussing the authorization system source code at this hearing. In reference to the software at issue in this discussion, Mr. McKinnon stated that "the copyrighted versions that were produced [we]re the first 35 pages and the last 35 pages out of something that is almost 500 pages long"; and Ms. Manolio responded that the Nelcela Parties "have produced 500 pages, so they don't just have 35 pages at the beginning and 35 pages at the end. (Dkt. #181, p.32). The parties do not dispute that the Nelcela Authorization source code filed with the U.S. Copyright Office comprised only 18 pages of source code.

As such, it is difficult to fault the Nelcela Parties for believing at that time that only their merchant system was at issue.

But on June 13, 2005, the Lexcel Parties moved to intervene. (Dkt. #169). The Court granted the Lexcel Parties' request and permitted them to file a complaint in intervention. (Dkt. #212). The Lexcel Parties asserted claims against the Nelcela Parties for, among other things, copyright infringement of Lexcel's Merchant *and Authorization* Systems. (Dkt. #277, ¶11, 12, 21, 37, 38). In addition, the Nelcela Parties subsequently asserted a counterclaim against the Lexcel Parties for copyright infringement, stating that "Dollarhide (and others) authored and developed the software that is at issue here, and regardless of which software Lexcel is claiming ownership, the software is owned solely by Nelcela." (Dkt. #399, ¶ 81). Based on that statement, it appears the Nelcela Parties were well aware that the Lexcel Parties were asserting infringement of not only their merchant system, but other systems as well, including their authorization system. The Lexcel Parties' intervening complaint was sufficient to place the Nelcela Parties on notice that the litigation was no longer restricted, to the extent it ever was, to the parties' merchant systems. Therefore, the Nelcela Parties had an obligation under Rule 26(e) at that time to supplement their disclosures and provide the Lexcel Parties with a description of their authorization system.[11]

Then, on September 16, 2005, the Lexcel Parties served their first set of non-uniform interrogatories and request for production of documents on the Nelcela Parties, asking them to list and produce copies of their copyrighted software (Dkt. #253; Dkt. #674, Exh. 5); to which the Nelcela Parties responded that they "ha[d] already produced all software at issue in this case and that all information submitted to the copyright office

---

[11]There is, of course, an exception. Rule 26(e)(1)'s disclosure obligation is discharged if the information has already been disclosed to the other parties during the discovery process or in writing. Fed.R.Civ.P. 26(e)(1). However, Mr. Firestone's single reference to the existence of the Nelcela Authorization System during the March 31, 2005 hearing did not satisfy that exception.

has been obtained by subpoena . . . and is already part of disclosure in this case." (Dkt. #674, Exh. 5).

That response meant either that the Nelcela Parties still believed, despite the Lexcel Parties' explicit complaint, that the only software at issue was their merchant authorization system, or that the Nelcela Authorization System had already been disclosed to the other parties. And as the Lexcel Parties did not file a Rule 37 motion to compel, the Court must presume they either abandoned their copyright infringement claim relating to the authorization system or simply assumed that the Nelcela Parties had already disclosed the requested software. To that end, the Court notes that in early January 2005, Fennemore Craig, P.C., the law firm that had filed the relevant copyright applications on behalf of the Nelcela Parties, produced the Nelcela Parties' copyright application for the Nelcela Authorization System pursuant to a January 11, 2005 subpoena duces tecum issued by the POST Parties. (Dkt. #674, Exh. 1). Importantly, the copyright application for the Nelcela Authorization System included 18 pages of attached source code. (Dkt. #674, p.2; Phase I Trial Exhibit 306). And based on the fact that a party seeking to register a copyright in a computer program must deposit the entire source code of its program "if the program is 50 pages or less," Syntek Semiconductor Co., Ltd. v. Microchip Technology, Inc., 307 F.3d 775, 780 (9th Cir. 2002) (citing 37 C.F.R. § 202.20(c)(2)(vii)(A)(1), the Lexcel Parties most likely proceeded under a belief that those 18 pages comprised the entirety of the Nelcela Authorization System source code. (Dkt. #674, p.7).

