**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems, Inc., | No. 02-1954-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Necela, Inc., et al.,, | |
| Defendants. | |
| And Related Counterclaims, Cross-Claims, and Third Party Claims. | |

This Court is in possession of the POST Parties' Application for Temporary Restraining Order Without Notice and Preliminary Injunction, (Dkt. #829), and accompanying declaration and exhibits. After reviewing the pleading, and determining that oral argument is unnecessary, the Court issues the following Order.

**I. Background**

On September 2, 2009, a jury returned a verdict in this case, resulting in , among other things, a $3,145,797 judgement for the POST Parties against Lenoard Campagna. In its instant motion, the POST Parties allege that shortly before and after this verdict, Mr. Campagna illegally divested himself of assets in an effort to thwart the POST Parties' ability to collect on the judgement. Specifically, they allege, and have submitted evidence showing, that on February 6, 2008, after Phase 1 of the trial, Mr. Campagna deeded his Scottsdale, Arizona, to a "Qualified Personal Residence Trust" for which his daughter is the trustee and

he and his wife are the beneficiaries. On November 6, 2009, after the Second Phase of the trial, the POST Parties have submitted evidence showing Mr. Campagna transferred title of his unencumbered Mercedes Benz to his daughter. Consequently, the POST Parties fear further depletion of Mr. Campagna's remaining assets, and are particularly concerned that he will accelerate his alleged efforts to make himself judgement proof should he learn about their decision to request a Temporary Restraining Order ("TRO"). Accordingly, they have requested that this Court issue an ex parte TRO and schedule a show-cause hearing where Mr. Campagna can explain why a Preliminary Injunction should not be entered.

## II. Discussion

### A. Rule 65(b)

#### 1. Legal Standard

The POST Parties have requested a TRO without notice. Accordingly, before this Court can consider the appropriateness of granting a TRO, it must necessarily determine whether issuance without notice is proper. Rule 65(b) of the Federal Rules of Civil Procedure authorize this Court to grant a Temporary Restraining Order ("TRO") without notice to an adverse party when: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." The Ninth Circuit has cautioned district courts against issuing a TRO without notice to the adverse party, stating that the "[c]ircumstances justifying the issuance of an ex parte order are extremely limited." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423 (1974)). Their issuance is "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Id. (quoting Granny Goose Foods, 415 U.S. at 439). The limited nature of this remedy "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides

## 2. An Ex Parte TRO is warranted

The POST Parties have satisfied the procedural requirements of Rule 65(b) by submitting both a Certificate of Counsel in Support of Temporary Restraining Order and Deceleration Robert H. McKirgan, each explaining why notice has not been given to Mr. Campagna and why it should not be required. The dispositive issue before this Court, then, is whether their Motion and accompanying exhibits contain facts showing that good cause exists to find that irreparable and immediate harm will result if Mr. Campagna is prior to this Court holding a hearing concerning the POST Parties' request for an injunction.

The POST Parties have alleged and introduced evidence tending to show that Mr. Campagna has attempted to dissipate his assets. Exhibits attached as part of the Declaration of Mary L. Gerdts demonstrate that shortly after suffering an adverse verdict in the Phase 1 trial in this matter, on February 6, 2008, Mr. Campagna deeded his Scottsdale, Arizona, home to a Qualified Personal Residence Trust that named his daughter as trustee and himself and Helga Terry Campagna as beneficiaries, for $10.00 and other unnamed valuable consideration. They also show that after suffering an adverse verdict in Phase 2 trial in this matter, Mr. Campagna transferred his Mercedes Benz automobile to his daughter. Assuming, for the moment, the truth of the POST Parties allegations, the Court finds that the POST Parties have demonstrated irreparable harm. See In re Estate of Ferdinand Marcos, Human Rights Litig, 25 F.3d 1467, 1480 (9th Cir. 1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish . . . that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.") see also Nastro v. D'Onofrio, 263 F.Supp.2d 446, 460 (D. Conn. 2003) ("The possibility that [the judgment debtor] could take further action to void [the] judgment, and could possibly dissipate his assets beyond the reach of this court, constitutes irreparable harm.").

Because, however, this is an application for an ex-parte TRO, the harm in question must be immediate, as well as irreparable. The POST Parties argue that based on his past

