**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems, Inc., ) | No. CV 02-1954-PHX-MHM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Necela, Inc., et al., ) | |
| Defendants. ) | |
| And Related Counterclaims, Cross-Claims, ) and Third Party Claims. ) | |

This Court is in possession of the POST Parties' Application for Temporary Restraining Order Without Notice and Preliminary Injunction, (Dkt. #829). On January 21, 2010, this Court issued an ex parte Temporary Restraining Order ("TRO"), enjoining Leonard Campagna from transferring any assets except those expended in the ordinary course of business or to pay for ordinary household expenses. (Dkt. #830). It held a hearing on January 29, 2009, to determine if the TRO should be converted into a Preliminary Injunction ("PI"). Having considered all the evidence and arguments, the Court issues the following Order.

**I.    Background**

The trial in this case was bifurcated into two separate phases: Phase 1 and Phase II. On April 25, 2009, a jury returned the Phase I verdict, finding that Lexcel, not Necela (the company owned by Mr. Campagna), owned the "authorization system" or the "merchant

1  system" at issue in this case. On September 2, 2009, a jury returned the Phase II verdict,
2  resulting in, among other findings, a $3,145,797 judgement for the POST Parties against Mr.
3  Campagna. In their papers, the POST Parties have alleged that beginning after the Phase I
4  verdict, Mr. Campagna has fraudulently divested himself of assets in an effort to thwart the
5  POST Parties' ability to collect on the judgement. Specifically, they allege, that after Phase
6  1 of the trial, Mr. Campagna placed his Scottsdale, Arizona, home ("Scottsdale home") in
7  a "Qualified Personal Residence Trust,"("QPRT") naming his daughter as trustee and himself
8  and his wife as beneficiaries. Additionally, the POST Parties allege that on or about
9  November 6, 2009, after the Second Phase of the trial, Mr. Campagna transferred title to his
10 Mercedes Benz automobile to his daughter, Laura Morse. Absent a PI, the POST Parties fear
11 Mr. Campagna will further deplete his remaining assets preventing them from being able to
12 collect on their judgment.

13 Mr. Campagna does not deny that he transferred the assets identified by the POST
14 Parties. Instead, he denies the POST Parties' characterization of those transfers as
15 fraudulent, claiming they were not made as part of an effort to liquidate his assets. At the
16 hearing held on January 28, 2010, Mr. Campagna testified that he placed the Scottsdale home
17 in the QPRT as part of routine estate planning and deeded the automobile to his daughter as
18 payment for services rendered by her husband. More specifically, Mr. Campagna and Ms.
19 Morse testified that Mr. Campagna hired Mr. Morse to help cleanup his cabinet factory so
20 that it could be sold, promising him a share of the profits from that sale as compensation.
21 When the sale failed to result in profits, Mr. Campagna gave Mr. Morse the Mercedes Benz
22 in lieu of a cash payment.

23 **II.    Discussion**

24     **A.    Legal Standard**

25 A preliminary injunction is appropriate where the moving party establishes "that he
26 is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence
27 of preliminary relief, that the balance of equities tips in his favor, and that an injunction is
28 in the public interest." American Trucking Associations, Inc. v. City of Los Angeles, 559

F.3d 1046, 1052 (9th Cir. 2009). The purpose of injunctive relief is to preserve the status quo and prevent the irreparable loss of rights. Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 786 (9th Cir. 2001).

### 1. The POST Parties are likely to succeed on the merits:

Because of Mr. Campagna's actions, the POST Parties are concerned about their ability to collect on the judgement they have against Mr. Campagna. As part of this effort, they expect to seek relief pursuant to the Arizona Fraudulent Transfer Act (AFTA). A.R.S. § 44-1004. A transfer of assets is fraudulent if made "with actual intent to hinder, delay or defraud any creditor of the debtor." Id. § 44-1004(A)(1). "Actual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred." Gerow v. Covill, 192 Ariz. 9, 17 (App. 1998). These factors are "badges of fraud" from which intent may be inferred, not required elements. Id. at 17. They include, but are not limited to (1) transfer to an insider; (2) the debtor retained possession of the transferred asset; (3) prior to the transfer, the debtor had been threatened with suit; (4) the asset was transferred shortly before or after the incurrence of a substantial debt. A.R.S § 44-1004(B). Under the AFTA, a successful creditor-plaintiff is entitled to one or more remedies, including "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property," or a "levy execution on the asset transferred or its proceeds." A.R.S. § 44-1007(A)(4)(a); id. at § 44-1007(B).

As to both of the asset transfers identified by the POST Parties—the Scottsdale home and the car—Mr. Campagana avers they were perfectly innocent, offering non-fraudulent explanations as to both. Such explanations, however, do not end the Court's inquiry. Were it so, the AFTA would be rendered ineffective, as it is likely that nearly every person accused of fraudulent transfer would state a perfectly reasonable explanation for their action. Indeed, the very purpose of the badge-of-fraud factors, it seems, is to permit an inference of fraud in situations akin to the instant one where the accused denies the accusation of fraud and offers legitimate reasons for his actions. Accordingly, Mr. Campagna's explanation for his behavior is a factor in the Court's analysis, but it is not determinative.

