**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems, Inc., et al.,) | No. CV 02-1954-PHX-MHM |
| ) | |
| Plaintiffs,       ) | **ORDER** |
| ) | |
| vs.                      ) | |
| ) | |
| ) | |
| Nelcela, Inc., et al.,            ) | |
| ) | |
| Defendants.       ) | |
| ) | |
| _____) | |

The Court is in receipt of the POST Parties' Revised Memorandum in Support of POST Parties' Motion for Attorneys' Fees and Related Non-Taxable Expenses, (Doc. 864), and Motion to Transfer to a Magistrate Judge, (Doc. 922); and MTSI's Supplemental Response Re: Attorney Fees.  (Doc. 868).   Having carefully considered the Parties' arguments, the Court issues the following Order:

**I.       BACKGROUND**

The background of this case is extensive and well known to the Parties, so the Court will not restate it here.  For the purposes of this Order it suffices to say that on March 31, 2010, this Court issued an Order concerning both the POST Parties' and MTSI's entitlement to attorney's fees.  Specifically, the Court found that the POST Parties should receive

attorney's fees for their copyright, contract, and breach of warranty claims against Nelcela, and MTSI should receive fees for its contract claim against Dollarhide and its misappropriation claim against all of the Nelcela Defendants.  The Court's Order, however, did not go beyond the issue of entitlement, as it found that both the POST Parties and MTSI had not adequately allocated their expenses among the claims for which they were fee eligible.  Accordingly, the Court ordered both Parties to submit revised fee applications that apportioned the hours billed among the claims for which the Court found a fee award warranted.

## II.   ATTORNEY'S FEES

### A.   The POST Parties' Revised Fee Application

#### 1.   Copyright Claim

In its original Order concerning attorney's fees, the Court found that the POST Parties' prevailed on the copyright claims brought against them by Nelcela.  In so doing, the Court held that it would award only those fees incurred by POST in defending against Nelcela's copyright claims, not for fees incurred defending (or preparing to defend) against copyright claims threatened by MTSI and the Lexcel Parties.  In its instant motion, the POST Parties have helpfully broken down their requested fees into three categories: (1) fees incurred prior to bifurcation; (2) fees incurred during Phase 1 before the POST-MTSI-Lexcel Settlement; and (3) fees incurred during Phase 1 after the POST-MTSI-Lexcel Settlement.[1]

Turning first to the fees incurred by the POST Parties prior to bifurcation, the POST

---

[1]On March 4, 2005, the Court bifurcated this case into two distinct phases for purposes of the Parties' copyright claims: (1) ownership; and (2) infringement / damages.

Parties request an award of fees in the amount of $54,477.55.  The Court finds that this request is reasonable and will make such an award.

With respect to "Phase 1 before the POST-MTSI-Lexcel Settlement," the POST Parties request an award in the amount of $667,704.32.  In support of this request, the POST Parties argue that one of their main defenses to Nelcela's copyright claim against POST was that Nelcela did not own the disputed software.  As a result, the POST Parties assert that their interests aligned with Lexcel and MTSI during all of Phase 1, including the pre-settlement period,  and, as a result, most of the fees incurred during Phase 1 were related to the POST Parties' defense against Nelcela. The Court finds this argument persuasive, and agrees that although Phase 1 did not involve direct defense of Nelcela's copyright claim against the POST Parties, it was related to that matter. The Court agrees, therefore, that the POST Parties deserve to be compensated for attorney's fees incurred during Phase 1, including the pre-settlement phase. The POST Parties' suggested pre-settlement award —$667,704.32—is two-thirds of the amount it actually incurred in fees during that period.  The Court finds, however, that one-half is a more suitable amount given that some of the POST Parties' work during the pre-settlement period was likely geared towards defense of the suit threatened by Lexcel and MTSI.   Accordingly, the Court awards the POST Parties $500,778.25 in attorney's fees for the pre-settlement portion of Phase 1.

Lastly, the Court will consider POST's request for $1,281,315.80 in fees incurred during Phase 1 after the POST-MTSI-Lexcel Settlement.   After POST, MTSI, and Lexcel settled, in January of 2006, the POST Parties no longer faced the prospect of copyright litigation with MTSI and Lexcel.  Accordingly, it is clear that any and all work done by the

POST Parties during the post-settlement part of Phase 1 was related to its defense of the copyright claim brought by Nelcela.  Given that potential claims by MTSI and Lexcel were no longer in the picture, the POST Parties argue they should be fully compensated for the fees incurred during this period, which were incurred attempting to demonstrate that Nelcela did not own the software in question.  The Court agrees with POST's logic and finds the fees incurred appear for the most part to be reasonable, but out of fairness will make an award of $1,000,000.00.

