**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merchant Transaction Systems Incorporated, | No. CV-02-01954-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Nelcela Incorporated, et al., | |
| Defendants. | |

Before the Court is Judgment Debtor Alec Dollarhide's ("Dollarhide") Motion to Enforce and/or Motion for Order to Show Cause. (Doc. 1069). Judgment Creditor MLGGLC, LLC ("MLGGLC") has filed a Response, (Doc. 1071), and Dollarhide has filed a Reply (Doc. 1073). For the reasons set forth below, the Court will grant Dollarhide's Motion in part and deny it in part.

**I.   Background**

Merchant Transaction Systems, Inc. ("MTSI"), and later Lexcel Solutions, Inc., by intervening, (collectively "Plaintiffs") brought an action against Nelcela, Inc., Alec B. Dollarhide, Diane M. Dollarhide, Leonard M. Campagna, and Helga Terry Campagna for copyright infringement, misappropriation of trade secrets, unfair competition, breach of contract, and conversion. (Doc. 277 at 7–11). A jury found Dollarhide guilty of a litany of charges that resulted in him being liable for damages plus post-judgment interest. (Doc. 746; Doc. 861). To collect on the judgment, MTSI, along with POST Integrations ("POST"), formed MLGGLC to aid in its efforts to recover money from Dollarhide. (Doc.

1071 at 2). When MLGGLC started its garnishment of Dollarhide's wages, the statute that effectuated that process was A.R.S. § 33-1131(B). This statute was amended by Arizona voters in 2022. *See* Prop. 209, § 6 (initiative measure approved November 8, 2022). Proposition 209, also known as the Predatory Debt Collection Act, ("Prop. 209") was passed to address the interest cap rate on medical debt. *Id.* It also decreased the amount of non-exempt earnings in garnishment proceedings from 25% of discretionary income to 10%. *Id.*

A series of litigation following Prop. 209's passage required the Arizona courts to address ongoing confusion and questions regarding Prop. 209's impact. First, the Arizona Court of Appeal ruled on the constitutionality of Prop. 209's Savings Clause, ultimately finding it constitutional and finding that the Proposition only applied prospectively. *Ariz. Creditors Bar Ass'n, Inc. v. State*, 549 P.3d 205, 211 (Ariz. Ct. App. 2024). In another case, the Court addressed garnishment proceedings rooted in a judgment obtained before the Prop. passed, but with ongoing garnishment proceedings after the Prop.'s passage. *HJ Ventures, LLC v. Candelario*, 2024 WL 449970, at *2, ¶¶ 13–14 (Ariz. Ct. App. Feb. 6, 2024). Finally, and importantly for the disposition of Dollarhide's Motion, the Court most recently decided what happens in garnishment proceedings when both the judgment and the garnishment proceedings arise before the effective date of Prop. 209. *Silence v. Betts*, 553 P.3d 192, 194 (Ariz. Ct. App. 2024), *as amended* (July 26, 2024). The Court concluded that after Prop. 209's effective date, an employer may only garnish and impound the portion of wages that are nonexempt under the statute. *Id.* at 197. This change in the law is the basis of Dollarhide's current Motion.

## II.   Legal Standard

Generally, equitable tolling is presumed in every federal statute. *In re Milby*, 875 F.3d 1229, 1232 (9th Cir. 2017). However, when deciding the applicability of equitable tolling against the backdrop of a state statute, federal courts apply a forum state's equitable tolling law. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Dec. 13, 1999); *see also Pangerl v. Peoria Unified Sch. Dist.*,

2016 WL 11628043, at *2 (D. Ariz. June 15, 2016); *Cf. Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988). Arizona courts and the federal courts use almost the same standards for applying equitable tolling: (1) extraordinary circumstances existed that were beyond the plaintiff's control and (2) plaintiff acted diligently in pursuing his rights. *Pangerl*, 2016 WL 11628043, at *2. In determining the second prong, the court must ask if plaintiff "acted as diligently as reasonably could have been expected under the circumstances." *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011).[1]