The Nelcela Authorization System was also at issue at the Phase I summary judgment stage. First, the Lexcel Parties' expert report specifically compared the Lexcel Authorization System with the Nelcela Authorization System, i.e., the 18 pages attached to the Nelcela parties' copyright application. (Dkt. #337, Exh. 12, pp. 2, 8-23). The Lexcel Parties' expert also testified during his deposition that the Nelcela Authorization System copied the Lexcel Authorization System. (Dkt. #438, Exh. 2). Moreover, the Nelcela Parties' expert report, dated September 26, 2005, compared the Lexcel

Authorization System with a "[p]aper copy of copyright code for Nelcela Authorization System," i.e., the Nelcela Authorization Code (Dkt. #337, Exh. 17, p.14), and noted that the Lexcel software and the Nelcela Authorization System "may have some similarities" (id., p.9).

But the Nelcela Parties' experts went on to state that "according to counsel, it is only the Merchant System that is at issue in this litigation. Any differences or similarities between the Nelcela Authorization System and the Lexcel code should therefore be ignored." (Id., p. 9). The direction given by the Nelcela Parties' counsel to their experts is inexplicable in light of the Lexcel Parties' complaint, their expert report, and the fact that the Nelcela Parties acknowledged that their authorization system was at issue when they asserted in their response to the Joint Parties' motion for summary judgment that "not one single expert has factually established that the Nelcela Merchant System, Nelcela Terminal Driver *and Nelcela Authorization System* (collectively "the Nelcela software") is derivative of the Lexcel software." (Dkt. #349, p.2) (emphasis added). Even if the Nelcela Parties continued to believe that only their merchant system was at issue after the Lexcel Parties intervened, the Lexcel Parties' expert report and the Phase I summary judgment motions made it abundantly clear that the parties' authorization systems were part of the software at issue. Certainly, at that point, the Nelcela Parties had an Rule 26(e) obligation to disclose the existence of any source code apart from the 18 pages of code attached to their copyright application. That obligation is self-effectuating; contrary to the Nelcela Parties' contention, there is no requirement for the opposing party to serve a request for production when the offending party becomes aware of its lack of disclosure. See Johnson v. United Parcel Service, Inc. 236 F.R.D. 376, 378 (E.D. Tenn. 2006).

Nonetheless, on January 19, 2007, the Nelcela Parties filed a motion in limine to exclude expert analysis of "authorization" systems, continuing to assert that "[t]he only software that has ever been at issue at any phase of this litigation is a . . . Merchant

System." (Dkt. #423, p.1).[12] At the first Phase I Final Pretrial Conference on March 26, 2007, Mr. Firestone, on behalf of the Nelcela Parties again insisted that the only software at issue was the merchant system. (Dkt. #462, p.38). Mr. Firestone also stated that the Nelcela Authorization System "has not been produced in this matter whatsoever. . . ." (Id.). But Mr. Firestone also recognized that the Lexcel Parties' expert had compared the Lexcel Authorization System with the Nelcela Authorization System, and averred that the "printouts of Nelcela's [source] code . . . submitted to the U.S. Copyright [O]ffice" that the Lexcel Parties' expert had examined "*is* the authorization system."[13]  (Id., p.40)