1    actions, Mr. Campagna will attempt to dissipate his reaming assets if given notice of these
2    proceedings. It is impossible to know exactly what Mr. Campagna will do should he learn
3    about the POST Parties' attempt to secure a TRO. Accordingly, the Ninth Circuit teaches
4    that immediacy may be demonstrated by allegations supported by evidence showing that the
5    adverse party has a history of engaging in the activity likely to cause the irreparable harm.
6    See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9 th Cir. 2006). In Reno,
7    a party preparing to bring a trademark infringement case sought an ex parte TRO because it
8    feared that the adverse party would destroy evidence of infringement should it be given
9    notice. In discussing the appropriate standard, the Court stated that "'an ex parte TRO
10   applicant "must support . . . assertions [of irreparable immediate harm] by showing that the
11   adverse party has a history of disposing of evidence or violating court orders or that persons
12   similar to the adverse party have such a history.'" Id. (quoting First Tech. Safety Sys., Inc.
13   v. Depinet, 11 F.3d 641, 650 (6th Cir.1993)). In the instant case, the POST Parties have
14   made more than mere accusations concerning Mr. Campagna's actions; they have provided
15   this court with evidence showing that Mr. Campagna has transferred approximately two
16   million dollars in assets since the trial's first phase ended. This disposal of assets is akin,
17   then, to destruction of evidence, as both of these actions, if successful, significantly hinder
18   the ability of one side to a dispute to be made whole in a court of law. The immediacy of the
19   irreparable harm is also demonstrated by the fact that Mr. Campagna's asset transfers
20   occurred in response to negative outcomes at this Court. It is not a stretch to conclude that
21   the specter of another unfavorable decision—the issuance of a TRO—could spur Mr.
22   Campagna to take further steps to dispose of his remaining assets. Accordingly, based on
23   the evidence they have put before this Court, the POST Parties have demonstrated a history
24   of secreting assets based on which this Court can determine the threat of harm will be
25   immediate absent an ex parte order. See also S.E.C. v. Private Equity Mgmt. Group, LLC,
26   2009 WL 1310984, *1 (C.D. Cal. April 27, 2009) (granting an a TRO without notice where
27   the applicant demonstrated a "the possibility of dissipation of assets").
28   / / /

B.     **Temporary Restraining Order**

Having concluded that an ex-parte TRO is appropriate in this matter, the Court must determine if the POST Parties have satisfied the substantive requirements for a TRO. The standard for issuing a TRO is the same as that for issuing a preliminary injunction. See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc., 236 F.Supp.2d 1152, 1154 (D.Haw.2007). Accordingly, a TRO is appropriate where the moving party establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." American Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The purpose of injunctive relief is to preserve the status quo and prevent the irreparable loss of rights. Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 786 (9th Cir. 2001).

**1.     The POST Parties are likely to succeed on the merits:**

Because of Mr. Campagna's actions, the POST Parties are concerned about their ability to collect on the judgement they have against Mr. Campagna. As part of this effort, the POST Parties clearly expect to seek relief pursuant to the Arizona Fraudulent Transfer Act (AFTA). A.R.S. § 44-1004. A transfer of assets is fraudulent if made "with actual intent to hinder, delay or defraud any creditor of the debtor." Id. § 44-1004(A)(1). "Actual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred." Gerow v. Covill, 192 Ariz. 9, 17 (App. 1998) The AFTA lists a number of factors from actual intent may be inferred, including, but not limited to (1) transfer to an insider; (2) the debtor retained possession of the transferred asset; (3) prior to the transfer, the debtor had been threatened with suit; (4) the asset was transferred shortly before or after the incurrence of a substantial debt. A.R.S § 44-1004(B). These factors are "badges of fraud" from which intent may be inferred, not required elements. Gerow, 192 Ariz. at 17. Under the AFTA, a successful creditor-plaintiff is entitled to one or more remedies, including "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset

transferred or of other property," or a "levy execution on the asset transferred or its proceeds." A.R.S. § 44-1007(A)(4)(a); id. at § 44-1007(B).

Defendant's submissions to this Court demonstrate a likelihood of success under the AFTA. Exhibits attached as part of the Declaration of Mary L. Gerdts show that shortly after suffering an adverse verdict in the Phase 1 trial in this matter, on February 6, 2008, Mr. Campagna deeded his Scottsdale, Arizona, home to a Qualified Personal Residence Trust that named his daughter as trustee and himself and Helga Terry Campagna as beneficiaries, for $10.00 and other unnamed valuable consideration. They also show that after suffering an adverse verdict in Phase 2 trial in this matter, Mr. Campagna transferred his Mercedes Benz automobile to his daughter. These transactions evidence numerous badges of fraud under AFTA. First, Mr. Campagna made both of the asset transfers identified by the POST Parties to an insider, his daughter. See Gerow, 192 Ariz. at 19 (stating that family members are insiders). Second, the POST Parties allege that Mr. Campagna still resides in the Scottsdale home deeded to the trust, demonstrating he retains possession of that asset. Third, the transfer of the Mercedes Benz occurred shortly after Mr. Campagna incurred a substantial debt in the form of the POST Parties' judgment. Fourth, both of these transfers occurred after the POST Parties threatened Mr. Campagna with a lawsuit and after Mr. Campagana suffered adverse jury verdicts in this case. Because even a single badge of fraud "'may establish and stamp a transaction as fraudulent,'" Gerow, 192 Ariz. At 17 (quoting Torosian v. Paulos, 82 Ariz. 304, 312, 313 (1957)), this Court finds that the POST Parties have met their burden and demonstrated a likelihood of success on the merits in an action under AFTA.