Having considered the evidence, the Court finds that Defendant's transfer of the Scottsdale home to the QPRT and the Mercedes Benz to his daughter evidence numerous badges of fraud. First, Mr. Campagna transferred both of these assets to his daughter, an insider under Arizona law. See Gerow, 192 Ariz. at 19 (stating that family members are insiders). Second, Mr. Campagna admits that he still resides in the Scottsdale home, demonstrating he retains possession of that asset. A.R.S § 44-1004(B)(2) ("The debtor retained possession or control of the property transferred after the transfer"). Third, both transfers occurred after Mr. Campagna had been sued by the POST Parties. Id. § 44-1004(B)(4) ("Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit"). Fourth, Mr. Campagna did not receive reasonably equivalent compensation for the home. Id. § 44-1004(B)(8) ( stating the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred" is a factor a court may consider). Additionally, the transfer of the of the Mercedes Benz occurred shortly after Mr. Campagna incurred a substantial debt in the form of the POST Parties' verdict. Id. § 44-1004(B)(10) ("The transfer occurred shortly before or shortly after a substantial debt was incurred.").

As to the Scottsdale home, Mr. Campagna argues that the badges of fraud identified by this Court do not support an inference of actual intent because a QPRT, which is a legitimate estate planning device, necessarily requires that a home be transferred for no consideration, to a child, and that the settlor retain the right to possess the home for an agreed upon period of time. In so doing, he seems to assert that so long as an estate planning device is legitimate, it does not matter if it evidences badges of fraud. The Court does not agree. Were this proposition true, people seeking to fraudulently transfer their assets would be protected so long as the identifiable badges of fraud were inherent in the financial planning product utilized to affect that transaction. Such an outcome would clearly defeat the purpose of the AFTA and is against the weight of authority. See A.R.S § 44-1001(9) (noting that the AFTA applies to "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset"); Pearce v. Stone, 149 Ariz. 567, 571

- 4 -

(App. 1986) (applying badge of fraud analysis to debtors creation of a trust); <u>Casey Nat. Bank v. Roan</u>, 282 Ill.App.3d 55, 60 (1996) (upholding trial court determination of fraudulent conveyance even though debtor testified that "the transfers were made only for purposes of estate planning."). Additionally, Mr. Campagna's argument does not address the fact that he created the QPRT during the course of litigation and after what can only be described as unfavorable verdict in Phase 1. Thus, at least a single badge of fraud is present, which is sufficient to prove actual intent. <u>Gerow,</u> 192 Ariz. At 17 ( stating that even a single badge of fraud "may establish and stamp a transaction as fraudulent") (internal quotation omitted).

Ultimately, a finder of fact may yet determine that Mr. Campagna's actions were not fraudulent. Indeed, he has presented some evidence which weighs against finding that he intended to fraudulently transfer the Scottsdale home and the Mercedes Benz. Because, however, numerous badges of fraud are present, this Court finds that the POST Parties have met their burden and demonstrated a likelihood of success on the merits in an action under AFTA.

**2.      The POST Parties will suffer irreparable harm**

In cases where equitable relief is not sought, a court may issue a pre-trial injunction when a plainitff can establish that "money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." <u>See</u> <u>In re Estate of Ferdinand Marcos, Human Rights Litig</u>, 25 F.3d 1467, 1480 (9th Cir. 1994). It follows from this principal that a judgement creditor, whose only remedy is an award of damages, can demonstrate a likelihood of irreparable harm by proving a pattern of asset dissipation by a judgment debtor. <u>See</u> <u>Nastro v. D'Onofrio</u>, 263 F.Supp.2d 446, 460 (D.Conn. 2003) ("The possibility that [the judgment debtor] could take further action to void [the] judgment, and could possibly dissipate his assets beyond the reach of this court, constitutes irreparable harm."). Indeed, in <u>In re Estate of Ferdinand Marcos, Human Rights Litigation</u>, the Ninth Circuit upheld the district court's conclusion that "plaintiffs would be irreparably harmed . . . [because] there

was substantial danger that the defendants would transfer or conceal its funds, resulting in denying recovery to the plaintiffs." 25 F.3d at 1480. The POST Parties have gone further than merely positing a substantial danger their recovery may be denied, they have earned a judgment through the trial process, and demonstrated a likelihood of success on claims against Mr. Campagna for fraudulent transfer. Therefore, this Court finds that a likelihood of irreparable harm has been demonstrated.[1]

### 3. A PI is in the public interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 988 (9th Cir. 2009) (quoting Bernhardt v. L.A. County, 339 F.3d 920, 931 (9th Cir.2003)). Here, the requested injunctive relief will have no significant impact on non-parties. Additionally, public policy undoubtedly favors the enforceability of judgments. Were it otherwise, lawsuits seeking monetary damages would be rendered ineffective. See, e.g., Thomas, Head and Greisen Employees Trust v. Buster, 95 F.3d 1449, 1455 (9th Cir. 1996) ("Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." (quoting Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867))).