Accordingly, the Court awards the POST Parties $1,555,255.80 in attorney's fees stemming from its successful defense of the copyright claim brought against them by Nelcela.  Having carefully reviewed the time sheets and other documentation provided by the POST Parties, the Court finds this award is reasonable.

**2.      Claims Arising out of Contract**

In the Court's original Order, the Court found that certain of the claims on which the POST Parties prevailed were not eligible for an award of attorney's fees, as these claims did not arise out of contract.  See A.R.S. § 12-341.01(A) (permitting a prevailing party to recover reasonable attorney's fees "[i]n any contested action arising out of a contract, express or implied . . . .").  Consequently, the Court ordered the POST Parties to submit a revised memoranda that apportioned the hours they billed among the claims for which this Court awarded fees.  In their supplemental memoranda, the POST Parties argue that despite the Court's previous Order, apportionment is neither possible nor necessary because the claims for which the Court awarded fees are factually intertwined with those claims for which it did not.  In light of the POST Parties' argument, the Court reviewed its previous Order.  Even

- 4 -

though the Court found that the POST Parties were not eligible to recover attorney's fees for their tort claims pursuant to an "arising under" theory, it did not determine whether those claims were so intertwined with the POST Parties' contract claims as to negate the need for apportionment.

When multiple claims are predicated on a sufficiently common set of facts, apportioning the hours on a claim-by-claim basis is often impracticable.  See Schweiger v. China Doll Restaurant, Inc., 138 Ariz. 183, 189 (Ariz. App. 1983) (citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (noting that a "plaintiff's claims for relief will [often] involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.")).  In line with this principle, Arizona law recognizes that "a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an "interwoven" tort claim." Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc., 198 Ariz. 10, 13 (Ariz. App. 2000).  Recovery of fees for a claim that is interwoven with a fee-eligible contract claim is separate and apart from recovery for a claim arising under contract. Id.; Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc., 221 Ariz. 515, 522 (App. 2009) ("Because we agree Modular's claims were inextricably interwoven . . . we need not reach the separate and more difficult issue whether Modular's trade secrets claim and other claims 'ar[o]s[e] out of a contract' for purposes of § 12-341.01(A)").  However, "[a] tort claim does not come within the attorneys' fee statute by being interwoven with an *unsuccessful* contract claim."  Id.

In its previous Order, the Court found that the POST Parties could recover attorney's

fees on its contract and breach of warranty claims.   Although the Court found that they did not arise out of contract (and therefore did not support a fee award), the POST Parties' tort claims were nonetheless based on the same set of facts as the contract-based claims: Nelcela's sale to the POST Parties of software for which Nelcela did not have proper title. In consideration of the significant factual overlap between the POST Parties' contract and tort claims, the Court now finds those claims are interwoven and that full apportionment amongst them was not possible, and in light of Arizona law is not necessary. See Sparks v. Republic National Life Insurance Co., 647 P.2d 1127, 1142 (Ariz. 1982) (finding that a trial court may award fees without apportioning between the claims so long as the award is reasonable).  Accordingly, the Court will not penalize the POST Parties for their inability to fully apportion their claims.

In their fee application, the POST Parties have requested $1,344,130.8 in attorney fees.  The reasonableness of the requested fees depends on whether (1) the billing rates used were reasonable; and (2) the number of hours expended on the case was reasonable. China Doll, 138 Ariz. at 187–88.  The Court turns first to the billing rate first.  Generally speaking, in non-public rights litigation cases, such as this one, "a reasonable fee is . . . the actual billing rate which the lawyer charged in the particular matter." Id. at 187.   A party challenging the reasonableness of those rates must do so by adducing competent evidence. Id. at 188.  Nelcela does not argue that the rates charged by the POST Parties attorneys were unreasonable.  Additionally, this Court has reviewed the rates billed by the POST Parties' attorneys and all appear to be reasonable in light of their experience.

The Court turns next to the reasonableness of the number of hours billed.  Having

concluded that apportionment was not necessary, the Court does not need to parse the records as finely as it would have otherwise.  That being said, it still must ensure that the hours billed for any particular task were reasonable.  For example, "If a particular task takes an attorney an inordinate amount of time, the losing party ought not be required to pay for that time." China Doll, 138 Ariz. at 188.   The Court has carefully reviewed the time sheets submitted by the POST Parties.  The Court notes that the POST Parties time sheets are redacted at parts, leaving the subject of the work done blacked out in many instances.  For example, the POST Parties will charge for research, but black out the actual subject of that research.  This has made it difficult for the Court to determine whether or not all the hours expended on a given task were in fact reasonable or duplicative, but that has been mitigated somewhat by the otherwise detailed nature of the records.  In this Court's experience, the time sheets suggest that the hours expended in the course of this lengthy and complicated litigation were not excessive.  Additionally, the Court notes that the POST Parties were highly successful and the issues were difficult. See id. at 187 (noting that in determining a reasonable fee, the Court may also consider the quality of the representation, the charter of the work, the work actually performed by the lawyer, and the result obtained).