### III.  Discussion

Dollarhide asks the Court to require MLGGLC to disgorge $74,247.09[2] in exempt wages that were garnished from him between 2023 until the pay period ending on November 10, 2024.  (Doc. 1069 at 3). He argues that because Prop. 209 lowered the amount of discretionary non-exempt wages from a garnishment rate of 25% to 10%, MLGCC should have only taken 10% of his wages from when the Proposition went into effect up until they themselves changed the rate of garnishment to 10%. (*Id.*) Lastly, he advances the argument that MLGGLC did not provide him with written reports as required by this Court's Order and A.R.S. § 12-1598.12.  (*Id.* at 2).

####   A.  Required Reports

Addressing Dollarhide's second argument first, MLGGLC counters that, although it did not provide him with quarterly garnishment reports as required by the statute, it did provide him with detailed spreadsheets, which fulfill its requirements under the statute.

---

[1] An Arizona Court of Appeal case from 2007, when trying to determine whether equitable tolling was appropriate, used case law from the Ninth Circuit, and other federal law, to determine that it was. *McCloud v. State, Ariz. Dep't of Pub. Safety,* 170 P.3d 691, 696 (Ariz. Ct. App. 2007) Notably, the Arizona Court of Appeal cited to Ninth Circuit case law stating that when there is a lack of clarity on the law, equitable tolling is indeed appropriate. *Id.*

[2] Dollarhide has not shown the Court where the figure of $74,247.09 comes from.  Even examining the exhibits attached to MLGGLC's Judgment Renewal Affidavit (Doc. 1072) and other exhibits attached to MLGGLC's Response, the Court cannot make out a figure that is close to $74,247.09. Neither Dollarhide's Motion, nor his Reply in support of his Motion attach any exhibits that would allow the Court to determine the accuracy of this amount. That makes the Court extremely apprehensive in ordering MLGGGLC to turn over the exact amount requested by Dollarhide. Dollarhide only attached his Declaration (Doc. 1069-1) to his Motion, but Dollarhide should have provided the Court with a more thorough accounting instead of having the Court rely on his word.

(Doc. 1071 at 2). MLGGLC says that these spreadsheets included detailed information like collection activities, garnishment payments, and how those garnishment payments were applied to the judgment overall, according to MLGGLC. (*Id.*) However, MLGGLC concedes to providing Dollarhide with the information in a different format, quarterly garnishment reports, if he so desires, instead of the spreadsheets. (*Id.)* MLGGLC has avowed to the Court that MLGCC will turn over those reports as required[3], in the exact format required. (Doc. 1071 at 5). The concession takes care of Dollarhide's objection that MLGGLC did not provide him with the required reports.[4]

### B. Equitable Tolling

In response to Dollarhide's second argument, MLGGLC admits that there was a change in the law, set off by Prop. 209, and flushed out by the Court in *Silence*, that reduced Dollarhide's liability from 25% to 10% of his discretionary income. (Doc. 1071 at 6–7). MLGGLC combats this however, by stating that according to the governing statute, A.R.S. § 12-1598.07, Dollarhide failed to timely object to the garnishment. (*Id.*) Because he waited for so long to do so, MLGLCC contends that the Dollarhide has waived his objections to the garnishment amount.[5] (*Id.*) Further, MLGLCC argues that its conduct was always in line with its legal obligations. (*Id.*) After the Court clarified the effect of Prop. 209 in *Silence*, MLGGLC and Dollarhide's employer changed the garnished amount from 25% to 10% sometime in late 2024. (*Id.* at 8).

---

[3] Under the statute, MLGGLC was required to turn over the following information: 1. The beginning and ending date of the reporting period for that report. The beginning date of the first reporting period is the date the writ was served. 2. The date and amount of each payment received during the reporting period. 3. The total amount credited to the judgment balance for that reporting period. 4. The interest, attorney fees and costs accrued during that reporting period. 5. The total outstanding balance due on the judgment as of the ending date of the reporting period. A.R.S. § 12-1598.12.