---

[12]In support of their motion, the Nelcela Parties asserted that the Court's July 28, 2005 order stated that the Lexcel Parties "would be permitted to intervene on the express understanding that the issues [in the case] were not expanded" (Id., p.3), and that Lexcel intervened only to litigate the Nelcela Merchant System (id., p.4). One only need glance at the Court's July 28, 2005 order and the Lexcel Parties' complaint to realize those assertions are incorrect. The Court permitted the Lexcel Parties to intervene because they claimed "an interest in the copyright registration that *may* be the same or basis of the software *programs* at issue in this litigation." (Dkt. #209, p.4). Further, the Court noted that "Lexcel is aware this litigation has been placed on an expedited track and Lexcel will comply with current deadlines in this litigation."  (Id., p.3).  And although the Lexcel Parties' intervening complaint may have broadened the software programs at issue as defined through the parties' initial discovery, it did not broaden the scope of the original complaint or alter the underlying nature of the proceedings. Compare Vinson v. Washington Gas Light Co., 321 U.S. 489, 499 (1944) ("[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.") with Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 827 (2d Cir. 1963) ("Where there exists a sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay- and to avoid as well the delay and waste of judicial resources attendant upon requiring separate trials- the district court is without discretion to deny the intervenor the opportunity to advance such claims."); accord Spangler v. U.S., 415 F.2d 1242, 1245 (9th Cir. 1969). See also NSK Corp v. U.S., 547 F.Supp.2d 1312, 1316-19 (Ct. Int'l Trade 2008) (discussing Vinson and holding that "the principle of enlargement [is] better reserved for situations in which an intervenor adds new legal issues to those already before the court. Moreover, the fact that an intervenor brings additional entries to the litigation carries no weight with regard to enlargement.").

[13]Mr. Firestone again affirmed that "the copyrighted source code, the 18 pages that we are required by law to file to get a copyright, of which I did not produce in this litigation"

- 15 -

(emphasis added).  After considering the matter and recognizing that "the posture of this case clearly changed when this Court granted Lexcel's request to intervene back in July of 2005," and that "for Nelcela to argue that the authorization system is not at issue would be simply ignoring Lexcel's position since it intervened" (id., p.47), the Court concluded that it was inappropriate "to exclude the joint parties from introducing evidence relating to the authorization system portion of the software versions in dispute" and so denied the Nelcela Parties' motion in limine (id., p.48-49).[14]

There can be no dispute that the Nelcela Parties, knew, at the very, very least, as of the March 26, 2007 Phase I Final Pretrial Conference that the Nelcela Authorization System was at issue.  The Nelcela Parties will not be heard to complain that "[p]rior to the Phase I trial Nelcela believed that the parties' [ ] Authorization System(s) were not at issue in this litigation." (Dkt. #661, p.2).  In addition, it is abundantly clear that the Nelcela Parties knew that the Nelcela Authorization System obtained by the Joint Parties was comprised of the 18 pages of source code on file with the U.S. Copyright Office; that was affirmed by Mr. Firestone as the Nelcela Authorization Code, despite the fact that he had not produced it.  Again, the Nelcela Parties had an obligation under Rule 26(e) to disclose the existence of any source code apart from the 18 pages of code attached to their copyright application.

### B.    The Phase I Trial

However, on April 18, 2007, the fifth day of the Phase I trial, Mr. Firestone showed Alec Dollarhide those 18 pages of source code and asked him whether that was his entire authorization code," to which Mr. Dollarhide replied, "It's a very, very small fragment." (Dkt. #529, p.990).  Mr. Dollarhide also later stated that the entire Nelcela

---

is the Nelcela Authorization System at the second Phase I Final Pretrial Conference on April 9, 2007.  (Dkt. #474, pp. 20-21).

[14]The Court emphatically reiterated that the Phase I trial was "trial for ownership of the Merchant and Authorization Systems" at the second Phase I Final Pretrial Conference on April 9, 2007.  (Dkt. #474, p.76).

Authorization System was "at least several hundred [pages], if not over a thousand." (Id., p.1004).