### 2. The POST Parties will suffer irreparable harm

As discussed in Part A, *supra,* this court may issue an injunction when a plainitff can establish that "money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." See In re Estate of Ferdinand Marcos, Human Rights Litig, 25 F.3d 1467, 1480 (9th Cir. 1994); It follows, then, that a judgement debtors dissipation of assets

1 | can constitute irreparable harm to the judgment creditor. See Nastro v. D'Onofrio, 263
2 | F.Supp.2d 446, 460 (D.Conn. 2003) ("The possibility that [the judgment debtor] could take
3 | further action to void [the] judgment, and could possibly dissipate his assets beyond the reach
4 | of this court, constitutes irreparable harm."). The POST Parties have introduced evidence
5 | showing Mr. Campagna has engaged in a pattern of conduct meant to dissipate his assets.
6 | Accordingly, if Mr. Campagna is not prohibited from continuing this behavior, the POST
7 | Parties will suffer irreparable harm, as they will lose out on their right to collect their
8 | judgment.

### 3. A TRO is in the public interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 988 (9th Cir. 2009) (quoting Bernhardt v. L.A. County, 339 F.3d 920, 931 (9th Cir.2003)). Here, the requested injunctive relief is narrow and will have no significant impact on non-parties. Additionally, public policy undoubtedly favors the enforceability of judgments. Were it otherwise, lawsuits seeking monetary damages would be rendered ineffective. See, e.g., Thomas, Head and Greisen Employees Trust v. Buster, 95 F.3d 1449, 1455 (9th Cir. 1996) ("Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." (quoting Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867))).

### 4. The balance of hardships favors the POST Parties

"In assessing whether the plaintiffs have met this burden, the district court has a 'duty ... to balance the interests of all parties and weigh the damage to each.'" Stormans, 571 F.3d at 988-89 (quoting See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1203 (9th Cir.1980)). On the one hand, entering a temporary restraining order will undoubtedly inconvenience Mr. Campagna. If, however, an injunction is not entered and Mr. Campagna dissipates more of his assets, the POST Parties may be unable to collect on their

judgment against him, rendering fruitless nearly eight years of litigation. Additionally, any injunction entered by this Court will not merely work to freeze Mr. Campagna's assets. Instead, it will allow him to make expenditures for household expenses and expenses incurred in the ordinary course of business. Accordingly, the Court finds that Mr. Campagna's potential inconvenience is outweighed by possibility the POST Parties will be unable to collect on their judgment.

**III. Conclusion**

Therefore, having considered their motion, accompanying declaration, and exhibits, the Court finds that good cause exists to determine that irreparable and immediate injury, loss, and damage will result to the POST Parties in the form of further dissipation of and transfer of Mr. Campagna's assets should he receive notice prior to the entry of a TRO. Additionally, the Court has determined that good causes exists to find that a TRO should issue, as the POST Parties have shown that they are likely to succeed on the merits, they will suffer irreparable harm, the balance of equities tips in their favor, and a TRO is not against public policy. In deciding that an ex parte TRO is appropriate, the Court emphasizes that it does not intend to penalize Mr. Campagna, nor does it believe an injustice will result from its issuance. The forthcoming TRO will not prevent Mr. Campagna from making expenditures necessary as part of the ordinary course of business, or to pay for household expenses. The purpose of the TRO is merely to preserve the status quo as to his remaining assets until such time as Mr. Campagna can be heard in Court concerning the necessity of issuing a Preliminary Injunction.

**Accordingly**,

**IT IS HEREBY ORDERED** that a temporary restraining order be issued immediately this day of January 21, 2010, restraining Leonard Campagna, his officers, agents, servants, employees, and attorneys and any other person acting in active concert or participation with any of them, from effecting any transfers of Leonard Campagna's assets, or any assets owned by his marital community, to any third party, including any trust, unless

such transfer is made in the ordinary course of business or to pay for ordinary household expenditures. (Dkt. #829).

**IT IS FURTHER ORDERED** that Leonard Campagna be heard on Thursday, January 28, 2010, at 2:00 PM in this Court, at a hearing held pursuant to Rule 65 of the Federal Rules of Civil Procedure regarding the issuance of a preliminary injunction against Leonard Campagna. Leonard Campagna shall have to and including Tuesday, January 26, 2010, at 5:00 p.m. to file and serve any briefs, affidavits, and other evidence to show cause why a preliminary injunction should not issue. The POST Parties shall have to and including, Wednesday, January 27, 2010, at 5:00 p.m. to file any reply briefs or affidavits.

**IT IS FURTHER ORDERED** pursuant to Rule 65 of the Federal Rules of Civil Procedure, that the POST Parties are to post a bond in the amount of $50,000 to make good such damages (not to exceed the amount of the bond stated above) as may be suffered or sustained by any party who was found to be wrongfully restrained. The bond shall be posted within three business days of this Order.

DATED this 21st day of January, 2010.

_____
Mary H. Murgula
United States District Judge