### 4. The balance of hardships favors the POST Parties

---

[1] Mr. Campagna argues that the POST Parties cannot prove irreparable harm because the harm about which they are concerned, the dissipation of more assets, is too speculative and not definite. It is true that the POST Parties cannot know with certainty what Mr. Campagna will do next. Based on Mr. Campagna's past behavior, it is not unreasonable to conclude that Mr. Campagna is likely to engage in similar conduct in the future, and therefore, the POST Parties is likely to suffer irreparable harm. See e.g., Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9 th Cir. 2006) (stating that courts may find immediate irreparable harm in the context of an ex-parte TRO where a by showing that an "adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history.") (internal quotations omitted).

- 6 -

"In assessing whether the plaintiffs have met this burden, the district court has a 'duty ... to balance the interests of all parties and weigh the damage to each.'" Stormans, 571 F.3d at 988-89 (quoting See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1203 (9th Cir.1980)). Because this Court intends to narrow the scope of the TRO it previously entered, as will be explained *infra*, no significant hardship will befall Mr. Campagna, as he will only be restricted from taking actions he testified at the hearing he did not intend to take. In light of the lack of harm to Mr. Campagna and the irreparable harm that would befall the POST Parties should they be unable to collect on their judgment, the balance of hardships tips clearly in the POST Parties' favor.

### B. Conclusion

Therefore, having considered their motion, accompanying declaration, and exhibits, the Court finds that good causes exists to decide that a PI should issue, as the POST Parties have shown that they are likely to succeed on the merits, they will suffer irreparable harm, the balance of equities tips in their favor, and a PI is not against public policy. In the TRO, this Court broadly restricted Mr. Campagna's conduct, limiting his asset transfers to those made in the ordinary course of business and for normal household expenses. Upon further reflection, the Court has decided to narrow the scope of the PI. The hearing has demonstrated that Mr. Campagna no longer has substantial assets, and nearly any potential transfer of those assets would likely fall under the umbrella of a household or business expense, rendering mere continuation of the TRO potentially ineffective and opening the door to disputes concerning the nature of asset transfers.

Instead, and more importantly, the hearing highlighted that the POST Parties real concern is that Ms. Morse, at the instruction of her father, might dissolve the QPRT, placing the sole asset which might reasonably allow the POST Parties to satisfy their judgment out of their reach. At the hearing Mr. Campagna and Ms. Morse promised not to engage in such behavior. While the Court appreciates Mr. Campagna's promise (and Ms. Morse's), given the evidence on record, a preliminary injunction is the most prudent course to take at this

juncture. Therefore, this Court will narrow the scope of the forthcoming PI, focusing on securing the Scottsdale home from further transfer.

Additionally, at the hearing, the Court first learned of Mr. Campagna's ownership interest in KLCADO, LLC ("KLCADO"). The POST Parties orally requested that this Court enjoin that corporation from transferring any of its assets, including the real property it owns in Scottsdale, Arizona. Mr. Campagna responded by alleging that this Court does not have the power to restrain a non-party corporation from disposing of its assets, requesting additional briefing in the event that the Court contemplated taking such an action. For the moment, the Court will withhold judgment concerning whether or not it has the authority to enjoin KLCADO. Instead, it will require that Mr. Campagna notify the POST Parties before KLCADO attempts to transfer, or encumber any real property interest. This way, the Court can hear argument concerning whether or not the PI may be expanded to enjoin the actions of KLCADO. The Court can, and will, however, enjoin Mr. Campagna from transferring any ownership interest in KLCADO.

**Accordingly**,

**IT IS HEREBY ORDERED** that a preliminary injunction be issued immediately, restraining Leonard Campagna, his officers, agents, servants, employees, and attorneys and any other person acting in active concert or participation with any of them, from:

(1) causing any interest in the real property located at Lot 11, Canyon Heights, according to Book 349 of Maps, Page 31, of the records of Maricopa County (the "Scottsdale Home"), to be further transferred, encumbered or liened;

(2) causing any interest in the Qualified Personal Residence Trust that presently holds the Scottsdale Home from being transferred, encumbered or liened;

1     (3) causing any transfer of Leonard Campagna or his marital community's ownership interest in KLCADO, LLC;

**IT IS FURTHER ORDERED** that Mr. Campagna must notify the POST Parties no later than 10 days before KLCADO, LLC attempts to transfer, encumber, or lien any real property interest it possesses.

**IT IS FURTHER ORDERED** vacating the Temporary Restraining Order entered on January 21, 2010 (Dkt. #830).

DATED this 29th day of January, 2010.

_____
Mary H. Murguia
United States District Judge