Accordingly, the Court will award the POST Parties $1,114,511.18 in attorney fees, which it finds is reasonable under the circumstances.

**3.    Conclusion**

The Court, having previously determined the POST Parties' eligibility for a fee award, has now determined the amount of fees they will be awarded.  The Court awards  the POST Parties $1,555,255.80 in attorney's fees stemming from their successful defense of the

copyright claim brought against them by Nelcela, and $1,114,511.18 in fees for claims arising out of contract.  The total award of attorney's fees to the POST Parties, therefore, is $2,669,766.44.

**B.      MTSI's Revised Fee Application**

Like the POST Parties, in its revised fee application, MTSI informs the Court that it cannot apportion its fees and argues that apportionment is not necessary because the claims for which the Court awarded fees against are intertwined with those for which it did not.  In its previous Order, the Court awarded MTSI attorney's fees for its contract claim against Dollarhide and its misappropriation of trade secrets claim against the Nelcela Defendants. The Court found, however, that MTSI's breach of duty of loyalty claim did not arise out of contract under section 12-341.01(A).  Notwithstanding this conclusion, the Court now holds that apportionment was not necessary, as the duty of loyalty claim is based on the same operative set of facts as the contract claim: Alec Dollarhide's unlawful taking of MTSI's software.  In its revised memoranda, MTSI goes a step further, arguing that MTSI need not apportion between any of its claims, as all of its claims stem from and relate to the conduct of Alec Dollarhide.  The Court substantially agrees.  Because MTSI sought to hold Leonard Campagna and Nelcela liable for the actions of Dollarhide, the great majority of the fees incurred litigating its claims, even those which were unsuccessful, are indistinguishable from fees incurred prosecuting the successful claims against Dollarhide.  Because they are so intertwined, apportionment is not reasonably possible and MTSI's failure to so do will not prevent this Court from making a fee award.

MTSI has requested $807,044.55 in fees.  The Court notes that Nelcela has not

objected to the hourly rates charged by MTSI's attorneys, and the Court finds that those rates were reasonable.  As for the hours, the Court finds that the time sheets provided by MTSI's attorneys make a difficult task of determining whether the amount of hours billed were reasonable.  The time sheets of MTSI attorney William McKinnon are overly broad, making only general references to the activity performed, and including many generalized statement like "efax" and "email." (Doc. 781).  <u>China Doll</u>, 138 Ariz. at 187 ("It is insufficient to provide the court with broad summaries of the work done and time incurred).  Likewise, the time sheets of Nicholas J. Di Carlo are heavily redacted.  Many entries use the words "review," "comment," and "work on," but have blacked-out the subject of those activities. (Doc. 782). <u>See</u> <u>Metro Data Sys., Inc. v. Durango Sys., Inc.</u>, 597 F. Supp. 244, 245 (D. Ariz. 1984) (noting the amorphous quality of the phrase "review" in the context of an attorney's fees motion).  That being said, this was a complicated and hard fought litigation spanning multiple years which clearly required a great deal of work, and MTSI's attorney's got a positive result for their client.  <u>See</u> <u>China Doll</u>, 138 Ariz. at 187 (noting that in determining a reasonable fee, the Court may also consider the quality of the representation, the charter of the work, the work actually performed by the lawyer, and the result obtained).

In light of the foregoing, the Court finds that a reasonable fee award given the circumstances of this case is $600,931.85.

## III.    MOTION TO TRANSFER

On August 19, 2010, the POST Parties filed the instant Motion to Transfer to a Magistrate Judge.  (Doc. 922).  In this motion, the POST Parties argue that transfer to a magistrate judge is appropriate under LRCiv 72.2(16), which authorizes magistrate judges

to oversee post-judgment proceedings.   Finding good cause therein, noting that none of the other Parties have responded to this motion, and treating their silence as non-opposition, the Court will grant the POST Parties' motion and refer this case to a magistrate judge for all future post-judgment proceedings.  Additionally, the Court will also direct the Clerk of the Court to reassign this case to another district judge to oversee any issues which are outside of the magistrate judge's realm of authority.

**Accordingly,**

**IT IS HEREBY ORDERED** awarding the POST Parties $2,669,766.44 in attorney's fees.

**IT IS FURTHER ORDERED** awarding MTSI $600,931.85 in attorney's fees.

**IT IS FURTHER ORDERED** granting the POST Parties' Motion to Transfer to a Magistrate Judge, (Doc. 922), and directing the Clerk of the Court to refer this case to a magistrate judge for all post-judgment proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to reassign this case.

DATED this 23rd day of March, 2011.

Mary H. Murguia
United States District Judge