[4] The Court notes that MLGGLC has already filed three notices on the docket in relation to providing Dollarhide the quarterly garnishment reports in the format he requests. (Docs. 1074, 1076, and 1077).

[5] When a judgment debtor has an objection to a nonexempt earnings statement, they are required to make that objection "no later than ten days after receipt of the answer or nonexempt earnings statement objected to unless good cause for filing the request later is shown." A.R.S. § 12-1598.07.

In resolving the main dispute between the parties, the Court's reading of the Arizona Court of Appeals decision in *Silence* compels the Court to pay particular attention to this part of this case:

> "Thus, the amounts subject to garnishment each pay period after Proposition 209 became effective had not yet matured, and Proposition 209's changes therefore affect the garnishment prospectively. This Court concludes that **after Proposition 209's effective date, Betts's employer must impound and pay only those portions of Betts's wages that are nonexempt under the statute as amended by Proposition 209.**"

*Silence*, 553 P.3d at 197 (emphasis added). Essentially, the above passage means that every pay period after the passage of Prop. 209, must be subject to the lower garnishment amount of 10% for discretionary non-exempt income. The Court's reading is also supported by another Court to since look at the repercussions of the decision. *See In re Portch*, No. 2:23-BK-02120-DPC, 2025 WL 409995, at *8 (Bankr. D. Ariz. Feb. 5, 2025) ("The court held that Prop 209 wage exemption amounts applied to garnished wages earned after the effective date of Prop 209, even though a continuing wage garnishment order was obtained before the effective date of Prop 209.") MLGGLC admits that it only started garnishing 10% after the *Silence* decision, not after the passage of Prop. 209. And while that is understandable given the confusion around the change in the law, it does not mean that it can remain justified now that the confusion has been dispelled. Nor does it mean that Dollarhide now has no recourse simply because he failed to object to the higher garnishment amount within the timeframe dictated by statute.[6]

The Court finds that the applicable statute, A.R.S. § 33-1131, should be subject to equitable tolling given the circumstances. The circumstance that specifically stands out to the Court is the change in the law with a resolution not being offered by the Arizona Court

---

[6] As part of his argument, Dollarhide states in a footnote that the deadlines set forth by Rule 59 and Rule 60 are not implicated. (Doc. 1073 at 4, fn. 1). The Court is not certain what Dollarhide means, but believes he is referring to the proscription against extending a statute of limitations listed in Federal Rule of Civil Procedure 6. However, it is well-settled that Federal Rule of Civil Procedure 6 cannot extend deadlines and time limits set by statute. *See* Gensler, Steven S., "Federl Rules of Civil procedure: Rules and Commentary" (2024).

- 5 -

of Appeal until June 27, 2024, despite the Proposition going into effect on December 5, 2022.[7] To address the argument advanced by MLGGLC that Dollarhide is asking for equitable relief while at the same time trying to shield his assets from garnishment, that is not the issue in front of the Court at this time. (Doc. 1071 at 4). The very narrow issue is how Prop. 209 applies to the period of limbo between when Prop. 209 went into effect and when the *Silence* discussion was issued, to Dollarhide's paycheck.

A case that the Court finds particularly instructive is *Capital Tracing*. *Cap. Tracing, Inc. v. United States*, 63 F.3d 859, 862 (9th Cir. 1995). There, plaintiff filed a wrongful levy action against the Internal Revenue Service ("IRS") on August 22, 1985. The district court dismissed the action, noting that the time to file a wrongful levy had lapsed on May 22, 1986. The Ninth Circuit decided that equitable tolling applied because it had issued a decision on April 16, 1991, clarifying when the IRS can levy a bail bond and under which statute a plaintiff can bring a wrongful levy action. *United States v. Badger*, 930 F.2d 754, 757 (9th Cir. 1991). Importantly, the Ninth Circuit found that statutory limitations can be equitably tolled when there is a lack of clear precedent in the circuit regarding the issue. *Cap. Tracing, Inc.*, 63 F.3d at 862; *see also Dempsey v. Pacific Bell Co.,* 789 F.2d 1451 (9th Cir.1986). The Court finds that because there was a lack of clarity surrounding the impact of Prop. 209 on garnishment proceedings, this is exactly the type of extraordinary circumstance that warrants equitable tolling.