Counsel for the POST Parties objected to Mr. Firestone's line of questioning as the Nelcela Parties had not produced any authorization source code beyond the 18 pages of code. Mr. Firestone responded by placing large binders containing print-outs of the Nelcela Merchant System source code on counsel's table and stating that he was "going to ask [Mr. Dollarhide] if [he] printed the authorization code, would it look something like this thick." (Id., p.992). Mr. Firestone also stated, for the first time, that "[t]he authorization code is thousands of pages like the merchant code" (id., p.993), and stated that it had not been produced was because none of the Joint Parties "asked where's the remainder of it" (id., p.1000). Counsel for the POST Parties responded by pointing to the copyright regulations that require a copyright registrant to file either the first and last pages of a software program over 50 pages or if the program is less than 50 pages the entire program, and reiterate that what was filed with by the Nelcela Parties with the U.S. Copyright Office was the 18 pages of source code obtained by the Joint Parties when they subpoenaed the copyright applications from Fennemore Craig, P.C. (Id., pp. 995-97). The discussion then continued into the next day, at which time Mr. Firestone extensively rehashed his arguments that he believed only the parties' merchant systems were at issue and that no one specifically asked him to disclose the Nelcela Authorization System, in an effort to excuse his failure to produce the allegedly "500 to a thousand pages" of the entire Nelcela Authorization System source code. (Dkt. #530, pp. 1040-50, 1059). Mr. Firestone also stated that the purpose of his question was "[o]nly [to show] that there's more code, period." (Id., p. 1065). The Court permitted Mr. Dollarhide's answers to stand, but recognized that the line of questioning was problematic because the alleged hundreds of pages of authorization source code apart from the 18 pages attached to the copyright application had never been produced, either prior to or at the Phase I trial. (Id., p.1066). The Court also noted that Mr. Firestone appeared to have violated his Rule 26(a)

obligation to disclose the additional pages of the authorization source code.  (Id., pp. 1069-70, 74).

### C.    Phase II

The Nelcela Parties now argue, two years later, that they should be permitted to present the entire Nelcela Authorization System source code (Trial Exhibits 1006 and 1007) – despite disclosing it for the first time approximately six weeks before the Phase II trial on infringement and the day prior to the deadline for the parties to exchange exhibits – because "[i]t is entirely clear that Nelcela made everybody aware in the Phase I trial that the Nelcela Authorization Code was several [hundred] pages, not 17 or 18 pages submitted to obtain its copyright."  (Dkt. #673, p.4).  In other words, "[w]hen Phase II began, the Joint Parties clearly knew that they did not have the full, printed Authorization Code. . . ."  (Id.).  In addition, the Nelcela Parties state that "[n]o party has asked Nelcela for its Authorization Code in this Phase II either[.]"  (Id.).  As such, the Nelcela Parties implicitly contend that did not violate any disclosure obligations under Rule 26(e) of the Federal Rules of Civil Procedure.

The Court, however, does not agree.  Mr. Firestone and Mr. Dollarhide's unsupported statements at the Phase I trial that the 18 pages of source code attached to the copyright application was not the entire authorization source code, which in fact comprised between several hundred to a thousand pages of code,[15] was not sufficient to discharge the Nelcela Parties' Rule 26(e)(1)(A) disclosure obligation.  Once the Nelcela Parties became aware that their authorization system was at issue, regardless of whether that occurred prior to or at the Phase I Final Pretrial Conferences, there can be no question that the Nelcela Parties' initial Rule 26(a) disclosures and responses to the Joint

---

[15]In addition, those statements appears to have been incorrect.  At the Phase II Final Pretrial Conference, Mr. Harris, despite stating in his motion that the Nelcela Authorization Code "was several [hundred] pages," stated that "[t]he authorization code itself is these two binders that look to be about three-quarters of an inch thick, maybe 180 pages, something like that."  (Dkt. #682, p. 59).

Parties interrogatories were incomplete.  That is, of course, unless "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  Fed.R.Civ.P. 26(e)(1)(A).  Thus, the Nelcela Parties' disclosure obligation was discharged only if information concerning the Nelcela Authorization System was made known to the other parties.  Only 18 pages of authorization source code was made known to the Joint Parties, through their own effort.  If the Nelcela Authorization System was in fact larger than those 18 pages, then the Nelcela Parties had an obligation to disclose that fact under Rule 26(e).  And by failing to disclose that the Nelcela Authorization System was larger than those 18 pages – to the tune of hundreds of pages larger – until the fifth day of the Phase I trial, the Nelcela Parties clearly violated Rule 26.  Looking back, it appears the Court would have been well within its authority to strike Mr. Dollarhide's answers and prevent Mr. Firestone from engaging in any line of questioning regarding the alleged full extent of the Nelcela Authorization System.