Turning to the second prong of the equitable tolling test, diligence, the Court finds that Dollarhide acted diligently to assert his rights. In reading the case law on reasonable diligence, the Court notes that it is diligence *during* the extraordinary circumstance that is given more weight than diligence *after* the extraordinary circumstance is lifted. *In re Milby*, 875 F.3d 1229, 1234 (9th Cir. 2017); *see also Gibbs v. Legrand*, 767 F.3d 879, 891 (9th Cir. 2014) (stating that diligence during the extraordinary circumstance is the key consideration). Diligence after the extraordinary circumstance has been lifted can be considered by the court as one factor in its broader diligence assessment. *Gibbs*, 767 F.3d

---

[7] *See* Arizona Judicial Branch, Garnishment, Proposition 209 Information Sheet (last visited Oct. 27, 2025) https://www.azcourts.gov/selfservicecenter/Garnishment.

at 892. Looking purely at Dollarhide's conduct after the passage of the *Silence* decision, the Court does not have enough facts to make an assessment on his post-extraordinary circumstance conduct.  It is not clear to the Court, nor has either party argued, when Dollarhide obtained counsel to object to the higher garnishment takings after either the passage of Prop. 209 or after the *Silence* decision.

However, focusing on Dollarhide's conduct during the extraordinary circumstance, the Court finds that because the law was unclear, a reasonable person under the circumstances would not have done anything more than monitor a change in the law after Prop. 209's passage. *Doe*, 661 F. 3d at 1013.  The Court finds that Dollarhide's conduct satisfies the diligence requirement under this prong.  And now, after finding that the applicable statute should be equitably tolled to allow Dollarhide redress, the Court also finds that MLGGLC wrongfully deducted more than it was legally allowed to deduct from Dollarhide.  MLGGLC is ordered to return the balance between what it was rightfully owed and what it took in excess, back to Dollarhide for the period following when Prop. 209 went into effect and before MLGGLC started deducting only 10% of Dollarhide's nonexempt discretionary income in late 2024.

As a final matter, the Court declines Dollarhide's request to order MLGGLC to pay Dollarhide's attorney fees and costs associated with filing his current Motion.  MLGGLC, as stated in its Response, immediately adjusted its garnishment from 25% to 10% after it was informed of the *Silence* decision.  (Doc. 1071 at 3).  Additionally, the statute under which Dollarhide seeks to have MLGGLC pay for his attorney fees, is a discretionary statute.  The discretion is made clear by the plain text of the statute, which states that a prevailing party *may* be awarded costs and attorney fees, and the discretion has been confirmed by the Ninth Circuit. A.R.S. § 12-1598.07; *Zizlsperger v. Maxwell & Morgan PC*, 565 F. App'x 633, 636 (9th Cir. 2014). Using its discretion, because neither party was aware of the applicable law prior to the *Silence* decision, the Court will not grant Dollarhide's request for attorney fees and costs associated with his Motion.

Accordingly,

**IT IS ORDERED** that Alec Dollarhide's Motion to Enforce Garnishment Requirements and Order of Continuing Lien (Doc. 1069) is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** that Alec Dollarhide's request to require MLGGLC to provide quarterly garnishment reports as required by A.R.S. § 12-1598.12. is **granted.** MLGGLC should continue to provide Judgment Debtor Alec Dollarhide with quarterly garnishment reports in compliance with A.R.S. § 12-1598.12.

**IT IS FURTHER ORDERED** that Alec Dollarhide's request that MLGGLC return to Alec Dollarhide the amount that it garnished in excess of the allowable 10% after Proposition 209 went into effect and the pay period ending November 10, 2024, is also **granted.**

**IT IS FINALLY ORDERED** that Alec Dollarhide's request for attorney fees and costs for the filing of this Motion (Doc. 1069) is **denied.**

Dated this 6th day of November, 2025.

Honorable Diane J. Humetewa
United States District Judge