More importantly, simply eliciting testimony that the Nelcela Authorization System source code was larger than the 18 pages of code attached to the copyright application does not sufficiently "make known to the other parties" either the existence or nature of the Nelcela Authorization System.  The Nelcela Parties did not present any of the alleged authorization code apart from the 18 pages of code attached to the copyright application at the Phase I trial.  Nor did they make known the location of the entire source code.  The mere declaration that there was additional authorization source code other than what had been obtained by the POST Parties did not somehow shift the disclosure obligation to the Joint Parties to request the entire Nelcela Authorization System source code.  This is especially true in light of the fact that Mr. Firestone explicitly averred to the Joint Parties and the Court prior to the Phase I trial that the 18 pages of source code attached to the Nelcela Authorization System copyright application was the authorization system.

In any event, contrary to the Nelcela Parties contention, the Lexcel Parties did in fact request the Nelcela Authorization System source code during the Phase II discovery in this case. (Dkt. #614; Dkt. #674, p.6). The Lexcel Parties specifically requested "[a]ll documents and communications, *including source code*, relating to the customization and/or modification, at any time, of Nelcela Software by any person and/or of the Lexcel Software by any of the Nelcela Defendants." (Id., Exh. 10, p.2) (emphasis added). And the Nelcela Parties responded that "*[t]here is no additional source code to provide . . . beyond what has already been produced in this litigation.*" (Id.) (emphasis added). Thus, there can be no doubt that the Nelcela Parties failed to disclose the Nelcela Authorization System as now presented in Trial Exhibits 1006 and 1007 in violation of Federal Rule of Civil Procedure 26(e).

However, "[t]he information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." Yeti by Molly, 259 F.3d at 1106 (citing Fed.R.Civ.P. 37(c)(1)). As in Yeti by Molly, neither of those exceptions apply here. The only justifications offered by the Nelcela Parties are that throughout most of Phase I they believed that their authorization system was not at issue, and that the Joint Parties did not request their entire authorization system source code during Phase II.[16] As discussed in detail above, both of those justifications fail; and to the extent the former has any merit, the Nelcela Parties's response to the Lexcel Parties' Phase II

---

[16]The Nelcela Parties also point to the fact that none of the Joint Parties ever produced their entire authorization system. First, however, the Nelcela Parties' disclosure obligations are automatic and not contingent on the Joint Parties' compliance with its disclosure requirements. Fed.R.Civ.P. 26. Second, the Lexcel Parties' entire authorization source code is not required for the Phase II jury to conduct their intrinsic analysis of the parties' software. The Phase II jury need only determine two things: (1) whether the protectable elements in the Lexcel Parties' merchant and authorization systems, already identified by the Joint Parties at Dkt. #555 and discussed by the Court in its February 2, 2009 order on analytical dissection, are virtually identical to those elements in the Nelcela Parties' software (Dkt. #652, p.2); and (2) whether the alleged protectable elements copied by the Nelcela Parties are qualitatively and quantitatively insignificant to the Nelcela Parties' merchant and authorization systems as a whole (id., pp. 2-3).

discovery request that there was in fact no additional source code is dispositive.[17]
Moreover, the Nelcela Parties citation to Fonseca v. Sysco Food Servs. of Ariz., Inc., 374
F.3d 840, 846 (9th Cir. 2004), is inapposite.  As distinguished by the court in Hagan v.
California Forensic Medical Group, 2009 WL 689740, at *3 (E.D. Cal. 2009), Fonseca,
involved a pro se plaintiff and held that the plaintiff's "late disclosure was . . . harmless,
because [Defendant] *had a copy* of the [challenged] declaration months before
[Plaintiff's] disclosure."  374 F.3d at 846 (emphasis added).  Here, the Nelcela Parties do
not contend that the Joint Parties had a copy of the entire Nelcela Authorization System
source code at any time prior to its late disclosure.

The Nelcela Parties have also not shown that the delay was harmless.  They assert
that they will suffer "great prejudice" if the Court were to exclude their entire
authorization system because "[i]n order for Nelcela to put on a proper defense, . . . [they]
must be permitted to show the jury the entirety of an Authorization System to show the
changes are not trivial" (Dkt. #661, p.5).  And certainly that is a correct statement of the
law: if the Nelcela Parties are prevented from introducing their entire authorization
system, then in the event the Lexcel Parties are able to prove that virtually identical
copying took place, it appears that the Nelcela Parties would be unable to present
evidence (other than the 18 pages of authorization source code already disclosed) to show
that the elements copied are qualitatively and quantitatively insignificant to the Nelcela
Authorization System as a whole.

---

[17]At the Phase II Final Pretrial Conference, Mr. Harris, appeared to contend that the reason he did not produce the entire Nelcela Authorization System source code in response to the Lexcel Parties' Phase II discovery request was because he just recently discovered the source code in a box he had received from his co-counsel, Mr. Firestone and Ms. Manolio. (Dkt. #662, pp. 54-55).  That explanation does not excuse the Nelcela Parties' failure to disclose the requested information in light of the history of this litigation and the Nelcela Parties' response to the Lexcel parties' discovery request that "[t]here is no additional source code to provide."

But again, similar to the plaintiff in <u>Yeti by Molly</u>, the Lexcel Parties received Trial Exhibits 1006 and 1007 only six weeks before they must litigate a complex copyright action that has been drawn out in this Court since 2002. 259 F.3d at 1107. To respond to this late disclosure, the Lexcel Parties would have to comb through approximately hundreds of pages of written computer source code to determine whether any of the code, apart from the 18 pages of code already disclosed, contain any of the protectable elements identified by the Joint Partes.[18] But even Herculean efforts would unlikely accomplish that task in the next two weeks. Moreover, if the Lexcel Parties identified any similarities in the parties' authorization systems other than those identified in the Joint Parties' List of Common Features and Elements (Dkt. #555), then the Court might have to conduct analytic dissection of those additional elements, in which case it would be impossible for the Phase II trial to proceed on schedule. The Court cannot find that such delay is harmless.

"Courts have upheld the use of the [Rule 37(c)(1)] sanction even when a litigant's entire cause of action or defense has been precluded." <u>Yeti by Molly</u>, 259 F.3d at 1106 (citing <u>Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia De Puerto Rico</u>, 248 F.3d 29, 35 (1st Cir. 2001) (although the exclusion of an expert prevented plaintiff from making a case and was "a harsh sanction to be sure," it was "nevertheless within the wide latitude of" Rule 37(c)(1)). "Thus, even though [the Nelcela Parties] never violated an explicit court order to produce the[ir] [authorization system] and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." <u>Id.</u> The prejudice of which the Nelcela Parties complain is of their own making. Because of the Nelcela Parties' multiple failures to disclose, as discussed above, the Court must grant the

---

[18]Mr. Harris informed the Court at the Phase II Final Pretrial Conference that he does not possess the source code contained in Trial Exhibits 1006 and 1007 in machine-readable format. (Dkt. #662, pp. 57-60).

Joint Parties' motion to exclude Trial Exhibits 1006 and 1007 pursuant to Federal Rule of Civil Procedure 37(c)(1).

Accordingly,

**IT IS HEREBY ORDERED** granting MTSI's motion for partial reconsideration. (Dkt. #662).

**IT IS FURTHER ORDERED** denying the Nelcela Parties' motion in limine to exclude evidence of copyright ownership by MTSI. (Dkt. #645).

**IT IS FURTHER ORDERED** granting the Joint Parties' motion in limine to exclude "Nelcela Authorization System" source code not timely produced. (Dkt. #649).

DATED this 24th day of July, 2009.

Mary H. Murgula
United States District Judge